# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

## Civil Division

KENNETH BERGE and DAWN BERGE, on behalf of themselves and their minor child Z.B., as individuals and on behalf of all others similarly situated,
927 Maracel Loop
Crestview, FL 32538


Plaintiffs,

v.

UNITED STATES OF AMERICA
SERVE:  United States Attorney for the
District of Columbia
c/o   Civil Process Clerk
555 4th Street NW
Washington, DC 20001

and

Hon. Eric Holder
Attorney General
950 Pennsylvania Avenue, N. W.
Room 511
Washington, DC 20530

and

U.S. DEPARTMENT OF DEFENSE,
1400 Defense Pentagon
Washington, DC 20301-1400
SERVE:  United States of America
c/o   United States Attorney for the
District of Columbia
Civil Process Clerk
555 4th Street, NW
Washington, DC 20001
And

Hon. Eric Holder
Attorney General
950 Pennsylvania Avenue, NW
Room 511

CLASS ACTION COMPLAINT
DEMAND FOR JURY TRIAL

Washington, DC 20530
Also serve:

Office of General Counsel
1600 Defense Pentagon
Room 3B688
Washington, DC 20301

and

TRICARE MANAGEMENT ACTIVITY,
5111 Leesburg Pike Skyline 5, Suite 810
Falls Church, VA 22041-3205
SERVE:  United States of America
   c/o   United States Attorney for the
District of Columbia
Civil Process Clerk
555 4th Street, N. W.
Washington, DC 20001

And

Hon. Eric Holder
Attorney General
950 Pennsylvania Avenue, N.W.
Room 511
Washington, DC 20530
Also serve:

Office of General Counsel
1600 Defense Pentagon
Room 3B688
Washington, DC 20301

and

Robert M. Gates, United States
Secretary of Defense
1000 Defense Pentagon
Room 3E880
Washington, DC 20301-1000

and

ROBERT M. GATES,
United States Secretary of Defense,
1000 Defense Pentagon, Room 3E880
Washington, DC 20301-1000
SERVE:  United States of America
   c/o   United States Attorney for the

District of Columbia
c/o    Civil Process Clerk
555 4th Street, N. W.
Washington, DC 20001

And

Hon Eric Holder
Attorney General
950 Pennsylvania Avenue, NW
Room 511
Washington, DC 20530

Also serve:

Office of General Counsel
Department of Defense
1600 Defense Pentagon
Room 3B688
Washington, DC 20301

jointly and severally,

TABLE OF CONTENTS

I. INTRODUCTION TO THE PARTIES AND THE NATURE OF THE COMPLAINT .................................................. 4

II. JURISDICTION AND VENUE .............................................................................................................. 11

III. THE PARTIES .............................................................................................................................. 11

A.    Plaintiffs .............................................................................................................................. 11

B.    Defendants .......................................................................................................................... 12

IV. THE ADMINISTRATIVE APPEAL PROCESS HAS NOT PROVIDED, AND WILL NOT PROVIDE, RELIEF FOR PLAINTIFFS. ................................................................................................................................... 12

V.    THE CHARACTERISITICS AND SYMPTOMS OF AUTISM. ............................................................... 13

VI.    APPLIED BEHAVIOR ANALYSIS THERAPY: A SCIENTIFICALLY VALID, MEDICALLY AND PSYCHOLOGICALLY NECESSARY TREATMENT FOR CHILDREN WITH AUTISM. ...................................................................... 17

VII.    CONGRESS CREATED TRICARE "TO ASSURE THAT MEDICAL CARE . . . HEALTH CARE . . . [AND] MENTAL HEALTH CARE IS AVAILABLE FOR DEPENDENTS OF [ACTIVE DUTY AND RETIRED] MEMBERS OF THE UNIFORMED SERVICES," SUCH AS Z.B. (10 U.S.C. §§ 1076, 1077, 1079, AND 1086).  ABA THERAPY IS "MEDICAL CARE," "HEALTH CARE," AND "MENTAL HEALTH CARE." ........................................................................... 19

VIII. DoD's RULES AND PRACTICES UNDER THE MILITARY HEALTH BENEFITS STATUTE, U.S. DEPARTMENT OF EDUCATION RULES UNDER THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT, THE RULES AND PRACTICES OF THE NATION'S UNIVERSITIES, K-12 PUBLIC SCHOOLS, PRE-SCHOOLS, STATE MEDICAID PROGRAMS, PRIVATE INSURERS AND ABA THERAPY PROFESSIONAL ORGANIZATIONS CUMULATIVELY ESTABLISH THAT ABA THERAPY IS NOT SPECIAL EDUCATION. ...................................................................................... 22

(A). Governing Statutory and Regulatory Background. .................................................................. 22

(B.) ABA therapy is not "special education" within the meaning of IDEA and its implementing regulations as interpreted by the United States Department of Education and the United States Supreme Court. ................. 23

(C.) ABA Therapy is a "Related Service" Under Idea and its Implementing Regulations and is, Therefore, not "Special Education." ............................................................................................................. 25

(D.) The Licensing Rules and Practices of the States, and the Rules and Practices of the Nation's Public Pre-Schools and K-12 Schools Cumulatively Reveal That ABA Therapy Is Not "Special Education." .......................... 28

(E.) The Rules and Practices of the Department Of Defense, in its ECHO Program, Reveal That ABA Therapy is not "Special Education." ...................................................................................................... 29

(F.) The Rules and Practices of the States' Medicaid Programs Reveal That ABA Therapy Is Not "Special Education." ................................................................................................................................ 30

(G.) The Rules and Practices of Private Health Insurers Reveal That ABA Therapy is not "Special Education." . 30

(H.) The Rules and Practices of the Behavior Analyst Certification Board Reveal That ABA Therapy is not "Special Education." ................................................................................................................................ 31

(I.) The Rules and Practices of the Association of Behavior Analysts International Reveal That ABA Therapy is not "Special Education." ................................................................................................................................ 31

IX.     DEFENDANTS HAVE MADE IT OFFICIAL DEPARTMENT OF DEFENSE POLICY TO WRONGFULLY DENY COVERAGE FOR A DEVASTATING MEDICAL CONDITION THAT IS AFFLICTING THOUSANDS OF MILITARY FAMILIES, CAUSING IRREPARABLE AND CATASTROPHIC HARM. ................................................................. 32

X. CONTRADICTING BENEFITS DENIALS AND PUBLIC STATEMENTS, INTERNAL DoD DOCUMENTS ACKNOWLEDGE THAT ABA THERAPY IS MEDICALLY NECESSARY HEALTH CARE TO WHICH MILITARY FAMILIES ARE ENTITLED BY LAW AND IS NOT SPECIAL EDUCATION. ................................................................. 34

XI.     DoD PRIMARILY SUPPORTS ITS POSITION THAT ABA THERAPY IS SPECIAL EDUCATION BY MISREPRESENTING THE MEANING OF A SINGLE JOURNAL ARTICLE.  ONE OF THE ARTICLE'S TWO AUTHORS, ALONG WITH 57 WORLD-RENOWNED EXPERTS IN PSYCHIATRY, PSYCHOLOGY, MEDICINE, AND BEHAVIORAL SCIENCE AND AUTISM RESEARCH AND PRACTICE, ASSERT THAT ABA THERAPY IS NOT SPECIAL EDUCATION. . 38

XII. DoD IS INTENTIONALLY MISLEADING MILITARY FAMILIES TO BELIEVE THAT ABA THERAPY IS ONLY AVAILABLE UNDER THE ECHO PROGRAM, WHICH IS SUBJECT TO LIMITS REGARDING ELIGIBILITY AND AMOUNT OF TREATMENT, AND IS NOT AVAILABLE UNDER THE TRICARE BASIC HEALTH BENEFITS PROGRAM, WHICH IS NOT SUBJECT TO ANY LIMITS REGARDING ELIGIBILITY OR AMOUNT OF TREATMENT. ...................... 40

XIII. CLASS ACTION ALLEGATIONS ........................................................................................................ 44

XIV. DEFENDANTS' VIOLATIONS OF THE ADMINISTRATIVE PROCEDURE ACT ........................................ 46

Count I - Violations of 5 U.S.C. § 552 .................................................................................................... 46

Count II - Violations of 5 U.S.C. § 553 ................................................................................................... 47

Count III - Violations of 5 U.S.C. § 706 .................................................................................................. 48

Count IV – Request for Declaratory Relief ............................................................................................ 48

XV. CONCLUSION AND REQUEST FOR RELIEF ........................................................................................ 49

3

## PLAINTIFF'S CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs, as individuals and on behalf of all others similarly situated, by their attorneys, Mantese Honigman Rossman and Williamson, P.C., John J. Conway, P.C., and Bruce J. Klores & Assoc. P.C. and for their Class Action Complaint, state as follows:

## I. INTRODUCTION TO THE PARTIES AND THE NATURE OF THE COMPLAINT

1. Plaintiffs bring this case on behalf of themselves and all similarly-situated active duty and retired members of the United States Armed Services, and their dependents ("military families"), entitled by federal law to receive certain health care benefits pursuant to Title 10 U.S.C. Chapter 55.

2. The Secretary of Defense and his designees in the Department of Defense ("DoD"), who administer the nation's military health benefit plans (originally called the civilian health and medical program of the uniformed services ("CHAMPUS") and now commonly referred to as TRICARE), unlawfully refuse to provide certain of those health care benefits.

3. Kenneth and Dawn B. are parents who bring this action on behalf of themselves, their minor child, Z.B., who suffers from autism spectrum disorder ("ASD"), and all others similarly situated.

4. Z.B., and all others similarly situated, are entitled to have their medically necessary health care and mental health care services paid for by the DoD.

5. The package of benefits available to all military families, both active duty and retired, is called the TRICARE Basic health benefits program. With the exception of up to $1000 per year for active duty members and their dependents and $3000 per year for military retirees and their dependents for deductibles and co-pays incurred each year, federal law requires DoD to pay for all medically necessary health care and mental health care of TRICARE Basic program beneficiaries without limit. (10 U.S.C. 1079(b)(5) and 10 U.S.C. 1086(b)(4)).

6. By law, the TRICARE Basic program covers all medically or psychologically necessary and appropriate health care and mental health care, unless the care is specifically excluded by the military health benefits statute (10 U.S.C. Chapter 55). One such exclusion is "special education, except when provided as secondary to active psychiatric treatment on an institutional basis" (10 U.S.C. 1079 (a) (9)).

4

7.  In 1975, Congress enacted the Individuals with Disabilities Education Act (IDEA), which required the public schools in every participating state to provide and to pay for an appropriate level of special education and related services for all of the nation's children, including the children of members of the military. See 20 U.S.C. §§ 1401(8), 1412(a)(1). (The free appropriate public education required by IDEA is hereinafter referred to as FAPE.)  One year later, in 1976, the same Congress excluded from coverage, as a Basic military health benefit available outside of a military treatment facility, the special education that public schools, now subject to the prod of IDEA, provide.

8.  Congress, therefore, enacted that the federal military health care budget should not reimburse the school district for the special education services the district's schools provide to children from military families.  Military families' special education shall be paid for by the nation's federal, state and local education budgets and not by the nation's military health care budget.

9.  Thus, educational services that exceed a school's FAPE obligation and that the school does not provide are not "special education" for purposes of the military health benefits statute.

10. In addition to the Basic benefits to which all active duty and retiree families are entitled, there are "extended" benefits available to some but not all military families pursuant to the Extended Care Health Option ("ECHO"). (10 U.S.C. 1097 (d), (e) and (f)). ECHO benefits are available only to dependents of active duty members with certain disabilities, one of which is autism. The ECHO program is not available to the autistic dependents of retirees. Under ECHO, the autistic children of active duty members are entitled to $36,000 in benefits for certain items and services not covered by the Basic health care program, including special education.

11. Applied Behavior Analysis ("ABA") therapy is a scientifically valid, medically accepted, and mainstream treatment that is medically necessary for Z.B. and other military children with autism.

12. With virtual unanimity, physicians, psychiatrists, psychologists, social workers and mental health professionals regard ABA therapy to be 1) the most effective treatment for autism, 2) far more effective than the next most effective set of autism treatments, and 3) far more reliably supported by scientific research than any other autism treatment.

13. As experts in the field have noted:

"ABA is medically necessary to enable a child with autism to function safely and independently in all aspects of life. The effectiveness of ABA-based intervention in Autism Spectrum Disorders has been well documented through 5 decades of research by using single-subject methodology and in controlled studies of comprehensive early intensive behavioral intervention programs. ABA is effective at developing and improving language and communication skills, social interactions, positive family relationships, daily living skills, cognitive and executive functioning, and ameliorating harmful behaviors. It is not too much to say that ABA therapy restores the very humanness stolen by autism."[1]

14. TRICARE Management Activity ("TMA") is responsible for managing the DoD's health care system, generally known as the TRICARE program.

15. Notwithstanding that medically and psychologically necessary ABA therapy is necessary and appropriate for the children of active duty and retired members of the armed services, TRICARE MANAGEMENT ACTIVITY ("TMA") refuses to pay for such care as a Basic benefit. TMA claims that ABA therapy is "special education" rather than "health care" or "mental health care" and is, therefore, excluded as a Basic benefit.

16. The legal controversy that defines the instant case is whether ABA therapy is "health care" or "mental health care," as Plaintiffs, similarly situated military families, and health care professionals assert, or "special education," as DoD claims, for purposes of the military health benefits law. The stakes are the opportunities of the children with autism in our nation's military families to live a full human life, and the lifting of the burden of the excruciating choices that military parents face between assuming the crushing economic burden of paying out-of-pocket for their autistic child's health care, thereby dramatically reducing their families' quality-of-life and risking bankruptcy versus condemning their child to awful suffering and the destruction of their vital human core.

17. TMA acknowledges that ABA therapy is a medically and psychologically necessary and appropriate treatment for autism.

---

1 Chris Plauché Johnson, M.D., et al. in a letter to the Honorable Members of the U.S. Senate Armed Services Committee, September 19, 2008.

18. Indeed, TMA acknowledges that ABA therapy is the most effective autism treatment, is dramatically more effective than any other treatment, and is in almost all cases an autistic child's best and only hope of substantial reduction of the behavioral symptoms of autism.

19. Thus, in its 2007 Report and Plan on Services to Military Dependent Children with Autism, the DoD acknowledges "the growing identification of ABA, unique among the treatments used to treat the deficits of autism, as the treatment intervention with substantive evidence for its effectiveness."

20. In the face of this knowledge, TMA has adopted an arbitrary and capricious policy that ABA therapy is "special education" and is, therefore, excluded from coverage under section 1079(a)(9). As a result, TMA denies claims for reimbursement of ABA therapy under the Basic military health care benefits program.

21. Of further import, that policy was not subjected to public notice and comment, was not published in the Federal Register and is not even in the Policy, Operations, Reimbursement and other Manuals that collectively constitute the written policies and practices of the military health system. Incredibly, plaintiffs cannot find that policy in any publicly available writing of the DoD.

22. In its Benefits denials and public statements, DoD purposely gives as little explanation as possible for its little more than bald, substantively unsupported assertion that ABA therapy, the world's only effective autism treatment, is not a Basic health care benefit that Congress directed it to pay for pursuant to the military health benefits statute.

23. In its letters to plaintiffs denying their claims for payment of ABA therapy under the TRICARE Basic program, DoD justifies its denials by reference to the policy manual provision defining special education for purposes of the TRICARE ECHO program (**Exhibit 1, *Z.B. redetermination denial***). In their denials for payment of ABA therapy under the TRICARE Basic program, DoD nowhere makes reference to or claims that there exists a definition of special education for purposes of the TRICARE Basic program. And, in fact, there is no written policy defining special education for purposes of the TRICARE Basic benefits program.

24. Because retirees with autistic children are covered only by the TRICARE Basic health benefits program and not by ECHO, TMA refuses to pay for any ABA therapy for their children with autism.

25. Although TMA likewise refuses to pay for the ABA therapy of autistic children of active duty military families pursuant to the TRICARE Basic program, TMA does reimburse active-duty military families with autistic children for the cost of ABA therapy pursuant to ECHO. ECHO covers services for autistic children in an amount not to exceed $36,000 per year.

26. The $36,000 per year cap prevents ECHO from covering a substantial amount of the ABA therapy expenses incurred annually by many active-duty families.

27. The Department of Defense estimates that 1 in every 88 members of the armed services has a dependent with ASD.

28. ABA therapy is an intensive, extremely detailed and enormously nuanced psychosocial, behavioral intervention designed, supervised and performed by trained and skilled ABA therapy professionals. It is, therefore, expensive.

29. Effective ABA treatment requires 25-40 hours per week of services, usually over a period of years.

30. The Department of Defense is not permitted to deny payment for ABA therapy pursuant to TRICARE's Basic program because of its substantial cost.  Congress capped the liability for health and mental health care of active-duty families at $1000 per year and retiree families at $3000 per year pursuant to the TRICARE Basic health care benefits program. Congress has decided, as provided by 10 U.S.C. chapter 55, that military personnel, active duty and retired, deserve the highest level of medical care; it is the least our Country can do for those who risk everything.  Military families who have dependents with autism sacrifice more than most military families, because frequent relocations and family disruptions make effective treatment for ASD even more difficult.

31. ABA therapy does not fall within the plain meaning or any reasonable interpretation of "special education" as that term is used in 10 U.S.C. chapter 55, section 1079(a)(9), and the regulations promulgated pursuant to the statute. See, e.g., 32 C.F.R. 199.5.

32. ABA therapy is health care and mental health care and is not special education, inter alia, for the following reasons:

(A.) In the nation's universities where special educators are trained, the administration and faculty do not regard ABA therapy to be part of the special education curriculum.

(B.) In the nation's pre-schools and K-12 public schools where special education is provided, the public pre-schools and schools do not regard ABA therapy as a part of their special education responsibility and mission.

(C.) The nation's courts have repeatedly held that because IDEA does not guarantee disabled children the right to maximize their potential, but only requires that schools provide a floor of meaningful educational benefit, ABA therapy is not part of the "free and appropriate education" and "special education and related services" required by the Individuals with Disabilities Education Act (IDEA).

(D.) In the future, if a Court should determine that ABA therapy is part of the "free and appropriate public education" required by IDEA, it would be because ABA therapy is a "related service" and not because ABA therapy is "special education." Congress pointedly chose not to exclude "related services" required for a free appropriate public education from coverage as a Basic military health benefit.

(E.) ABA therapy professionals are not trained, licensed, certified, supervised or administered in their work by special education professionals. ABA therapists are trained, licensed, certified, supervised and administered in their work by psychologists, physicians and/or ABA professionals.

(F.) The historical and scientific roots of ABA therapy are in behavioral psychology and, to some degree, biology, and not in special education or education.

(G.) ABA therapy professionals have organized themselves, inter alia, as a section of the American Psychological Association, the Association For Behavior Analysis International, the Society for the Advancement of Behavior Analysis,

9

The Behavior Analysis Certification Board, the Association of Professional Behavior Analysts and other independent, self-regulating organizations unrelated to the organizations around which the special education community has coalesced.

(H.) As described more fully below, ABA therapy is not special education as defined by the Department of Defense in its own regulations. (See 34 CFR 199.5(c)(4), relating to ECHO benefits).

(I.) As described more fully below, ABA therapy is not special education as defined by the US Department of Education in its IDEA regulations. (34 CFR 300.39)

(J.) In its ECHO program, the Department of Defense requires ABA therapy professionals and psychologists, not special education teachers or other special education professionals, to develop, formulate and supervise ABA therapy. (See TRICARE Operations Manual 6010.56-M, chapter 18, section 9.) The Department of Defense's own regulations and practices, therefore, reveal that even it regards ABA therapy to lie outside of the jurisdiction and competence of special educators and within the jurisdiction and competence of ABA professionals.

33. When not indulging the pretext that ABA therapy is special education for purposes of the TRICARE Basic health benefits plan with its unlimited DoD liability for medically necessary health care, and while operating in the sphere of the ECHO program with its limited $36,000 DoD liability, DoD insists that ABA therapy be supervised and practiced by ABA professionals and not by special educators, because DoD knows that special educators do not have appropriate ABA therapy knowledge, training or experience. In other words, despite the words and labels it uses, DoD *acts* as if ABA therapy is a field of practice distinct from special education.

34. The only organizations that claim that ABA therapy is special education are those that stand to profit from that conclusion--insurance companies and government agencies obligated to pay for ABA therapy out of their budgets and individuals and organizations paid by those insurance companies and government agencies. Everyone else regards ABA therapy to be a behavioral intervention that is either an independent field of practice and study or a branch of psychology. Plaintiffs are aware of no credible person or entity without a financial stake

in the outcome of the "ABA therapy is health care vs. ABA therapy is special education" debate that believes or claims that ABA therapy is special education.

35. By semantic artifice, procedural trick and their overwhelming resource advantage versus overwhelmed military families with autistic children lacking the resources to challenge denials of coverage, the Department of Defense is flouting the declared instruction of Congress to "create and maintain high morale by... providing an improved program of medical and dental care" (10 U.S.C. 1071) and to provide "all health care to which a covered beneficiary is entitled." (10 U.S.C. 1099).

36. DoD's conduct constitutes a public, calculated abandonment of the most vulnerable members of our nation's military families, a betrayal of ethics and honor and is, therefore, an assault on the morale of the nation's military families and the purposes of the military health benefits statute.

37. Defendants' determination that ABA is statutorily excluded "special education" is, therefore, arbitrary, capricious, and contrary to law, Congressional intent, and Department of Defense and Department of Education regulations. And the Agency lacks substantial evidence for this determination.

## II. JURISDICTION AND VENUE

38. This action arises out of, inter alia, Defendants' violation of the Administrative Procedure Act ("APA") which provides for judicial review of final agency action, 5 U.S.C. § 701, et seq. The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

39. Venue is appropriate in the District of Columbia pursuant to 28 U.S.C. § 1391(e).

## III. THE PARTIES

### A.    PLAINTIFFS

40. Kenneth B. is the father of Z.B.  Since Kenneth B. is a retired member of a uniformed service, his dependents, including Z.B., are TRICARE beneficiaries.  Z.B. is eligible for benefits under the TRICARE Basic Program.

41. Kenneth B. and his family, including Z.B., reside in Crestview, Florida.  Z.B. has been diagnosed with ASD and receives medically and psychologically necessary ABA therapy from

11

a TRICARE authorized provider.  Nonetheless, TRICARE wrongfully refuses to provide or allow for coverage for ABA therapy, a scientifically validated and beneficial treatment for the ASD from which Z.B. suffers.

## B.    DEFENDANTS

42. TRICARE MANAGEMENT ACTIVITY ("TMA"), 5111 Leesburg Pike, Skyline 5, Suite 810, Falls Church, VA 22041-3205, is the Department of Defense's health care system for active duty and retired uniformed service members and their families.  TMA is responsible for managing the TRICARE Program.

43. The United States Department of Defense, 1400 Defense Pentagon, Washington DC 20301-1400, is an agency of the United States government and resides in this judicial district.  The TMA manages the TRICARE health care program for active duty members, retirees, their families, and others entitled to Department of Defense health care under the authority of the Assistant Secretary of Defense for Health Affairs, an officer of the DoD.

44. Robert M. Gates currently serves as the United States Secretary of Defense, 1000 Defense Pentagon Room 3E880, Washington, DC 20301-1000, and therefore resides in this judicial district.  The Secretary of Defense has delegated authority to the Assistant Secretary of Defense (Health Affairs) to provide policy guidance, management control, and coordination as required for all DoD health and medical resources and functional areas including health benefit programs.  Nonetheless, Secretary Gates maintains ultimate authority, direction and control over DoD, including the TRICARE health benefits program.

## IV. THE ADMINISTRATIVE APPEAL PROCESS HAS NOT PROVIDED, AND WILL NOT PROVIDE, RELIEF FOR PLAINTIFFS.

45. Defendants have authorized Managed Care Support Contractors ("MCSC") to make the initial determination of benefits for requests for coverage of health care services in the TRICARE Programs.  The MCSC is required to issue a dated initial determination in the form of an Explanation of Benefits ("EOB") or a letter.  The initial determination must contain sufficient information to enable the beneficiary to understand the basis for the denial.  The initial determination must state with specificity what services and supplies are being denied and for what reason.  See 32 C.F.R. 199.10 and TRICARE Operations Manual 6010.56-M, chapter 12, section 1.

12

46. If the initial determination results in a denial of coverage or other adverse decision, the TRICARE beneficiary has 90 days from the initial determination to file a request for reconsideration. See 32 C.F.R. 199.10 and TRICARE Operations Manual 6010.56-M, chapter 12, section 1.

47. If a request for reconsideration is not filed, the initial determination is final and subject to judicial review pursuant to APA § 704.

48. If a request for reconsideration is filed, the MCSC will either reverse the initial determination and issue an EOB, or the MCSC will issue a letter explaining why the initial denial is upheld.

49. If the reconsideration results in a denial of coverage or other adverse decision, the TRICARE beneficiary has 60 days from the date of the reconsideration decision to request a formal review or a hearing with the TMA.

50. If an appeal is not filed within 60 days of the date of the reconsideration decision, the determination is final and subject to judicial review pursuant to APA § 704.

51. Questions of law are not appealable. 32 C.F.R. § 199.10. Defendants have adopted a policy, intended to have the force of law, that the denial of coverage for ABA therapy under TRICARE Basic Programs is not an appealable issue.

52. Defendants have arbitrarily adopted a policy intended to have the force of law that defines ABA therapy as special education, and therefore excluded from coverage under TRICARE Basic Programs pursuant to 10 U.S.C. chapter 55 § 1079(a)(9).

53. Defendants' denial of coverage for ABA therapy under TRICARE Basic Programs is final. Any further appeal would be futile and cause irreparable harm to Z.B., and other military children with ASD whose long term chances for relief from the effects of ASD become bleaker with each day they go without the medically and psychologically necessary ABA therapy.

## V.    THE CHARACTERISITICS AND SYMPTOMS OF AUTISM.

54. Autism Spectrum Disorder ("ASD") is a complex developmental disability, which adversely affects, inter alia, verbal and nonverbal communication and social interactions, a child's

13

educational performance, and the overall ability of a person who suffers from the condition to function in society.

55. Without proper care, treatment, and therapy, autism can be a debilitating and entirely disabling condition, leading people to grow into adulthood without the ability to perform the most basic of human functions and activities of daily living.

56. The medical community has recognized that autism is one of five pervasive developmental disorders.

57. Pervasive developmental disorders are a category of neurological disorders characterized by severe impairment in several areas of development, which generally result in abnormal social interaction and communication, severely restricted interests, and highly repetitive behavior.

58. Autism is the most common of the pervasive development disorders.

59. Both children and adults with autism typically show extreme difficulties in communication, cognitive ability, life skills, and social interaction and often display aberrant behavior.

60. Autism begins manifesting itself during infancy or early childhood, and can manifest itself in a variety of ways.

61. The social impairments of autism usually become apparent in early childhood and continue through adulthood.

62. The characteristic behavior of individuals with autism includes, inter alia, impaired social interaction, impaired communication abilities, restricted interests, repetitive behavior, stereotyped movements, resistance to environmental change or change in daily routines, obsessive attachment to objects, decreased motor skills, tantrums, apparent over-sensitivity or under-sensitivity to pain, fearlessness, aloofness, and unusual responses to sensory experiences.

63. Atypical eating behavior is also prevalent among individuals with autism, including selectivity of food choices and eating rituals.

64. Autistic individuals may display a number of forms of repetitive or restricted behavior. These behaviors may include, inter alia, the following:

14

A.      Stereotyping: Apparently purposeless movement;

B.      Compulsive behavior: Intentional, rule oriented behavior;

C.      Sameness: Resisting change;

D.      Ritualistic behavior: Performing daily activities the same way every time;

E.      Restricted behavior: A limitation in focus or interests; and/or

F.      Self-injury: Behavior that can injure the individual, such as biting.

65. Individuals with autism may exhibit the characteristic traits of autism in any combination, and in different degrees of severity.

66. Socially abnormal behavior becomes more pronounced as children with autism become toddlers.

67. Young, autistic children are less likely than neurotypical children to make eye contact, to have social understanding, communicate with others, or respond to emotions.

68. Mental retardation is also much more prevalent among individuals with autism than among neurotypical individuals.

69. The plaintiff children and all child members of the class herein defined have been diagnosed with autism. The plaintiff adults and all adult members of the class herein defined have dependents that have been diagnosed with autism.

70. While each parent of a child with autism has their own unique experiences that arise in the context of providing care for an autistic child, some of those burdens include the following:

A.      Having to watch your child – every second of every day – to prevent them from hurting themselves or others, running away or engaging in some other form of self injurious, violent or embarrassing behavior.

B.      Dealing with the looks of disgust received at the library or store in response to an autistic child's unruly behavior.

C.      At least one military dependent with autism engages in picking at wounds on herself – and on other people. If the child sees or feels a wound of any kind on

15

herself – or on anyone else, she will quickly lance and dig at the wound. Her parents have resorted to putting socks on her hands at bed time to prevent her from doing damage to herself. Her parents have to watch her and redirect her constantly to prevent her from wounding herself.

D.    At least one military dependent with autism masturbates without any limit and regardless of the location. She will put an object – any object – between her legs and rock back and forth on it until her parents can physically get her to redirect her actions. She will rub up to and past the point where she damages her genitals. Her parents have to keep second by second tabs on her to prevent her from injuring herself.

E.    At least one military dependent with autism engages in frequent tantrums. Often the tantrums are minutes, or seconds apart and can last 20 minutes or longer. The child with autism gets upset and tantrums at anything that displeases her, upsets the schedule she has in mind or does not meet her expectations. The child's tantrums are characterized by crying and shouting at the top of her lungs, accompanied by hitting, kicking and spitting.

F.    At least one military dependent with autism frequently runs away from her parents. In spite of her parents' best efforts to watch her every second; there have been times that they turned their heads for a moment. When that has happened, the child with autism has run away, and on a few occasions has run out of sight. On one occasion, at a mall, the child was completely out of the sight of her desperate mother for 20 minutes. Her mother finally found the child ¾ of a mile from where the child first ran away, and the child was still running. Real fear is losing sight of your beloved child who has no means to protect herself.

G.    Autism is worry. Autism is despair. Autism is fear for the future of your child.

71. Of course, military families are used to sacrifice, and their overwhelming love for their children with autism allows the parents to shoulder the burdens that come with the disease.

72. What is much more difficult for the parents than dealing with their children's disability is knowing that there is treatment which has proven effective at fighting autism, and having to

16

fight the TRICARE bureaucracy to get payment for the ABA therapy their autistic children need to be independent, whole, reasonably functional and happy human beings.

## VI. APPLIED BEHAVIOR ANALYSIS THERAPY: A SCIENTIFICALLY VALID, MEDICALLY AND PSYCHOLOGICALLY NECESSARY TREATMENT FOR CHILDREN WITH AUTISM.

73. ABA is a scientifically valid, medically accepted, and mainstream treatment for ASD, which enables people with autism to learn and perform functions that they would not otherwise be able to accomplish.

74. Among other things, ABA teaches social, motor, and verbal behaviors, as well as reasoning skills.

75. ABA is a science concerned with the behavior of people; it attempts to understand, explain, describe, and predict behavior.

76. ABA interventions include, inter alia, the following:

   a. the use of reinforcing consequences to produce socially significant improvement in human behavior;

   b. the functional analysis of the relations between environment and behavior;

   c. the design, implementation, and evaluation of environmental modifications; and,

   d. direct observation and measurement to assess effectiveness.

77. ABA therapy is no less medically necessary than other medical supports provided in the academic environment, such as speech and occupational therapies, which are covered by TRICARE Basic Programs.

78. ABA therapy aids children with autism in leading more independent and active lives.

79. Reputable ABA treatment is available from facilities around the country that are managed and staffed by clinicians with considerable education, certifications, and training in ABA therapy.

80. Studies show that ABA therapy is the most effective treatment for children with autism.

17

81. For example, the United States Surgeon General states that "30 years of research demonstrated the efficacy of applied behavioral methods in reducing inappropriate behavior and increasing communication, learning and appropriate social behavior." (MENTAL HEALTH: A REPORT OF THE SURGEON GENERAL, ch. 3, p. 5).

82. The National Institute of Mental Health similarly concludes that "among the many methods available for treatment and education of people with autism, applied behavior analysis (ABA) has become widely accepted as an effective treatment." (NIMH, Autism Spectrum Disorders: Pervasive Developmental Disorders, DOC No. NIH-08-551(2008)).

83. The New York State Department of Health Early Intervention Program recommends that ABA is an essential element of any intervention program for young children with autism. (Clinical Practice Guideline: The Guideline Technical Report, Autism/Pervasive Developmental Disorders, Assessment and Intervention for Young Children, p. 25.)

84. The Association for Science in Autism Treatment endorses ABA as the only treatment modality with scientific evidence supporting its effectiveness. (http://www.asatonline.org/intervention/recommendations.htm).

85. The State of Michigan's Insurance Commissioner has held, based on independent medical examinations, that ABA is a reasonable, safe, and necessary treatment for children with autism.

86. Intense behavioral intervention for children with autism is the standard of care as recommended by the American Academy of Pediatrics and is an appropriate therapeutic management of autism. (Committee on Children with Disabilities, Technical Report: The Pediatrician's Role in the Diagnosis and Management of Autistic Spectrum Disorder in Children. Pediatrics Vol. 107(5) 2201e85.)

87. Successful treatment for children with autism depends on quick intervention and intensity of service hours. By its very definition, ABA cannot be effectively provided if confined to an educational or even "special education" environment.

88. The American Academy of Pediatrics and the National Research Council both recommend a minimum of 25 hours a week of ABA-based interventions.

89. The Navy and Army Surgeons General recommend up to 40 hours a week of ABA treatment. (www.health.mil/tmablog/Article.aspx?ID=329).

90. At least one study has shown that when ABA therapy is started at a young age, 60% of higher functioning children can lose their autism diagnosis by age 8.

91. Experts emphasize that it is imperative to provide the prescribed level of treatment children with autism require. Treatment delayed or not provided in the prescribed amount diminishes the effectiveness of ABA therapy, often dramatically so.

92. Even for active duty members who receive some coverage under ECHO, Defendants' refusal to provide coverage for the full number of prescribed hours has devastating negative impacts on the health and developmental progress of children with autism.

93. Interruptions in treatment caused by the inability to pay in the face of no Basic program coverage and limited ECHO program coverage lead to diminished outcomes and to higher long term health care costs.

## VII.    CONGRESS CREATED TRICARE "TO ASSURE THAT MEDICAL CARE . . . HEALTH CARE . . . [AND] MENTAL HEALTH CARE IS AVAILABLE FOR DEPENDENTS OF [ACTIVE DUTY AND RETIRED] MEMBERS OF THE UNIFORMED SERVICES," SUCH AS Z.B. (10 U.S.C. §§ 1076, 1077, 1079, AND 1086).  ABA THERAPY IS "MEDICAL CARE," "HEALTH CARE," AND "MENTAL HEALTH CARE."

94. Congress created the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS) in 1966 to improve the health care program for members of the uniformed services, including retirees and their dependents.

95. Today, the CHAMPUS program is implemented through a managed health care program known as TRICARE, and is a key component to maintaining the quality of life for the men and women of the armed forces who put their lives at risk to serve this Country every day, as well as their dependents.

96. The purpose of TRICARE is to create and maintain high morale in the uniformed services by providing an improved and uniform program of medical and dental care for members and certain former members of those services, and for their dependents.  10 U.S.C. § 1071.

19

97. The treatment of autism by ABA therapy is a covered Basic military health benefit, because it is the "treatment of [a] medical... condition" pursuant to 10 U.S.C. 1077(a)(4).

98. The treatment of autism by ABA therapy is a covered Basic military health benefit, because it is the "treatment of nervous, mental, and chronic conditions" pursuant to 10 U.S.C. 1077(a)(5).

99. The treatment of autism by ABA therapy is a covered Basic military health benefit, because it is "any rehabilitative therapy to approve, restore, or maintain function, or to minimize or prevent deterioration of function, of the patient when prescribed by a physician" pursuant to 10 U.S.C. 1077(a)(17).

100. The treatment of autism by ABA therapy is a covered Basic military health benefit, because 10 U.S.C. 1072 (10) provides that "the term 'health care' includes mental health care." ABA therapy is "mental health care" (10 U.S.C. 1072(10))... "to which a covered beneficiary is entitled" (10 U.S.C. 1099) under multiple sections of title 10, chapter 55 of the United States Code. (See 10 U.S.C. 1071, 1072, 1074, 1076, 1079, 1086 and 1099).

101. Subject to all applicable definitions, conditions, limitations, or exclusions, the TRICARE Basic Program must pay for medically necessary services and supplies required in the diagnosis and treatment of illness or injury.  32 C.F.R. § 199.4(a)(1)(i).

102. When medically or psychologically necessary ABA therapy is provided to a TRICARE beneficiary by a TRICARE authorized provider, there are no definitions, conditions, limitations or exclusions preventing TRICARE Basic coverage.

103. Under TRICARE's Basic Program, the term "medical" generally "pertains to the diagnosis and treatment of illness, injury, pregnancy, and mental disorders by trained and licensed or certified health professionals."  32 C.F.R. § 199.2.  The ABA therapy prescribed for Z.B. and the class members he represents is a "medical" treatment.

104. TRICARE covers care that is "medically or psychologically necessary" meaning "appropriate medical care that [is] generally accepted by qualified professionals to be reasonable and adequate for the diagnosis and treatment of illness, injury, pregnancy, and mental disorders or that are reasonable and adequate for well-baby care."  Id. The ABA therapy prescribed for Z.B. and the class members he represents is "medically or psychologically necessary."

20

105.    The TRICARE regulations define "appropriate medical care" as "services performed in connection with the diagnosis or treatment of disease or injury, pregnancy, mental disorder, or well baby care which are in keeping with the generally accepted norms for medical practice in the United States." 32 C.F.R. § 199.2. The ABA therapy prescribed for Z.B. and the class members he represents is "appropriate medical care," because it is "in keeping with the generally accepted norms for medical practice in the United States."

106.    The TRICARE regulations further define "appropriate medical care" as services performed by an "authorized individual professional provider rendering the medical care [who] is qualified to perform such medical services by reason of his or her training and education and is licensed or certified by the state where the service is rendered or appropriate national organization or otherwise meets the CHAMPUS standards." 32 C.F.R. § 199.2. The ABA therapy prescribed for Z.B. and the class members he represents is "appropriate medical care" pursuant to 32 C.F.R. § 199.2.

107.    Providers qualified to perform medically and psychologically necessary ABA services for individuals with ASD include:

A. A provider with a current, unrestricted State-issued license to provide ABA services; or

B. A provider with a current, unrestricted State-issued certificate as a provider of ABA services; or

C. A provider certified by the BACB (http://www.bacb.com) as either a Board Certified Behavior Analyst (BCBA) or a Board Certified Assistant Behavior Analyst (BCABA) where such state-issued license or certification is not available; or

D. Subject to certain conditions, a Corporate Services Provider that employs one or more of the above individual providers.  See TRICARE Operations Manual 6010.56-M, chapter 18, section 9.

108.    Medically or psychologically necessary health care that is proven safe and effective and considered the standard of care in the United States is a TRICARE Benefit under the Basic program unless it is expressly excluded from coverage by statute. ABA therapy is medically and psychologically necessary health care that is proven safe and effective and considered the standard of care in the United States.

21

## VIII. DoD's RULES AND PRACTICES UNDER THE MILITARY HEALTH BENEFITS STATUTE, U.S. DEPARTMENT OF EDUCATION RULES UNDER THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT, THE RULES AND PRACTICES OF THE NATION'S UNIVERSITIES, K-12 PUBLIC SCHOOLS, PRE-SCHOOLS, STATE MEDICAID PROGRAMS, PRIVATE INSURERS AND ABA THERAPY PROFESSIONAL ORGANIZATIONS CUMULATIVELY ESTABLISH THAT ABA THERAPY IS NOT SPECIAL EDUCATION.

### (A). GOVERNING STATUTORY AND REGULATORY BACKGROUND.

109.    "Special education" is excluded from coverage outside of a military treatment facility under the TRICARE Basic health benefits program "except when provided as secondary to the active psychiatric treatment on an institutional inpatient basis."  10 U.S.C. Chapter 55, § 1079(a) (9).

110.    Defendants have acknowledged not only that ABA therapy is medically and psychologically necessary health care, but it is also the single most effective treatment for autism.

111.    By Defendants' own admission then, the TRICARE Basic Program covers ABA therapy for children with autism, unless ABA therapy is "special education."

112.    In its Benefits denials and public statements, DoD purposely gives as little explanation as possible for its little more than bald, substantively unsupported assertion that ABA therapy, the world's only effective autism treatment, is not a Basic health care benefit that Congress directed it to pay for pursuant to the military health benefits statute.

113.    In their letters to plaintiffs denying their claims for payment of ABA therapy under the TRICARE Basic program, DoD justifies its denials by reference to the policy manual provision defining special education for purposes of the TRICARE ECHO program (**Ex 1, *Z.B. Redetermination Denial***). In their denials for payment of ABA therapy under the TRICARE Basic program, DoD nowhere makes reference to or claims that there exists a definition of special education for purposes of the TRICARE Basic program. There is no written policy defining special education for purposes of the TRICARE Basic benefits program.

22

114.    The National Defense Authorization Act for Fiscal Year 2002 authorized the creation of the Extended Health Care Option (ECHO) only for active duty members of the uniformed services, and their dependents. 10 U.S.C. Chapter 55, § 1079(d).

115.    Special education is covered under ECHO. 10 U.S.C. Chapter 55, § 1079(e) (3).

116.    Retirees and their dependents are not eligible for ECHO coverage.

117.    Defendants claim that ABA therapy is special education, which is only available to ECHO beneficiaries subject to a $36,000 per year cap. TRICARE Policy Manual 6010.57-M, chapter 9, section 9.

118.    Defendants have refused to provide any ABA therapy coverage for dependents of retirees.

119.    ECHO provides eligible beneficiaries with coverage for "special education as provided by the Individuals with Disabilities Education Act and defined at 34 C.F.R. 300.26 [sic - special education is defined at 34 C.F.R. 300.39, not 34 C.F.R. 300.26] and that is specifically designed to accommodate the disabling effects of the qualifying condition." 32 C.F.R. 199.5(c) (4).

## (B.) ABA THERAPY IS NOT "SPECIAL EDUCATION" WITHIN THE MEANING OF IDEA AND ITS IMPLEMENTING REGULATIONS AS INTERPRETED BY THE UNITED STATES DEPARTMENT OF EDUCATION AND THE UNITED STATES SUPREME COURT.

120.    Under IDEA and its implementing regulations promulgated by the U.S. Department of Education, "special education" means "specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability." 20 U.S.C. 1401(25), 34 C.F.R. 300.39.

121.    ABA therapy is not special education within the meaning of the IDEA regulations for at least 2 reasons:

(a) First, ABA therapy is a therapeutic behavioral intervention performed by a highly trained behavioral psychologist or applied behavior analyst and is not "instruction" performed by a special education teacher.

23

(b) Secondly, ABA therapy is almost never "at no cost to the parents," precisely because it is almost never part of the special education curriculum provided by special education teachers at no cost to parents in the nation's public schools. It generally costs parents of children with ASD tens of thousands of dollars per year to provide a child with ASD appropriate medically and psychologically necessary ABA therapy.

122.    Clearly, ABA therapy does not fall within the plain meaning of "special education" as defined in the IDEA regulations and adopted by Defendants in 32 C.F.R. 199.5.

123.    Defendants have also arbitrarily adopted definitions of special education that differ from the official regulations published in the Code of Federal Regulations and the Federal Register.  TRICARE Operations Manual 6010.56-M defines "special education" as "specially designed instruction to meet the unique [Free Appropriate Public Education] needs, as specified in the [Individualized Education Program], of a child with a disability."

124.    In any event, ABA therapy is not "specially designed instruction to meet the unique [Free Appropriate Public Education] needs, as specified in the [Individualized Education Program], of a child with a disability" for at least 2 reasons:

(a) First, ABA therapy is a therapeutic behavioral intervention performed by a highly trained behavioral psychologist or applied behavior analyst and is not "instruction" performed by a special education teacher.

(b) Secondly, pursuant to the U.S. Supreme Court's decision in *Rowley* and subsequent decisions of that court and lower courts interpreting both *Rowley* and the effect of the 1997 amendments to IDEA, the "appropriate" special education required by the IDEA statute is a program of services "reasonably calculated to confer meaningful educational benefit." See *Adams v. Oregon*, 195 F.3d 1141, 1145 (9th Cir. 1999).  The nation's public schools have been subject to the requirements of the IDEA statute for nearly 35 years. If ABA therapy were required by the federal courts to be part of a program of services "reasonably calculated to confer meaningful educational benefit" on autistic and other mentally handicapped children, by this time ABA therapy would be commonly provided by public schools to autistic and other mentally handicapped children as part of their special education programs. In fact, ABA therapy is almost never part of the special education curriculum provided by special education teachers at no cost to parents in the nation's public schools.

24

125.    Federal courts have interpreted Rowley and the 1997 IDEA amendments to mean that IDEA does not require schools to provide students with the best or optimal education, nor to ensure that students receive services to enable them to maximize their potential. Instead, schools are obligated only to offer services that provide students with "meaningful educational benefit." Courts sometimes refer to this as the Cadillac versus Chevrolet argument, with the student entitled to a serviceable Chevrolet, not the Cadillac.

126.    Whatever a post-Rowley "meaningful educational benefit" special education is, it almost never includes ABA therapy. No federal court has ever held that a K-12 public school must provide ABA therapy as part of the "serviceable Chevrolet services" required by IDEA of special education in the United States.

127.    If "special education" means the "special education" that K-12 schools are required to provide pursuant to their FAPE obligation under the IDEA statute, the courts have held that ABA therapy is not "special education."

128.    Alternatively, if "special education" means the "special education" that schools customarily and routinely provide to their students, ABA therapy is not "special education."

129.    The reality that the nation's special education schools do not provide ABA therapy and the courts have not required them to provide ABA therapy pursuant to IDEA's 35-year-old mandate is likewise revealed by the presence of either laws or pending legislation in at least 33 states to require that private insurers provide ABA therapy as a mandatory benefit. If the nation's schools already provided ABA therapy on a widespread basis, states would not be considering laws and legislation to provide for a fee what is already widely provided free of charge.

130.    As the IDEA statute has been interpreted by many courts, ABA therapy is, therefore, not special education.

131.    And according to the Department of Defense regulations defining special education by reference to the definition of special education in the IDEA statute and regulations, ABA therapy is, therefore, not special education.

**(C.) ABA THERAPY IS A "RELATED SERVICE" UNDER IDEA AND ITS IMPLEMENTING REGULATIONS AND IS, THEREFORE, NOT "SPECIAL EDUCATION."**

132. While ABA therapy is necessary to prepare a child with ASD to benefit from an education, it is not because ABA therapy is special education. If the nation's courts were ever to require public schools to provide ABA therapy as part of their obligation to provide a FAPE under IDEA, it would be as a "related service."

133. The IDEA statute states that "the term 'related services' means transportation, and such developmental, corrective, and other supportive services (including speech-language pathology and audiology services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children." 20 U.S.C. 1401 (22).

134. The IDEA regulations define "related services" as follows:

"transportation and such developmental, corrective, and other supportive services as are required to assist a child with a disability to benefit from special education, and includes speech-language pathology and audiology services, interpreting services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, early identification and assessment of disabilities in children, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services for diagnostic or evaluation purposes. Related services also include school health services and school nurse services, social work services in schools, and parent counseling and training." 34 C.F.R. 300.34(a).

135. ABA therapy clearly falls within the general, overarching definition of related services, because it is "developmental, corrective, and other supportive services as may be required to assist a child with a disability to benefit from special education." 20 U.S.C. 1401 (22).

136. In addition to falling within the overarching statutory and regulatory definition of " related services," ABA therapy, in its different aspects, falls within the more specific definitions of several enumerated examples of related services listed and described in the statute and its implementing regulations, including psychological services, speech-language

26

pathology services, social work services, counseling services, and orientation and mobility services.

137.    The IDEA regulations specifically state that psychological services include "assisting in developing positive behavioral intervention strategies." 34 C.F.R. 300.34(c)(10)(vi). ABA therapy clearly includes the same.  Indeed, this lies at the very heart of ABA therapy.

138.    The IDEA regulations state that psychological services include "administering psychological and educational tests, and other assessment procedures." 34 C.F.R. 300.34 (c) (10) (i). ABA therapy clearly includes the same.

139.    The IDEA regulations state that psychological services include "interpreting assessment results." 34 C.F.R. 300.34 (c) (10) (ii).  ABA therapy clearly includes the same.

140.    The IDEA regulations state that psychological services include "obtaining, integrating, and interpreting information about child behavior and conditions related to learning." 34 C.F.R. 300.34 (c) (10) (iii). ABA therapy clearly includes the same.

141.    The IDEA regulations state that psychological services include "consulting with other staff members in planning school programs to meet the special educational needs of children as indicated by psychological tests, interviews, direct observation, and behavioral evaluations." 34 C.F.R. 300.34 (c) (10) (iv).  ABA therapy clearly includes the same.

142.    The IDEA regulations specifically state that social work services in schools includes "preparing a social or developmental history on a child with a disability." 34 C.F.R. 300.34 (c) (14) (i). ABA therapy clearly includes the same.

143.    The IDEA regulations specifically state that social work services in schools includes "group and individual counseling with the child and family." 34 C.F.R. 300.34 (c) (14) (ii). ABA therapy clearly includes the same.

144.    The IDEA regulations state that social work services in schools includes "working in partnership with parents and others on those problems in a child's living situation (home, school, and community) that affect the child's adjustment in school." 34 C.F.R. 300.34 (c) (14) (iii). ABA therapy clearly includes the same.

145.    The IDEA regulations state that social work services in schools includes "mobilizing school and community resources to enable the child to learn as effectively as possible in his

27

or her educational program." 34 C.F.R. 300.34 (c) (14) (iv). ABA therapy clearly includes the same.

146.    The IDEA regulations state that social work services in schools includes "assisting in developing positive behavioral intervention strategies." 34 C.F.R. 300.34 (c) (14) (v). ABA therapy clearly includes the same. Indeed, this lies at the very heart of ABA therapy.

147.    The IDEA regulations state that speech-language pathology services includes "identification of children with speech or language impairments." 34 C.F.R. 300.34 (c) (15) (i). ABA therapy clearly includes the same.

148.    The IDEA regulations state that speech-language pathology services includes "diagnosis and appraisal of specific speech or language impairments." 34 C.F.R. 300.34 (c) (15) (ii). ABA therapy clearly includes the same.

149.    The IDEA regulations state that speech-language pathology services include "provision of speech and language services for the habilitation or prevention of communicative impairments." 34 C.F.R. 300.34 (c) (15) (iii). ABA therapy clearly includes the same.

150.    The IDEA regulations state that speech-language pathology services include "counseling and guidance of parents, children, and teachers regarding speech and language impairments." 34 C.F.R. 300.34 (c) (15) (iv).  ABA therapy clearly includes the same.

151.    The IDEA regulations state that "counseling services means services provided by qualified social workers, psychologists, guidance counselors, or other qualified personnel." 34 C.F.R. 300.34 (c) (10).  ABA therapy clearly includes counseling by qualified and certified Applied Behavior Analysts.

152.    Several categories of "related services" are medically and psychologically necessary services covered by TRICARE Basic Programs, as ABA therapy services should be.

**(D.) THE LICENSING RULES AND PRACTICES OF THE STATES, AND THE RULES AND PRACTICES OF THE NATION'S PUBLIC PRE-SCHOOLS AND K-12 SCHOOLS CUMULATIVELY REVEAL THAT ABA THERAPY IS NOT "SPECIAL EDUCATION."**

153.    In practice, most public schools do not provide even minimal ABA therapy services to children with ASD, and Plaintiffs are not aware of any schools that provide the full amount

of medically and psychologically necessary ABA therapy services required for fully effective treatment of children with ASD.

154. One reason for the absence of ABA therapy in the public schools is that special education teachers are not trained, licensed, certified or qualified by education, training or experience to be ABA therapists.

155. Enrollment in and completion of undergraduate, and in some cases graduate, special education programs in the nation's universities are a condition precedent to licensure to teach special education in the nation's K-12 public schools. Currently and in past years, university special education programs that are, pursuant to state and federal law, a condition precedent to licensure to teach special education in the nation's public schools do not qualify special education teachers to perform ABA therapy.

156. No special education program, by itself, without an additional and separate multi-year course of instruction in ABA therapy qualifies a special education teacher to perform ABA therapy.

157. In the nation's universities where special educators are trained, ABA therapy is, therefore, not regarded as a constituent part of "special education."

158. The curricula and practices of the special education departments of the nation's universities as well as the special education licensure laws of the 50 states, therefore, reveal that ABA therapy does not constitute special education.

## (E.) THE RULES AND PRACTICES OF THE DEPARTMENT OF DEFENSE, IN ITS ECHO PROGRAM, REVEAL THAT ABA THERAPY IS NOT "SPECIAL EDUCATION."

159. Notably, DoD requires ABA therapy professionals and/or psychologists, not special education teachers or other education professionals, to develop, formulate and supervise ABA therapy pursuant to ECHO. DoD does not permit special education teachers or other special education professionals to develop, formulate, or supervise ABA therapy. Indeed, special education teachers and other education professionals are not even permitted to perform ABA therapy under the supervision of an ABA/psychology professional without training in ABA therapy over and above their special education training.

29

160.    When not indulging the pretext that ABA therapy is special education for purposes of the TRICARE Basic health benefits plan with its unlimited DoD liability for medically necessary health care, and while operating in the sphere of the ECHO program with its limited $36,000 DoD liability, DoD insists that ABA therapy be supervised and practiced by ABA therapy professionals and not by special educators, because DoD knows that special educators do not have appropriate ABA knowledge, training or experience. In other words, despite the words and labels it uses, DoD *acts* as if ABA is a field of practice distinct from special education.

161.    The rules and practices of the DoD, therefore, reveal that ABA therapy does not constitute special education.

## (F.) THE RULES AND PRACTICES OF THE STATES' MEDICAID PROGRAMS REVEAL THAT ABA THERAPY IS NOT "SPECIAL EDUCATION."

162.    The state Medicaid programs that pay for ABA therapy for autistic children require ABA professionals and/or psychologists, not special education teachers or other education professionals, to develop, formulate and supervise ABA therapy. The state Medicaid programs do not permit special education teachers or other special education professionals to develop, formulate, or supervise ABA therapy. Indeed, special education teachers and other education professionals are not even permitted to perform ABA therapy under the supervision of an ABA/psychology professional without training in ABA therapy over and above their special education training.

163.    The rules and practices of the state Medicaid programs that pay for ABA therapy, therefore, reveal that ABA therapy does not constitute special education.

## (G.) THE RULES AND PRACTICES OF PRIVATE HEALTH INSURERS REVEAL THAT ABA THERAPY IS NOT "SPECIAL EDUCATION."

164.    Private health insurers that pay for ABA therapy for autistic children require ABA professionals and/or psychologists, not special education teachers or other education professionals, to develop, formulate and supervise ABA therapy. Private health insurers do not permit special education teachers or other special education professionals to develop, formulate, or supervise ABA therapy. Indeed, special education teachers and other education professionals are not even permitted to perform ABA therapy under the

supervision of an ABA/psychology professional without training in ABA therapy over and above their special education training.

165.    The rules and practices of private health insurers that pay for ABA therapy, therefore, reveal that ABA therapy does not constitute special education.

## (H.) THE RULES AND PRACTICES OF THE BEHAVIOR ANALYST CERTIFICATION BOARD REVEAL THAT ABA THERAPY IS NOT "SPECIAL EDUCATION."

166.    THE BEHAVIOR ANALYST CERTIFICATION BOARD ("BACB") that certifies applied behavior analysts requires ABA professionals, not special education teachers or other education professionals, to develop, formulate and supervise ABA therapy and to educate and train Applied Behavior Analysis professionals. The BACB does not permit special education teachers or other special education professionals to develop, formulate, or supervise ABA therapy or to educate and train Applied Behavior Analysis professionals. Indeed, special education teachers and other education professionals are not even permitted to perform ABA therapy under the supervision of an ABA professional without training in ABA therapy over and above their special education training.

167.    The rules and practices of the BACB, therefore, reveal that ABA therapy does not constitute special education.

## (I.) THE RULES AND PRACTICES OF THE ASSOCIATION OF BEHAVIOR ANALYSTS INTERNATIONAL REVEAL THAT ABA THERAPY IS NOT "SPECIAL EDUCATION."

168.    The Association Of Behavior Analysts International "(ABAI") that certifies applied behavior analysts requires ABA professionals, not special education teachers or other education professionals, to develop, formulate and supervise ABA therapy and to educate and train Applied Behavior Analysis professionals. The ABAI does not permit special education teachers or other special education professionals to develop, formulate, or supervise ABA therapy or to educate and train Applied Behavior Analysis professionals. Indeed, special education teachers and other education professionals are not even permitted to perform ABA therapy under the supervision of an ABA professional without training in ABA therapy over and above their special education training.

169.    The rules and practices of the ABAI, therefore, reveal that ABA therapy does not constitute special education.

31

## IX. DEFENDANTS HAVE MADE IT OFFICIAL DEPARTMENT OF DEFENSE POLICY TO WRONGFULLY DENY COVERAGE FOR A DEVASTATING MEDICAL CONDITION THAT IS AFFLICTING THOUSANDS OF MILITARY FAMILIES, CAUSING IRREPARABLE AND CATASTROPHIC HARM.

170. Defendants' arbitrary and capricious actions and decisions have left active duty and retired members of the uniformed services to their own devices to figure out a way to pay for the medically and psychologically necessary treatment their children desperately need. Even the partial coverage provided to active duty members under ECHO often fails to pay for the medically and psychologically necessary number of hours required for ABA therapy to be effective.

171. Z.B. and other children with ASD have been irreparably harmed by Defendants' wrongful denials of coverage. Every day that children with ASD do not receive the recommended amount of ABA is a day they cannot get back. It has been scientifically demonstrated that early childhood is a critical period when the neurons in the brain are more malleable and ABA therapy is better able to overcome the deficits caused by ASD.

172. It is believed that the growing numbers of children diagnosed with autism in America today are driving Defendants' wrongful denial of coverage for treatment of this condition.

173. The prevalence of autism is growing at a high rate throughout the United States.

174. For example, autism is estimated as occurring in every 1 in 150 births nationwide.

175. As many as 1.5 million Americans are believed to have some form of autism.

176. Autism is growing at a rate of 10 to 17 percent per year.

177. Some estimates hold that the prevalence of autism could reach 4 million Americans in the next decade.

178. The prevalence of autism in the United States surpasses that of all types of cancer combined.

179. The DoD reports that 1 out of every 88 military children has been diagnosed with autism.

180. According to DoD's own data, some 13,243 of the estimated 1.2 million children of active-duty military personnel have been diagnosed with ASD.

181. By invoking inapplicable policy exclusions to the claims of TRICARE Beneficiaries with ASD, Defendants are wrongfully denying hundreds of millions of dollars worth of health care claims, preventing many parents from seeking treatment for their children with ASD.

182. Defendants' refusal to provide coverage for ABA therapy for a child who suffers from autism affects the entire family, who must then bear not only the emotional and mental strain of caring for a child with ASD, but also financial devastation in most cases.

183. Proper levels of ABA therapy for a child with ASD can cost approximately $100,000 dollars per year.

184. Some TRICARE beneficiaries covered by ECHO only receive payment for approximately one third of the hours necessary to provide fully effective ABA therapy, and therefore must make up the difference with out-of-pocket payments.

185. The majority of military families simply cannot afford the cost of providing ABA therapy to their children with ASD. According to Defendants' own data, 90 percent of military children diagnosed with autism are not receiving ABA therapy treatment.

186. To pay for ABA therapy, many military families go into debt, mortgage their homes, resort to litigation and even sell their homes and move in with their parents or others.

187. The financial pressures of providing ABA therapy are forcing some members of the uniformed services to leave the military to seek jobs in the private sector that provide insurance covering the ABA treatment. 15 U.S. states mandate autism coverage for private-sector insurers and Blue Cross Blue Shield of Michigan recently agreed to provide coverage for ABA therapy after a federal class action lawsuit exposed the lack of merit of the insurer's denials, which were based on the arbitrary and capricious assertion that ABA therapy is "experimental" or "investigative."

188. The BCBS case settled after Plaintiff's counsel obtained copies of a draft Blue Cross Blue Shield Medical Policy for 2005, which acknowledged the following

Applied behavioral analysis (ABA) is currently the most thoroughly researched treatment modality for early intervention approaches to autism spectrum

disorders and is the standard of care recommended by the American Academy of Pediatrics, National Academy of Sciences Committee and the Association for Science in Autism Treatment, among others.

189. Other military personnel try to dig their families out of debt caused by ABA medical bills by volunteering for additional combat deployments, which come with tax-free hazardous duty pay.

## X. CONTRADICTING BENEFITS DENIALS AND PUBLIC STATEMENTS, INTERNAL DoD DOCUMENTS ACKNOWLEDGE THAT ABA THERAPY IS MEDICALLY NECESSARY HEALTH CARE TO WHICH MILITARY FAMILIES ARE ENTITLED BY LAW AND IS NOT SPECIAL EDUCATION.

190. Plaintiffs have obtained internal DoD documents, wherein DoD's own high level, uniformed officers acknowledge that ABA therapy is medically necessary health care to which military families are entitled by law and is not special education. The officers further warn that the arbitrary and capricious policy of classifying ABA therapy as "special education" is harming the military's morale, cohesion, and organizational vigor and the trust of uniformed men and women in the good intentions and honesty of the DoD's civilian bureaucratic leadership.

191. The Navy's Surgeon General, Vice Adm. Adam Robinson, has stated that "the assurance of family care is critical for mission readiness."

192. In a memorandum dated January 17, 2008, Major General Thomas Deppe, Air Force Vice Commander, speaking on behalf of the Air Force Space Command, makes "recommendations for changes to existing DoD policies for treatment of military children diagnosed with autism spectrum disorder." Implicitly recognizing that ABA therapy is Basic "health care" to which military families are entitled rather than "special education" to which military families are not entitled pursuant to their Basic health care benefits package, the Air Force Space Command recommends "chang[ing] current TRICARE policy to provide applied behavior analysis (ABA) services as a basic entitlement of medical necessity to military children diagnosed with an ASD."

193. The USAF Vice Commander goes on as follows:

34

"Currently ABA is categorized as a special education service under the extended care health option (ECHO). This creates barriers to service (eligibility, paperwork and determination) and limits the amount of coverage to $2500 per month.... Ensure the entitlement for ABA covers appropriate levels of treatment, as defined by research and commercial practice, for effective service delivery (up to 30-40 hours per week). Currently, an arbitrary cost cap is established ($2500 per month)... Levels of treatments should be determined based on the needs of the child and the recommendations of the physician."

194.   The USAF vice commander concludes as follows:

"There is not a more important mission than taking care of Airmen and their families. We look forward to improved access and services for our families affected by ASD..."

195.   The Vice Commander could not make these recommendations for changes in policy if ABA therapy is special education because, by law, the Department of Defense is not permitted to establish policies to pay for services that are special education as opposed to health care that military families are entitled to as part of the Basic health care benefits package. The United States Air Force and Space Command has, therefore, determined that ABA therapy is Basic health care to which military families are entitled by statute rather than special education.

196.   The DoD's policy that ABA therapy is special education for which the DoD refuses to pay is a threat to military readiness, contrary to law, morally offensive and should be changed. So says the United States Air Force and Space Command.

197.   In a memorandum dated December 10, 2007, Army vice Chief of Staff and 4 Star General Richard Cody, speaking on behalf of the Army, makes recommendations for changes to "DoD policies for treatment of military children diagnosed with autism." Implicitly recognizing that ABA therapy is Basic "health care" to which military families are entitled by statute rather than "special education" to which military families are not entitled pursuant to their Basic health care benefits package, General Cody states as follows:

"In addition to pursuing legislation that assures the necessary medical care and education for children with ASD and their families, the Army recommends DoD

35

implement the following "quick wins": make IBI [intensive behavior intervention services like ABA therapy] a basic TRICARE entitlement as a medically necessary service to treat the disabling effects of ASD, and authorize up to 40 hours per week of IBI services."

198.    Gen. Cody could not make these recommendations for changes in policy if ABA therapy is special education because, by law, the Department of Defense is not permitted to establish policies to pay for services that are special education as opposed to health care that military families are entitled to as part of the Basic health care benefits package. Indeed, Gen. Cody expressly notes the Army's finding that changing DoD policy to recognize that ABA therapy is a Basic medical benefit as opposed to special education does not require legislation; that is, it does not require a change in current law. On the contrary, ABA therapy is a Basic health care benefit to which beneficiaries are entitled by current law.

199.    The United States Army has, therefore, determined that ABA therapy is Basic health care to which military families are entitled by statute rather than special education.

200.    The DoD's policy that ABA therapy is special education for which the DoD refuses to pay is a threat to military readiness, contrary to law, morally repugnant and should be changed. So says the United States Army.

201.    In a letter to the Assistant Secretary of Defense for Health Affairs dated May 25, 2007, Major General Gail Pollock-- Acting Surgeon General of the Army, Major General Carla Hawley-- Commander of the Pacific Regional Medical Command, and Major Shannon Beckett-- Action Officer for the Army and Marine Corps Autism Task Force collectively recommend certain "changes to existing DoD policies for treatment of military children diagnosed with Autism Spectrum Disorder," including "chang[ing] current TMA guidelines to provide ABA services as a *basic entitlement* to military children suffering from ASD, rather than through the current ECHO program." (Emphasis in original).

202.    These 3 military leaders make the following observations in their combined letters and enclosures:

"There are various symptomatic treatments for autism, such as speech therapy, occupational therapy, and certain medications, but none of these have the impact of comprehensive Applied Behavior Analysis (ABA). Without effective

36

intervention, an estimated 90% of individuals with autism will require lifelong care. ABA has been shown to reduce this figure to below 50% and reduce the potential lifelong costs by two thirds.... Science supports a 30-40 hours per week ABA program for each child with ASD.... In many cases, families are forced to respond to their disabled child's needs by leveraging their financial assets or resorting to litigation. Bearing the financial burden for services, or going without services, is simply not right for our military families who move so often they aren't able to establish continuity of care.... Military families reported resorting to litigation, falling into debt and mortgaging their homes in order to secure treatment for their children.... Department of Defense should recognize the efficacy of ABA as a treatment for autism and develop policies and increase access to this treatment.... It would be difficult to overstate the negative impact Autism Spectrum Disorder has placed upon our military families."

203. These 3 U.S. Army and Marine leaders and medical experts could not make these recommendations for changes in policy if ABA therapy were special education because, by law, the Department of Defense is not permitted to establish policies to pay for services that are special education as opposed to health care as part of the Basic health care benefits package.

204. The Acting Surgeon General of the United States Army, The Pacific Regional Medical Command, and the Army and Marine Corps Autism Task Force have, therefore, determined that ABA therapy is Basic health care to which military families are entitled by statute rather than special education.

205. The DoD's policy that ABA therapy is special education for which the DoD refuses to pay is a threat to military readiness, contrary to law, morally offensive and should be changed. So says the Acting Surgeon General of the United States Army, the Pacific Regional Medical Command, and the Army and Marine Corps Autism Task Force.

206. High-level, uniformed officers, in solidarity with their beleaguered, embattled, emotionally and financially stretched-to-the-limit military sisters and brothers, are in as much open rebellion against their amoral, civilian, bureaucratic DoD masters as military tact, decorum and respect for civilian authority and the chain of command allow for. In their characteristically respectful way, these officers are telling their civilian superiors that the DoD's conspiracy to wrongfully deny military families with autistic children the health

37

benefits they are entitled to by law is a betrayal of their comrades that mortally wounds the morale and honor of the entire military family.

## XI.    DoD PRIMARILY SUPPORTS ITS POSITION THAT ABA THERAPY IS SPECIAL EDUCATION BY MISREPRESENTING THE MEANING OF A SINGLE JOURNAL ARTICLE.    ONE OF THE ARTICLE'S TWO AUTHORS, ALONG WITH 57 WORLD-RENOWNED EXPERTS IN PSYCHIATRY, PSYCHOLOGY, MEDICINE, AND BEHAVIORAL SCIENCE AND AUTISM RESEARCH AND PRACTICE, ASSERT THAT ABA THERAPY IS NOT SPECIAL EDUCATION.

207.    Defendants are waging a duplicitous campaign of pretexts and pretend rationales to support their classification of ABA therapy as "special education."

208.    Defendants frequently cite a single article authored by two physicians in Pediatrics, a journal published by the American Academy of Pediatrics, as support for their position that ABA therapy is "special education." (Pediatrics: Management of Children With Autism Spectrum Disorders.  www.pediatrics.org/cgi/doi/10.1542/peds.2007-2362).

209.    For convenience of discussion and not intending to make any distinctions for purposes of the legal responsibilities of government programs and private insurers to pay for autism treatments, the article's authors divide all treatments for autism into 2 categories: (1) pharmacological/medical management interventions and (2) educational interventions.

210.    The article lists all psychological interventions, occupational therapy, speech therapy, language therapy, sensory integration therapy, and behavioral therapies rooted in psychology as "educational interventions."

211.    It is clear that the authors did not intend to do anything more than to briefly survey the universe of therapies for autism to provide guidance for physicians regarding their relative efficacy, so that physicians could intelligently treat patients suffering from ASD and refer them to other appropriate professionals for treatment.

212.    Subsequent to the publication of the article, Dr. Chris Plauché Johnson, one of the two authors of the article that DoD cites as authority for its claim that ABA therapy is special education as contemplated in the military health benefits statute testified before Congress

that ABA therapy is not special education as contemplated by the military health benefits statute.

213. In a stunning rebuke to the Defendants, Dr. Chris Plauché Johnson – one of the 2 authors of the misused journal article, a former U.S. Air Force Developmental Pediatrician and Medical Director of a world-renowned Autism Clinic – pointedly establishes herself as the first signatory to written testimony addressed to the Senate Armed Services Committee asserting that "behavior intervention methods are not special education."

214. Dr. Plauché Johnson thereby expressly repudiates the DoD's citation to her article as authority for the proposition that ABA therapy is special education.

215. DoD is, therefore, knowingly misusing Dr. Plauché Johnson et al.'s article as authority for the proposition that ABA therapy is special education for purposes of the statutory exclusion from coverage of the military health benefits statute.

216. The written testimony was signed by 57 additional luminaries in child psychology and autism research and practice, including the Executive Director of the National Autism Center, the physician Director of the International Autism Research Center, United States Air Force Major Ella B. Kundu, Diplomate of the American Board of Psychiatry and Neurology as well as staff neurologist at Travis Air Force Base, among others.

217. In their written testimony, the 58 world renowned experts in Psychiatry, Psychology, Medicine, and Behavioral Science and Autism research and practice emphatically state that "behavior intervention methods are not 'special education.'"

218. The experts conclude that because ABA therapy is a medically necessary, Behavior Science-based intervention and not "special education," "ABA [therapy] meets the definition of and criteria necessary to provide ABA [therapy as a benefit] under the basic TRICARE program," that is, as a benefit available to the autistic children of both active duty and retired servicemen and women in whatever amount is medically necessary and not subject to an arbitrary, fixed annual cap.

219. Notably, the Dr. Plauché Johnson et al. article defines Applied Behavior Analysis as "the process of applying interventions that are based on the principles of learning derived from experimental psychology research to systematically change behavior and to demonstrate that the interventions are responsible for the observable improvement in behavior."

39

220.    The term "educational intervention" was invoked simply to refer to any therapy that involves a re-learning and re-construction of pathological behaviors as effective, productive behaviors, including those medical and psychological interventions and therapies that involve talking and behavior rather than drugs and electroconvulsive shock.

221.    In a July 2007 report to Congress on Services to Military Dependent Children with Autism, DoD states that:

"Autistic children aged 3 years and older often receive speech, physical, and occupational therapy provided by public or Department of Defense Educational Activity (DoDEA) schools to the extent that they are considered educationally necessary.  Additional speech, physical, or occupational therapy may be provided by the TRICARE basic program when additional therapy is considered to be medically necessary."

222.    In other words, DoD admits that speech, physical and occupational therapy are not special education even though speech, physical and occupational therapy are provided by and in public and Department of Defense schools, and notwithstanding the fact that the Dr. Plauché Johnson et al. article classified speech, physical, and occupational therapy as "educational interventions."

223.    Clearly, DoD's rationales are mere pretext to avoid the cost of providing the effective medical benefits our military families who have children with autism deserve and which were mandated by Congress in the military health benefits statute.

212.    Defendants' arbitrary and capricious refusal to provide TRICARE Basic Program coverage for ABA therapy is likely to have long lasting, catastrophic consequences for Z.B. and other children whose claims have been wrongfully denied.

## XII. DoD IS INTENTIONALLY MISLEADING MILITARY FAMILIES TO BELIEVE THAT ABA THERAPY IS ONLY AVAILABLE UNDER THE ECHO PROGRAM, WHICH IS SUBJECT TO LIMITS REGARDING ELIGIBILITY AND AMOUNT OF TREATMENT, AND IS NOT AVAILABLE UNDER THE TRICARE BASIC HEALTH BENEFITS PROGRAM, WHICH IS NOT SUBJECT TO ANY LIMITS REGARDING ELIGIBILITY OR AMOUNT OF TREATMENT.

224.    In its denials of benefits, the DoD states that "ABA therapy cannot be authorized unless the beneficiary is enrolled in the ECHO program."(Initial factual determination for Z.B. dated May 23, 2007).

225.    Implicit in this claim are 3 DoD conclusions:

(A.) ABA therapy is special education.

(B.) The law prohibits DoD from providing special education as a benefit pursuant to its TRICARE Basic program, which is available without limitation as to type of beneficiary (TRICARE Basic covers dependents of active duty *or* retired members, whereas ECHO covers only dependents of active duty members and not dependents of retirees) or amount (there is no cap on the benefits consumed by a family under TRICARE Basic, whereas there is a $36,000 annual cap on benefits consumed under ECHO).

(C.) Since ABA therapy is a special education service, the law does not permit DoD to provide ABA therapy pursuant to the TRICARE Basic military health benefits program with its unlimited benefits for dependents of active duty and retired members.

226.    All 3 DoD claims are false.

227.    Because TRICARE Basic benefits are available to both active duty members and retirees in unlimited amount, whereas ECHO benefits are available only to active duty members and not to retirees and are subject to a $36,000 annual cap, DoD is misleading military families to believe that ABA therapy is only available under the ECHO program in an effort to reduce its expenditures treating autistic children.

228.    DoD's claim to military families with autistic children that it's not at fault for not providing or paying for ABA therapy for autistic children of both active duty members and retirees if only Congress had not forbidden it to do so by federal law is a lie.

229.    The DoD is waging a campaign of calculated deception against American servicemen and women with autistic children.

230.    This would not be the first scandalous betrayal of trust of our nation's military families by the leaders to whom our nation's military health care system has been entrusted.

231.    DoD's false claims regarding conclusion #1 above, i.e., that ABA therapy is special education, have been addressed in the other sections of this Complaint. Conclusions #2 and

3, i.e., if ABA therapy is special education, the law does not permit DoD to provide ABA therapy pursuant to the TRICARE Basic military health benefits program with its unlimited benefits for dependents of active duty and retired members is also false for the reasons discussed herein.

232.    DoD's argument seems to be that because (1) federal law prohibits it from providing special education services as an unlimited TRICARE Basic benefit and (2) ABA therapy is a "special education" service, (3) DoD cannot provide ABA therapy as an unlimited TRICARE Basic benefit.

233.    It is true that when the Department of Defense contracts for medical care *outside of the confines of a military treatment facility*, 10 U.S.C. 1079 (9) prohibits it from providing special education services.

234.    However, it is false that there is a statutory coverage exclusion that prohibits the Department of Defense from providing special education when the Department of Defense provides it *in a military treatment facility*. The truth is that there is no statutory exclusion for special education when the Department of Defense provides it *in a military treatment facility*.

235.    The relevant statutory provisions are as follows.

(a) 10 U.S.C. 1076 and 10 U.S.C. 1077 describe the scope of medical services that DoD may, at its discretion, provide to dependents of active duty and retiree members in facilities of the uniformed services.

(b) There is no exclusion for special education in 10 U.S.C. 1076 and 10 U.S.C. 1077.

(c). Pursuant to 10 U.S.C. 1076 and 10 U.S.C. 1077, DoD is, therefore, permitted to provide and to pay for whatever special education services it chooses in military treatment facilities.

(d) Assuming, for purposes of argument, that ABA therapy is special education, DoD may provide and pay for unlimited ABA therapy for dependents of active duty members and retirees, if the ABA therapy is provided in military treatment facilities.

236.    DoD does not want beneficiaries to know that special education can be provided as a Basic military health benefit in facilities of the uniformed services, if DoD wants to make

42

space and facilities available for a particular type of special education service, like ABA therapy, and train its medical staff to provide it.

237.    ABA therapy is, for most autistic children, their best and only hope of living an independent life. DoD bureaucrats know that, but they do not care. They want to spend the money that Congress requires them to spend treating autism on other military equipment and activities.

238.    The truth is that even if we assume, for purposes of argument, that ABA therapy is special education, DoD may provide unlimited ABA therapy for dependents of active duty members and retirees, if it is provided in military treatment facilities.

239.    DoD has wrongfully declared in its informal adjudications (initial considerations of beneficiaries' claims, reconsiderations and appeals of benefits denials) and informal, unwritten rules that it is prohibited by law from providing unlimited ABA therapy for dependents of active duty members and retirees under any circumstances, inter alia, for the following reasons:

(A.) DoD wants to conceal from military families with autistic children and their supporters that they may obtain relief by petitioning DoD to promulgate a rule requiring the provision of ABA therapy in military facilities. 5 U.S.C. 553 (e) states that "each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule." DoD is attempting to frustrate and is frustrating the right of military families with autistic children and other interested persons to petition for regulatory relief.

(B.) DoD wants to conceal from military families with autistic children that, under current law, they may seek authorization to receive ABA therapy in military treatment facilities, subject to the availability of space and facilities and the capabilities of the medical staff. By declaring that the law prohibits it from providing ABA therapy pursuant to the TRICARE Basic program under any circumstances, DoD is attempting to frustrate and is frustrating the right of military families with autistic children to seek authorization to receive ABA therapy in whatever amount is medically or psychologically necessary.

(C.) DoD is waging a campaign to mislead military families to believe that their only avenue of relief lies in petitioning Congress to amend the military health benefits statute. That relieves DoD of moral and legal responsibility for the plight of military families with autistic children faced with a no-win choice between the financial devastation awaiting them if they pay for the

43

very expensive treatment that promises to redeem their child and condemning a beloved child to a lifetime of the unremitting horror, chaos and suffering that is autism.

(D.) To avoid being shamed into providing relief in military facilities, DoD's strategy is to misdirect this relatively unorganized group of families with few resources into a difficult political battle with the highly organized, moneyed interest group that is the military industrial complex where the weapons of choice are campaign contributions, speaking fees and free rides on private jets.

## XIII. CLASS ACTION ALLEGATIONS

240. Plaintiffs bring this action as a class action against Defendants pursuant to Rule 23 of the Federal Rule of Civil Procedure, individually and on behalf of a class consisting of all persons who are beneficiaries of TRICARE Basic Programs and who have been denied coverage, or only provided ECHO's limited coverage, for medically and psychologically necessary ABA treatment provided, or proposed to be provided, by a TRICARE authorized provider to a person diagnosed with ASD.

241. The class period commences six years prior to the filing of this Complaint through the date of the entry of a final judgment.

242. Plaintiffs are members of the class and will fairly and adequately assert and protect the interests of the class.

243. The interests of the Plaintiffs are consistent with, and not antagonistic to, those of the other members of the class.

244. Plaintiffs have retained attorneys who are experienced in class action litigation, and who will provide adequate representation.

245. Members of the class are so numerous that joinder of all members of the class is impracticable.

246. Upon information and belief, there are thousands of members of the class whose identities can be ascertained from the records and files of Defendants and from other sources.

247. Common questions of law or fact as to the violations by Defendants of the APA, 5 U.S.C. chapters 5 and 7, that have caused and will continue to cause harm to the class predominate over any question affecting only individual members of the class.

248. The prosecution of separate actions by individual members of the class would create a risk of, among other things, the following:

a.    Inconsistent or varying adjudications with respect to individual members of the class; and

b.    Adjudication with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

249. The claims of the lead Plaintiffs are typical of the claims of the class, and the class action method is appropriate for the fair and adequate prosecution of this action.

250. Individual litigation of claims which might be commenced by all class members would produce a multiplicity of cases such that the judicial system having jurisdiction of the claims would remain congested for years.

251. Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of conduct of Defendants related to the wrongful denial of coverage for medically and psychologically necessary ABA therapy for TRICARE Basic Program beneficiaries with ASD.

252. The certification of a class would allow litigation of claims that, in view of the expense of litigation, may be insufficient in amount to support separate claims.

253. As individuals, plaintiffs and the class members they represent have few or no surplus resources to prosecute their claims for relief unless they aggregate their resources with similarly situated families, and take advantage of the class action rule that permits a prevailing party to recover attorneys' fees and costs from the defendants.

254. Most of the plaintiff families and the families they represent have been stripped of material wealth by choosing service to the nation instead of the pursuit of personal wealth in the private economy and by having to exhaust their modest pay on the basic necessities

45

of life and health care for their autistic child, because the DoD refuses to pay for the health care to which they are entitled by law.

255.    Accordingly, Plaintiffs bring this action on behalf of themselves and on behalf of all other members of the class defined as follows:

All individuals who, on or after March 4, 2004, were beneficiaries of TRICARE Basic Programs and who were entitled to Applied Behavior Analysis therapy for Autism Spectrum Disorder.

## XIV. DEFENDANTS' VIOLATIONS OF THE ADMINISTRATIVE PROCEDURE ACT

### COUNT I - VIOLATIONS OF 5 U.S.C. § 552

256.    Plaintiffs reallege all preceding allegations.

257.    Defendants have adopted a substantive rule of general applicability providing, in effect, that ABA therapy is "special education" and therefore exempt from TRICARE Basic coverage pursuant to 10 U.S.C. § 1079.

258.    Defendants intended for the above rule to have the force and effect of law and have treated the above rule as having legislative authority even though they did not publish this rule in the Federal Register or Code of Federal Regulations.

259.    Defendants' rule has a significant impact on the public.  For example, the rule has a significant negative impact on TRICARE beneficiaries who have autism or who have children with autism.

260.    Defendants violated 5 U.S.C. § 552(a)(1)(D) by failing to publish this rule in the Federal Register.

261.    Any potentially applicable exemptions to the requirements of 5 U.S.C. § 552(a)(1)(D) were waived by Defendants pursuant to 32 C.F.R. § 336, and Office of the Secretary of Defense Administrative Instruction number 102.

262.    Plaintiffs, and the class members Plaintiffs represent, have been negatively affected by Defendants' policy that was not published in the Federal Register or the Code of Federal Regulations.

263. Pursuant to 5 U.S.C. § 706, Defendants should be required to comply with all 5 U.S.C. § 552 publication requirements and to pay for all ABA therapy services to which TRICARE beneficiaries were entitled during the time period when the above rule was not published in the Federal Register.

## COUNT II - VIOLATIONS OF 5 U.S.C. § 553

264. Plaintiffs reallege all preceding allegations.

265. Defendants have adopted a substantive rule of general applicability providing, in effect, that ABA therapy is "special education" and therefore exempt from TRICARE Basic coverage pursuant to 10 U.S.C. § 1079.

266. Defendants intended for the above rule to have the force and effect of law and have treated the above rule as having legislative authority even though they did not publish this rule in the Federal Register or Code of Federal Regulations.

267. Defendants violated 5 U.S.C. § 553(b) by failing to provide general notice of the proposed rule before adopting it.

268. Defendants violated 5 U.S.C. § 553(c) by failing to give interested persons an opportunity to comment and participate in the process leading to the adoption of the rule discussed above.

269. Defendants also violated 5 U.S.C. § 553(c) by failing to publish a statement of the basis and purpose for the rule discussed above.

270. Any potentially applicable exemptions to the requirements of 5 U.S.C. § 553 were waived by Defendants pursuant to 32 C.F.R. § 336, and Office of the Secretary of Defense Administrative Instruction number 102.

271. Plaintiffs, and the class members Plaintiffs represent, have been negatively affected by Defendants' failure to follow proper procedure for the adoption of the rule discussed above.

272. Pursuant to 5 U.S.C. § 706, Defendants should be required to comply with all 5 U.S.C. § 553 notice and comment requirements and to pay for all ABA therapy for which TRICARE beneficiaries were entitled during the time period when Defendants violated or continue to violate the notice and comment requirements.

## COUNT III - VIOLATIONS OF 5 U.S.C. § 706

273.    Plaintiffs reallege all preceding allegations.

274.    The TRICARE Basic Programs cover medically necessary services, including psychotherapeutic interventions.

275.    Defendants have denied coverage for ABA therapy for dependents of retired members, and only provided up to $36,000 of coverage for dependents of active duty members, based on the assertion that ABA therapy is a covered benefit only under ECHO and is not a covered benefit pursuant to the TRICARE Basic health benefits program.

276.    Defendants' denial of coverage pursuant to the TRICARE Basic program is arbitrary, capricious, and contrary to law and regulation.

277.    Plaintiffs, and the class members Plaintiffs represent, have been negatively affected by Defendants' unlawful determination.

278.    Pursuant to 5 U.S.C. § 706, the Court should set aside Defendants' determination and order Defendants to cover and pay for medically or psychologically necessary ABA therapy as a Basic health benefit from this day forward.

279.    Pursuant to 5 U.S.C. § 706, the Court should set aside Defendants' determination and order Defendants to pay for all ABA therapy to which TRICARE beneficiaries were entitled in the past.

## COUNT IV – REQUEST FOR DECLARATORY RELIEF

280.    Plaintiffs reallege all preceding allegations.

281.    This Court has authority to grant declaratory relief pursuant to 28 U.S.C. § 2201(a) and 5 U.S.C. § 702.

282.    10 U.S.C. 1079(9) prohibits the DoD from paying for special education when the agency contracts for medical care outside of the confines of a military treatment facility.

283.    10 U.S.C. 1076 and 10 U.S.C. 1077 describe the scope of medical services that DoD may provide to dependents of active duty and retiree members of the uniformed services in military treatment facilities.

284. "Special education" is not excluded from the services that DoD may provide at military treatment facilities.

285. Pursuant to 10 U.S.C. 1076 and 10 U.S.C. 1077, DoD is permitted to provide and to pay for whatever special education services it chooses in military treatment facilities.

286. Assuming, for purposes of argument, that ABA therapy is special education, DoD may provide and pay for unlimited ABA therapy for dependents of active duty members and retirees, if the ABA therapy is provided in military treatment facilities.

287. Pursuant to 28 U.S.C. § 2201(a), the Court should hold that the special education exclusion in 10 U.S.C. 1079(9) does not apply to special education services provided in military treatment facilities, and that even if ABA therapy is "special education" for purposes of the military health benefits statute, the DoD may provide and pay for unlimited amounts of ABA therapy in military treatment facilities.

## XV. CONCLUSION AND REQUEST FOR RELIEF

288. Defendants have failed to follow notice and comment rulemaking as well as publication procedures required by law and have made unlawful determinations regarding the benefits that military families with autistic children are entitled to.

289. Defendants' actions have deprived Z.B. and other class members with autism of TRICARE benefits to which they are entitled by law. Defendants' actions have, therefore, caused irreparable harm to Z.B. and other class members with autism, and financial and emotional harm to Z.B.'s parents and the parents of other TRICARE beneficiaries with autism.

290. Plaintiffs, for themselves and all class members, seek injunctive relief, declaratory relief, reimbursement, interest and future TRICARE coverage for these statutorily-provided benefits which have been wrongfully withheld.

WHEREFORE, Plaintiffs request that this Court:

A. Declare that Defendants have unlawfully promulgated administrative rules in violation of the procedural requirements mandated by §§ 552 and 553 of the Administrative Procedure Act, 32 C.F.R. § 336 (prior to March 10, 2006), and Office of the Secretary of Defense Administrative Instruction number 102;

B. Order Defendants to comply with the procedures required by §§ 552 and 553 of the APA, including publication in the Federal Register of the DoD's proposed definition of, and policies regarding, special education with an opportunity for public comment before adoption of the rules;

C. Declare that ABA therapy is not "special education" for purposes of the military health benefits statute and Defendants' denials of TRICARE Basic benefits for ABA therapy are, therefore, wrongful, void, and set aside;

D. Order the DoD may also provide ABA therapy in military treatment facilities;

E. Enjoin Defendants from withholding payment for past, present and future ABA services provided to TRICARE beneficiaries with autism by a TRICARE authorized provider;

F. Award Plaintiffs and all class members the maximum allowable TRICARE Basic benefit for military dependent children with ASD since their enrollment in TRICARE, and reimbursement for costs incurred for the medically and psychologically necessary ABA services covered under TRICARE;

G. Award Plaintiffs and all class members coverage and reimbursement for all ABA therapy;

H. Enjoin Defendants from further mis-communicating the extent of TRICARE coverage for ABA therapy and order Defendants to notify any military families that may have received mis-communications in the past that medically or psychologically necessary ABA therapy will be paid for by the TRICARE Basic program.

I. Grant a monetary award to the representative class members for the costs and inconvenience associated with bringing this action on behalf of all children with ASD who are covered by TRICARE;

J. Award attorneys' fees and costs associated with prosecuting this action;

K. Award all necessary and appropriate equitable, declaratory, and injunctive relief to which Plaintiff and the class are entitled;

L. Award all other such relief as the Court may deem appropriate and in the interest of justice.

Respectfully submitted,

MANTESE HONIGMAN ROSSMAN
and WILLIAMSON, P.C.
Attorneys for Plaintiffs

By:    _____

David M. Honigman (MI - P33146)
dhonigman@manteselaw.com
Gerard V. Mantese (MI - P34424)
gmantese@manteselaw.com
Brendan H. Frey (MI - P70893)
bfrey@manteselaw.com
1361 E. Big Beaver Road
Troy, MI 48083
(248) 457-9200


_____

Bruce J. Klores (DC – 358548)
bjk@klores.com
Bruce J. Klores & Assoc. P.C.
Attorneys for Plaintiffs
1735 20th Street NW
Washington, DC 20009
Tel  (202) 628-8100
Fax  (202)628-1240

John J. Conway (MI - P56659)
john@johnjconway.com
John J. Conway, PC
Co-counsel for Plaintiffs
26622 Woodward Ave., Ste. 225
Royal Oak, MI 48067
(313) 961-6525

Dated:  March 4, 2010

## JURY DEMAND

Plaintiffs demand a trial by jury.

_____

Bruce J. Klores

Dated:  March 4, 2010

52



T R I C A R E

South

June 18, 2007

Crestview, FL 32536

RE: Beneficiary:
    Date of Birth:                    April 5, 2005
    Sponsor:                          Kenneth E
    Sponsor ID Number:                ***-**.        }
    Status:                           Prime
    Facility:                         N/A
    Facility Status:                  N/A
    Provider:                         N/A
    Provider Status:                  N/A
    Date of Service:                  5/21/07
    Type of Service:                  Outpatient Psychiatric
    Case Identification Number: 07142054736
    Type:                             Factual Reconsideration

Dear Mr. B     :

ValueOptions is the behavioral health subcontractor for Humana Military Healthcare Services, the Managed Care Support Contractor (MCSC) authorized by the TRICARE Program to review requests for coverage of healthcare services in the TRICARE Program in the South Region.

The TRICARE Management Activity (TMA), formerly the TRICARE Support Office (TSO), and Office of Civilian Health and Medical Program of the Uniformed Services (OCHAMPUS) no longer uses the acronym CHAMPUS or OCHAMPUS; however, most regulatory and policy instruments still contain these acronyms. For the purposes of this decision, when regulation, policy, or other documentation is quoted, any reference to CHAMPUS or OCHAMPUS is synonymous with TRICARE.

**STATEMENT OF ISSUES:**

A request for reconsideration determination for the above referenced service has been received. This case was presented to a Physician Reviewer (other than the one involved with the original denial determination) for reconsideration. In issuing this decision, TRICARE policy and regulatory authorities governing TRICARE, the information upon which the initial denial was based and additional information provided by the appealing party were considered.





PLAINTIFF'S
EXHIBIT
1

Following this review, for the reasons noted below, it has been determined that the initial denial is upheld and the Outpatient Psychiatric service remains denied.

## APPLICABLE AUTHORITY:

CHAMPUS benefits are authorized by Congressional legislation incorporated in chapter 55 of title 10, United States Code, and implemented by the Secretary of Defense, the Secretary of Health and Human Services, and the Secretary of Transportation in 32, Code of Federal Regulations, Part 199 (32 CFR 199). Specific regulatory provisions pertinent to this case are set forth below.

32 CFR 199.4(a)(1)(i) Scope of benefits, provides that subject to all applicable definitions, conditions, limitations, or exclusions specified in the Regulation, the CHAMPUS Basic Program will pay for medically necessary services and supplies required in the diagnosis and treatment of illness or injury, including maternity care and well-baby care.

32 CFR 199.2(b) defines appropriate medical care in pertinent part as that medical care where the services performed in connection with the diagnosis or treatment of disease or injury, pregnancy, mental disorder, or well-baby care are in keeping with the generally accepted norms for medical practice in the United States and where the authorized individual professional provider rendering the medical care is qualified to perform such medical services by reason of his or her training and education and is licensed or certified by the state where the service is rendered or appropriate national organization or otherwise meets CHAMPUS standards. The definition also specifies that the medical environment in which the medical services are performed is the least expensive level of care and adequate to provide the required medical care regardless of whether the level of care is covered by CHAMPUS.

32 CFR 199.2(b) medically or psychologically necessary in pertinent part as the frequency, extent, and types of medical services or supplies which represent appropriate medical care and that are generally accepted by qualified professionals to be reasonable and adequate for the diagnosis and treatment of illness, injury, pregnancy, and mental disorders or that are reasonable and adequate for well-baby care.

32 CFR 199.4(a)(5) Right to Information. As a condition precedent to the provision of benefits, OCHAMPUS or its OCHAMPUS [contractors]... shall be entitled to receive information from a physician or hospital or other person, institution, or organization (including a local, state, or U.S. Government agency) providing services or supplies to the beneficiary for which claims or requests for approval of benefits are submitted. Such information and records may relate to the attendance, testing, monitoring, or examination or diagnosis of, or treatment rendered, or services and supplies furnished to a beneficiary, and shall be necessary for the accurate and efficient administration of CHAMPUS benefits. Before a determination will be made on a request for preauthorization or claim of benefits, a beneficiary or sponsor must provide particular additional information relevant to the requested determination, when necessary, which information will, subject to certain specific exclusions, be held confidential by the recipient.

32 CFR 199.4(g)(63) Noncovered condition, unauthorized provider. All services and supplies (including inpatient institutional costs) related to a noncovered condition or treatment, or provided by an unauthorized provider are specifically excluded from the Basic Program.



32 CFR 199.4(g)(74) Exclusions and limitations  In addition to any definitions, requirements, conditions, or limitations enumerated and described in other sections of this part, the following specifically are excluded from the Basic Program: (1) Not medically or psychologically necessary.  Services and supplies that are not medically or psychologically necessary for the diagnosis or treatment of a covered illness (including mental disorder) or injury, for the diagnosis and treatment of pregnancy or well-baby care.

32 CFR 199.4(g) Exclusions and limitations  Note: The fact that a physician may prescribe, order, recommend, or approve a service or supply does not, of itself, make it medically necessary or make the charge an allowable expense, even though it is not listed specifically as an exclusion.

32 CFR 199.10(a)(3) Burden of proof  The burden of proof is on the appealing party to establish affirmatively by substantial evidence the appealing party's entitlement under law and this part to the authorization of CHAMPUS benefits, approval of authorized CHAMPUS provider status, or removal of sanctions imposed under Sec. 199.9 of this part. If a presumption exists under the provisions of this part or information constitutes prima facie evidence under the provisions of this part, the appealing party must produce evidence reasonably sufficient to rebut the presumption or prima facie evidence as part of the appealing party's burden of proof. CHAMPUS shall not pay any part of the cost or fee, including attorney fees, associated with producing or submitting evidence in support of an appeal.

32 CFR 199.4(a)(13) Implementing instructions  The Director, OCHAMPUS, shall issue policies, procedures, instructions, guidelines, standards and/or criteria to implement 32 CFR 199.4.

## DISCUSSION:
Per TRICARE Policy Manual 6010.54-M (Extended Care Health Option (ECHO), Chapter 9, Section 9.1, authority 32 CFR 199.5 (c) (f):  The educational modality known as applied behavioral analysis is included as a benefit under the issuance (ECHO) when provided by a TRICARE authorized provider.  Payable services include periodic evaluation of the beneficiary, development of a treatment plan and training of individuals to provide services in accordance with the treatment plan. TRICARE can also pay for the hands-on ABA services when provided by a TRICARE authorized provider.  However, TRICARE cannot pay for such services when rendered by family members, trainers or other individuals who are not TRIARE authorized providers.  Billable CPT procedure codes for these services rendered under ECHO are 99199 and 99600.

## DECISION:
After careful reconsideration of this case, including all additional information, the second physician reviewer agrees with the Outpatient Psychiatric initial denial.  Based upon the opinion expressed by the second physician reviewer, the initial denial is upheld.

This determination was based on:

The sponsor of the beneficiary is not on active duty. ABA therapy cannot be authorized unless the beneficiary is enrolled in the ECHO program. A requirement for participation in the ECHO program is that the sponsor be on active duty. In this case, the sponsor is retired and therefore the beneficiary is not eligible for the ECHO program. The requested ABA therapy services cannot be authorized.

