UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

KENNETH BERGE and DAWN BERGE, on
behalf of themselves and their minor child
Z.B., as individuals and on behalf of all others
similarly situated,

       Plaintiffs,

                                      Case No. 10-cv-00373-RBW
                                      Hon. Reggie B. Walton

v.

UNITED STATES OF AMERICA, U.S.
DEPARTMENT OF DEFENSE, TRICARE
MANAGEMENT ACTIVITY, and ROBERT
M. GATES, United States Secretary of
Defense, jointly and severally,

       Defendants.

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS OR, IN THE ALTERNATIVE, TO HOLD THIS ACTION IN ABEYANCE**

## I.    INTRODUCTION

While autistic children of military families go without the therapy that is due them under the clear terms of the military health benefits statute and which is their only hope of living an independent adult life, Defendants have decided to follow the common trend among agencies seeking to delay and avoid judicial review. In furtherance of this strategy, Defendants misrepresent the Department of Defense's (DoD) and TRICARE Management Activity's (TMA) past and current interpretations of law and policy on the issue that is currently before the Court. Specifically, Defendants are required to provide Applied Behavior Analysis (ABA) therapy benefits to the Plaintiff class pursuant to the Military Health Benefits Statue, 10 U.S.C. ch. 55.

Defendants would have the Court believe that this issue is one that just recently came to their attention.  In fact, Defendants have been aware of this issue for years.  While it is true that Defendants have not **"formally,"** as that term is commonly used in the context of administrative law,[1] issued an interpretive rule excluding ABA therapy from the benefits provided under the TRICARE Basic Program, Defendants have issued official directives to contractors to deny these benefits since at least 2001.  (Ex 1, *TMA Policy Letter, July 3, 2001*).  TMA further disseminated this interpretive rule through word of mouth, interpretive letters, and the use of blogs.  (See, e.g., Ex 2, *Affidavit of Martin Barry*; Ex 3, *Granger Letter to Congressman Miller*; Ex 4, *TRICARE Blog Press Release August 28, 2008*).  Major General Granger's Blog even contained an interactive feature that allowed military families to discuss TMA interpretive rules and policies with the Deputy Director. (Ex 4, *TRICARE Blog Press Release August 28, 2008*).  Among other things, Maj. Gen. Granger discussed on the blog the DoD rule providing that ABA therapy is "special education" not covered by the Basic Plan.  TMA has recently removed Maj. Gen. Granger's blogs and his exchanges with military families from the internet. (Ex 5, *http://www.health.mil/blog, The resource cannot be found*).

The D.C. Circuit has discussed this strategy of using the internet and informal memoranda to disseminate interpretations of legislation and to define the scope of agency power.  In *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1020 (2000), the D.C. Circuit held as follows:

> The phenomenon we see in this case is familiar. . . With the advent of the Internet, the agency does not need these official publications to ensure widespread circulation; it can inform those affected simply by posting its new guidance or

---

[1] For example, Defendants have violated the APA by failing to publish the interpretive rule in the Federal Register. 5 U.S.C. §552 (requiring publication in the Federal Register of all "interpretations of general applicability" and requiring agencies to make available for inspection and copying "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register."); see also, *Appalachian Power Company v. EPA*, 208 F.3d 1015, 1021 (2000).

> memoranda or policy statement on its web site. An agency operating in this way
> gains a large advantage. It can issue or amend its real rules, *i.e.*, its interpretative
> rules and policy statements quickly and inexpensively without following any
> statutorily prescribed procedures. The agency may think there is another
> advantage -- immunizing its lawmaking from judicial review.

(Quotation marks and internal citation omitted).

The same ploy is present in this case. Fortunately, the Judiciary and Congress have recognized that allowing agencies to evade judicial review through the issuance of informal interpretations and policy statements is an affront to the rule of law and the separation of powers. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("The APA specifically contemplates judicial review on the basis of the agency record compiled in the course of informal agency action in which a hearing has not occurred. See 5 U.S.C. §§ 551(13), 704, 706"). See also, *Appalachian Power Company*, 208 F.3d 1015.

Defendants' Motion to Dismiss and/or Stay is effectively a request for voluntary remand.[2] However, in making this request Defendants do not admit that their past interpretation of the law is erroneous and they do not assert that all past claims for ABA therapy will be re-opened. Defendants do not point to any change in the law or new fact that may change TMA's determination. Instead, Defendants assert that "TMA's Medical Benefits and Reimbursement Branch . . . has **already 'begun** a review of the current medical evidence and literature, including technical assessments, concerning ABA as a treatment for autism.'" (Defendants' Motion to Dismiss, p. 4)(emphasis added). Indeed, TMA has been doing so since at least 2001! (Ex 1, *TMA Letter July 3, 2001*: "TMA reached that determination only after an extensive review, including a technology assessment and coordination within the agency.").

---

[2] Defendants have denied ABA therapy benefits to military families for years based on the illegal policy that Plaintiffs are challenging. (See, *e.g.*, Ex 6, *Military Family Affidavits*). Thus, there has obviously been a final agency action reviewable by this Court. This is discussed in more detail below.

Defendants' refusal to produce the current administrative record,[3] combined with their inability to articulate what it is that motivates the request for a voluntary remand, exposes the request for remand as a mere ploy to delay and an attempt to create post-hoc rationalizations for the denials of benefits, after consulting with counsel regarding a strategy for trying to moot the class action allegations. (See Defendants' Motion for Stay of Class Certification Briefing [DE 8], p. 4: "The question of whether this decision will be remanded back to the agency, and the agency's ultimate determination, will have a great impact on the Rule 23(a) class action standards[.]").

Allowing Defendants' ploy to succeed would violate the long-standing *Chenery* doctrine, which provides that the agency itself must articulate the rationale for its actions. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); see also, Fine, Toni. *Agency Requests for "Voluntary" Remand: A Proposal for the Development of Judicial Standards*, 28 Ariz. St. L.J. 1079, 1112-1114 (1996). Defendants cannot be allowed to delay a proper judicial resolution of this case for the purpose of concocting, after consultation with counsel regarding litigation strategy, post-hoc rationalizations for a pre-ordained result. As the D.C. Circuit Court held in *Food Mktg. Inst. v. ICC*, 587 F.2d 1285, 1290 (D.C. Cir. 1978):

> [W]e must recognize the danger that an agency, having reached a particular result, may become so committed to that result as to resist engaging in any genuine reconsideration of the issues. The agency's action on remand must be more than a barren exercise of supplying reasons to support a pre-ordained result. Post-hoc rationalizations by the agency on remand are no more permissible than are such arguments when raised by appellate counsel.

(citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239 (1962)). This is exactly the case here. In the recent past, the DoD has steadfastly resisted providing ABA

---

[3] See Plaintiffs' Motion to Compel Production of the Administrative Record [DE 19].

therapy benefits under the TRICARE Basic Program. For example, in a 2008 or 2009 Memorandum to Congress, DoD stated as follows:

> [If ABA were] considered a TRICARE medical benefit, dependents of military retirees will be eligible for ABA services for as long as they are disabled. The estimated annual cost of providing ABA services to all TRICARE-reliant children under the age of 19 has previously been estimated to be $182M. Extension of ABA services beyond that age, even for life for those who qualify for continued TRICARE coverage by reason of disability, would increase this large annual cost dramatically.

(Ex 7, *Memo Opposing H.R. 1600*). The bottom line is that DoD does not want to pay for ABA therapy benefits for the autistic children of retirees. This is an illegal and arbitrary reason for denying the benefits that DoD is required by law to provide. There has not been any new legal or factual development motivating DoD's request for a remand.

The Defendants' refusal to produce the administrative record and their refusal to be candid about the DOD's past and current interpretations of the law both reveal the Defendants' strategy for delay and for avoiding judicial review. Defendants are no doubt keenly aware of the remand without vacation doctrine that has been developed, but not without much controversy,[4] in the D.C. Circuit. They know that this Court has at times remanded cases without vacating when the Court could not discern any rationale for the agency decision. *See, e.g., Muwekma Ohlone Tribe v. Kempthorne*, 452 F.Supp.2d 105 (D.D.C. 2006). Defendants presume that if they simply refuse to provide any rationale for the multi-year policy excluding ABA therapy from the TRICARE Basic benefits package, the Court will remand without vacating, thereby allowing the

---

[4] See, *e.g., Checkosky v. SEC*, 23 F.3d 452 (D.C. Cir. 1994).

agency to delay, to obscure the currently existing administrative record,[5] to create post-hoc rationalizations for the denials, and to try and moot the class allegations.

The primary supporting rationale for the remand without vacation doctrine, in light of the plain language of 5 U.S.C. 706's command that the Court "shall set-aside," has been reliance on the Court's inherent equitable powers to fashion appropriate remedies. See Levin, Ronald. *"Vacation" at Sea: Judicial Remedies and Equitable Discretion in Administrative Law*. 53 Duke L.J. 291 (2003). But this is not a case where Defendants should be allowed to invoke a request for equitable relief, especially in light of the bad-faith refusal to acknowledge the currently existing administrative record. (See, *e.g.*, Ex 7, *Kirschner Letter June 30, 2010*: "[TMA] has vacated any previous instruction it *may* have issued to its contractors that ABA is not covered under the Basic Program. . . there is no administrative record to provide at this time.") (emphasis added). *Al Ibrahim v. Edde*, 897 F. Supp. 620, 624 (D.D.C. 1995) ("If the remedy . . . originates from the Court's equitable powers, then the Court is guided by the principle 'he who comes to equity must come with clean hands.' The doors of a court of equity are traditionally closed to one who has acted inequitably, in bad faith or illegally in relation to the matter as to which he seeks relief.") (quoting *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814, 65 S. Ct. 993 (1945)).

There should not be any remand in this case, especially since the Defendants have refused to provide the administrative record. A remand is unnecessary because Defendants' pattern and practice, or a decade or more, of refusing to pay for ABA therapy is patently illegal.

---

[5] See Ex 8, *Kirschner Letter June 30, 2010*: "in the event of future litigation over the decision TMA is currently making with regard to the Berges' claim for reimbursement and the coverage of ABA, [any currently existing] record would be irrelevant as the only relevant materials would be the evidence that TMA considers in making its decision."

If a remand were even allowed, it should not come until the administrative record has been produced and the Court has vacated the current interpretive rule. Judicial vacation is necessary, among other reasons, because despite Defendants' June 30, 2010 claim that "[TMA] has vacated any previous instruction it may have issued to its contractors that ABA is not covered under the Basic Program," (Ex 8) TMA contractors have continued to deny claims for ABA therapy under the Basic Program as recently as July 8, 2010. (Ex 9, *Humana July 8 denial in response to June 29 inquiry*). Further, there should be no remand, if ever, until after consideration of Plaintiffs' Motion for Class Certification. *Avery v. Sec'y of HHS*, 762 F.2d 158, 163 (1st Cir. 1985) (Breyer, J.) (holding that in remanding certain disability claims to the agency the district court could nevertheless retain jurisdiction over a class action in which the agency's management of those claims was at issue).

Time is of the essence for children with autism. Every day that children with autism do not receive the recommended amount of ABA therapy is a day they cannot get back. Early childhood is a critical period when the neurons in the brain are more malleable and ABA therapy is better able to overcome the deficits caused by autism. (Ex 10, *Letter to U.S. Armed Services Committee, September 19, 2008*: "Successful intervention for children with autism depends on quick intervention and intensity of service hours"). The maxim, "justice delayed is justice denied," has never been more applicable than in the present case. Defendants' Motion to Dismiss and/or Stay should be denied.

## II.      FACTS AND PROCEDURAL HISTORY

### A.      TMA is responsible for administering health plans created pursuant to the Military Health Benefits Statute for the benefit of military families.

The package of benefits available to all military families, both active duty and retired, is called the TRICARE Basic health benefits program. TMA is responsible for managing this DoD

health care system. With the exception of up to $1,000 per year for active duty members and their dependents and $3,000 per year for military retirees and their dependents for deductibles and co-pays incurred each year, federal law requires DoD to pay for all medically necessary health care and mental health care of TRICARE Basic program beneficiaries without limit. 10 U.S.C. 1079(b)(5) and 10 U.S.C. 1086(b)(4). In a 2007 report to Congress, the DoD states that "[f]or children with autism, the TRICARE basic program covers services such as physician office visits, immunizations, and interventions such as speech therapy, physical therapy, and occupational therapy." (Ex 11, *2007 Report and Plan on Services to Military Dependent Children with Autism*, p. 9). By law, the TRICARE Basic program covers all medically or psychologically necessary and appropriate health care and mental health care, unless the care is specifically excluded by the military health benefits statute, 10 U.S.C. chapter 55. One such exclusion is "special education, except when provided as secondary to active psychiatric treatment on an institutional basis." 10 U.S.C. 1079(a)(9). As discussed below, and in Plaintiffs' Motion for Summary Judgment (to be filed next week) ABA therapy is *not* special education, as a matter of law.

In addition to the Basic benefits to which all active duty and retiree families are entitled, there are "extended" benefits available to some but not all military families pursuant to the Extended Care Health Option ("ECHO"). 10 U.S.C. 1097(d), (e), and (f). ECHO benefits are available only to dependents of active duty members with certain disabilities, one of which is autism. The ECHO program is not available to the autistic dependents of retirees. Under ECHO, the autistic children of active duty members are entitled to $36,000 in benefits for certain items and services not covered by the Basic health care program, including special education. Currently, the autistic children of active duty members may receive, and in many cases are

8

receiving, up to $36,000 in benefits for ABA therapy. (Ex 11, *2007 Report and Plan on Services to Military Dependent Children with Autism*, pp. 10-12). However, but for the wrongful designation of ABA therapy as "special education," these families would be receiving uncapped benefits for medically necessary ABA therapy, just as they do for similar interventions such as speech and occupational therapy. (Ex 11).

**B.     ABA therapy is medically and psychologically necessary treatment for children with autism; ABA therapy is not "special education."**

ABA therapy is a scientifically valid, medically accepted, and mainstream treatment that is medically necessary for Z.B. and other military children with autism. In its 2007 Report and Plan on Services to Military Dependent Children with Autism, the DoD acknowledges "the growing identification of ABA, unique among treatments used to treat the deficits of autism, as the treatment intervention with substantive evidence for its effectiveness." (Ex 11, *2007 Report and Plan on Services to Military Dependent Children with Autism*). The DoD's 2007 Report also recognizes the national certification process for ABA therapists that was developed by the Behavior Analyst Certification Board (BACB). Quoting the BACB, the DoD defines ABA as "the science in which procedures derived from the principles of behavior are systematically applied to improve socially significant behavior to a meaningful degree and to demonstrate experimentally that the procedures employed were responsible for the improvement in behavior." (Ex 11, 2007 Report and Plan on Services to Military Dependant Children with Autism, p. 8).

With virtual unanimity, physicians, psychiatrists, psychologists, social workers and mental health professionals regard ABA therapy to be (1) the most effective treatment for autism, (2) far more effective than the next most effective set of autism treatments, and (3) far more reliably supported by scientific research than any other autism treatment. For example, in a

letter to the Honorable Members of the U.S. Senate Armed Services Committee, September 19,

2008, 56 luminaries noted the following:

> ABA is medically necessary to enable a child with autism to function safely and independently in all aspects of life.  The effectiveness of ABA-based intervention in Autism Spectrum Disorders has been well documented through 5 decades of research by using single-subject methodology and in controlled studies of comprehensive early intensive behavioral intervention programs.  ABA is effective at developing and improving language and communication skills, social interactions, positive family relationships, daily living skills, cognitive and executive functioning, and ameliorating harmful behaviors.  It is not too much to say that ABA therapy restores the very humanness stolen by autism.

(Ex 10, *Letter to U.S. Armed Services Committee, September 19, 2008*).  ABA interventions

include, among other things, the following:

> a.    the use of reinforcing consequences to produce socially significant improvement in human behavior;
>
> b.    the functional analysis of the relations between environment and behavior;
>
> c.    the design, implementation, and evaluation of environmental modifications; and,
>
> d.    direct observation and measurement to assess effectiveness.

(Ex 10, *Letter to U.S. Armed Services Committee, September 19, 2008*).  As experts in the field

have noted:

> While it is critical for schools to provide appropriate supports for special needs children in the classroom, ABA and other behavior intervention methods are not "special education" in and of themselves.  We stress the importance of using such techniques in the classroom to help children in the academic environment, but treating autism goes far beyond the classroom.  ABA and other behavior intervention techniques are no less medically necessary than other medical supports provided in the academic environment such as speech and occupational therapies which are generally covered by insurance.

(Ex 10, *Letter to U.S. Armed Services Committee, September 19, 2008*).

Studies show that ABA therapy is the most effective treatment for children with autism.

For example:

- the United States Surgeon General States that "30 years of research demonstrated the efficacy of applied behavioral methods in reducing inappropriate behavior and increasing communication, learning and appropriate social behavior." (Ex 13, *Mental Health: A Report of the Surgeon General, ch. 3, p. 5*).

- The National Institute of Mental Health similarly concludes that "among the many methods available for treatment and education of people with autism, applied behavior analysis (ABA) has become widely accepted as an effective treatment." (Ex 14, *NIMH, Autism Spectrum Disorders: Pervasive Developmental Disorders, p. 19*).

- The Association for Science in Autism Treatment endorses ABA as the only treatment modality with scientific evidence supporting its effectiveness. (http://www.asatonline.org/intervention/recommendations.htm; last visited May 19, 2010)

- The American Academy of Pediatrics and the National Research Council both recommend a minimum of 25 hours a week of ABA-based interventions. (Ex 10, *Letter to U.S. Armed Services Committee, September 19, 2008*).

- The Navy and Army Surgeons General Recommend up to 40 hours a week of ABA treatment. (Ex 10, *Letter to U.S. Armed Services Committee, September 19, 2008*; Ex 15, *Navy Surgeon General Letter*; Ex 16, *U.S. Army Letter*).

- When approving ECHO benefits for autistic children of active duty military personnel, TRICARE has found that ABA therapy is "medically necessary." (Ex 17, *ABA Therapy Approval*).

In January of this year, the U.S. District Court for the District of Oregon held that "ABA therapy has become one of the standard treatment options for autistic children throughout the nation." *McHenry v. Pacificsource Health Plans*, 2010 WL 56106 at *11, attached hereto as exhibit 18. In holding that ABA therapy does not fall within an insurance policy exclusion for "academic and social skills training," the Court noted that:

[A]utistic children may exhibit many types of problem behavior detrimental to social or academic progression. A list assembled by one article includes: aerophagy/swallowing, aggression, burxism/teethgrinding, coprophagy/feces

11

eating, dawdling, destruction, depression, disruption/tantrum, drooling, elective mutism, elopement (run), feces smearing, fears, food refusal, food theft, genital stimulation, hallucinating, hyperactive behavior, hyperventilation, inappropriate vocalizations, insomnia, noncompliance, obesity, obsessive compulsive disorder, pica, public disrobing, rapid eating, rectal digging, rumination, seizure behavior, self-injurious behavior, stereotypy, tongue protrusion, and vomiting.  SR 1235 (Robert H. Horner, *et al, Problem Behavior Interventions for Young Children with Autism: A Research Synthesis,* 32 J. Autism and Developmental Disorders 423, 431 (October 2002)).

*Id.* at *13.  The Court continued as follows:

> The focus of ABA therapy on discrete behaviors affecting all facets of living sets it apart.  Researchers have found ABA to be effective in reducing problem behaviors. . . and in improving a child's ability to function in multiple areas including 'intellectual, social, emotional, and adaptive functioning.' . . .While aimed at improving social and academic functioning, it does this by specifically addressing behavioral deficits possessed by autistic children that interfere with every area of their life, not by educating kids on social norms or teaching study skills or other tools specific to academic success.

*Id.* at *14 (citations to autism studies omitted).

Reputable ABA treatment is available from facilities around the country that are managed and staffed by clinicians with considerable education, certifications, and training in ABA therapy. (Ex 11, *2007 Report and Plan on Services to Military Dependent Children with Autism, attachments 1 and 2*).  At least 19 states have laws requiring private insurers to provide ABA therapy as a benefit, and bills requiring private insurers to provide ABA therapy as a benefit are actively working their way through the legislative process in 17 other states.  (Ex 19, *Map of State Autism Insurance Reform Bills*).  ABA therapy is an intensive, extremely detailed and enormously nuanced psychosocial, behavioral intervention.  For each individual child with autism, ABA therapy is designed, supervised and performed by trained and skilled ABA therapy professionals.  Effective ABA treatment requires 25-40 hours per week of services, usually over a period of years. *McHenry, supra* at *5-6.

12

In some cases, children with autism have completely recovered, and lost their autism diagnosis after receiving intensive ABA therapy, usually 40 hours per week, starting at a young age. (http://www.baam.emich.edu/baammainpages/whtnew.htm; last visited May 18, 2010; The Today Show, April 17, 2010: "Can kids 'recover' from autism?").    On the other hand, "[t]reatment delayed or not provided at the prescribed amount diminishes effectiveness." (Ex 10, *Letter to U.S. Armed Services Committee, September 19, 2008*).    The delay or denial of appropriate and necessary ABA therapy interventions "has negative impacts to the health and progress of the child with autism resulting in increased burdens on the family, and anticipated higher health care costs resulting from interruptions in treatment or failure to provide for prescribed level of care." (Ex 10, *Letter to U.S. Armed Services Committee, September 19, 2008*).

## C.    TMA adopted an interpretive rule declaring that when Congress enacted section 1079(a) it intended to exclude ABA therapy benefits from the TRICARE Basic Program.

Since at least 2001, Defendants have interpreted 10 U.S.C. ch. 55 § 1079(a)(9) as excluding ABA therapy benefits for autistic children from coverage under the TRICARE Basic Program. (Ex 1, *TMA Policy Letter July 3, 2001*).    TMA claims that ABA therapy is "special education," and TMA has instructed its contractors not to provide ABA therapy under the TRICARE Basic Program, and only to provide ABA therapy under the ECHO Program authorized by 10 U.S.C. 1079(d)-(f). (Ex 1, *TMA Policy Letter July 3, 2001*; Ex 12, *TMA Policy Letter March 14, 2001*).    Exhibit 2 to Defendants' Unopposed Motion to Supplement the Record in Support of Defendants' Motion to Dismiss [DE 14] is a July 3, 2001, letter from the Office of the Assistant Secretary of Defense Health Affairs to the Director of Contract Management and Compliance for one of TMA's contractors.  In this letter, TMA states as follows:

13

You asked if all ABA services are payable only under the PFPWD [now known as ECHO] **or if some can be cost shared under the Basic Program**. As ABA is an educational program, by regulation it is covered only under the PFPWD [now, ECHO]. TMA's Office of Medical Benefits and Reimbursement Systems states that ABA does not include medical services such as speech or occupational therapy as contemplated by the Basic Program.

You also noted that one provider in the Central Region apparently bills ABA as psychotherapy under procedure code 90806. We question whether that is the appropriate code. For example, 98220 or 98290 for special education might be more appropriate.

(Ex 1, *TMA Letter July 3, 2001*) (emphasis added). TMA's Deputy Director, Major General Elder Granger, provided the same interpretive statement to Florida Congressman Jeff Miller in 2008. When Congressman Miller inquired why the Berge's request for ABA therapy benefits was denied, Major General Granger stated that "ABA is an educational, as opposed to a medical benefit, and as such, is available only under the program authorized by 10 United States Code 1079(d)-(f) [now known as ECHO]." (Ex 3, *Granger Letter to Congressman Miller*).

In conversations with military families, Maj. Gen. Granger has characterized TMA's decision as an interpretive rule. Specifically, Maj. Gen. Granger, the former TMA Deputy Director, has personally informed military families "that it was a legislative decision to exclude [military] retirees from eligibility for ABA benefits." (Ex 2, *Affidavit of Martin Barry, MSGT (RET)*). Maj. Gen. Granger also characterized the decision as an interpretive rule in discussions with military families through the use of an interactive blog that used to be available at http://www.health.mil/tmablog. (See Ex 4, *TRICARE Blog Press Release August 28, 2008*). However, TMA has since removed these blog postings from the internet. (Ex 5, *http://www.health.mil/blog, The resource cannot be found*).

DoD also announced its position on ABA therapy in its July 2007 Report and Plan on Services to Military Dependent Children with Autism, wherein DoD stated: "ABA, as a

behavioral intervention that shapes behaviors and teaches skills, is a **special education** service that can be cost-shared under ECHO." (Ex 11, *2007 Report and Plan on Services to Military Dependent Children with Autism*, p. 10) (emphasis added).  Similarly, in opposition to a proposed 2008 or 2009 bill that would have explicitly prohibited DoD from considering ABA therapy to be "special education," DoD represented to Congress that "[i]n requiring that the Secretary may not consider [ABA] to be special education, and thereby implying that ABA is a medical intervention for [autism] rather than an educational intervention, the bill goes against the weight of current professional assessment." (Ex 7, *Memo Opposing H.R. 1600*).

### D.     The Berges claim for benefits was denied with the same explanation as that received by thousands of military families – ABA is only covered by ECHO.

On April 11, 2007, Dr. James Van Decar, Developmental Pediatrician at Hurlburt Field Pediatrics, of the 99th Medical Group, Hurlburt Field, FL diagnosed two-year old Z.B. with Autistic Disorder Infantile, Full Syndrome present. (Ex 20, *Z.B. Autism Diagnosis*).  Dr. Van Decar recommended that an aggressive management program, such as ABA be implemented immediately. (Ex 20).

The following day, April 12, 2007, Z.B.'s mother, Dawn Berge, contacted TRICARE's Managed Care Support Contractor for the Southeast Region, Value Options.  Dawn was told that since her husband is retired, Z.B. is ineligible for ECHO benefits.  Z.B.'s father retired from his position as a U.S. Air Force Master Sergeant in August, 2006, and is eligible for TRICARE's retiree benefits.  Nonetheless, the Value Options case manager told Dawn that "there is no next step," and that Z.B. is ineligible for benefits related to ABA services.  (Ex 21, *Reconsideration Letter, June 1, 2007*).

15

On April 30, 2007, Dawn met with Ms. Gina Ballone, M.S. BCBA, and Clinical Director for Brilliant Minds Clinic. Ms. Ballone performed an assessment of Z.B. and arranged for ABA therapy sessions. (Ex 21). On May 17, 2007, Dawn once again contacted TRICARE's Managed Care Support Contractor for the region and was again told that Z.B. is ineligible for benefits related to ABA services because Kenneth, Z.B.'s father, is retired. (Ex 21, *Reconsideration Letter, June 1, 2007*). TRICARE's records show that it received a request for ABA services for Z.B. on May 21, 2007, and that it was denied because Z.B. "was not eligible for ECHO." (Ex 3, *Letter from Major General Granger*). On May 23, 2007, Dawn received a letter purportedly explaining the reasons for the denial. (Ex 22, *May 23, 2007, Denial Letter*). In fact, the letter from TRICARE merely describes the ABA benefits that are available for ECHO beneficiaries and provides no explanation for why Z.B. was denied benefits. (Ex 22). On June 1, 2007, Dawn filed an appeal of the denial. (Ex 21, *Reconsideration Letter, June 1, 2007*). On June 18, 2007, TRICARE denied the appeal. (Ex 23, *Z.B. Redetermination Denial, 6/18/2007*).

Dawn and Kenneth have been paying approximately $20,000 per year out of pocket, with the help of donations and fundraisers put on by family and friends, for Z.B. to receive 12 hours per week of ABA therapy. 12 hours is less than half of the recommended minimum of 25 hours, and well below the ideal recommendation of 40 hours per week. (See, e.g., Ex 10, *Letter to U.S. Armed Services Committee, September 19, 2008*; Ex 15, *Navy Surgeon General Letter*; Ex 16, *U.S. Army Letter*).

In their letters to Plaintiffs denying their claims for payment of ABA therapy under the TRICARE Basic program, DoD justifies its denials by reference to the policy manual provision defining special education for purposes of the TRICARE ECHO program, and asserts that "ABA

therapy cannot be authorized unless the beneficiary is enrolled in the ECHO program." (Ex 23,

*Z.B. Redetermination Denial, 6/18/2007*).  This rationale underlies Defendants' denial of benefits

for all proposed class members.  For example, in a denial letter sent to one of the other likely

class members, Defendants state as follows:

> TRICARE coverage of Applied Behavioral Analysis (ABA) therapy is requested.
> ABA therapy is offered as a special education benefit to Extended Health Care
> Option (ECHO) enrolled beneficiaries only as per TRICARE Policy Manual,
> Chapter 9, Section 9.1 (Special Education).  At this time, the beneficiary is not
> eligible for ECHO and therefore the request for ABA therapy is denied.

(Ex 24, *J.C. Denial Letter, 12/22/2009*).

The 46 affidavits from military families who have children with autism, attached hereto

as exhibit 6, demonstrate that TMA has consistently enforced this policy and applied the same

interpretive rule to all claims for ABA therapy benefits. (Ex 6, *Military Family Affidavits*).

## III.    ARGUMENT

### A.    Defendants have not eliminated, and cannot moot, the final agency action Plaintiffs are challenging.

 Plaintiffs assert that Defendants' classification of ABA therapy as "special education" is

substantively and procedurally defective, contrary to law, including 10 U.S.C. ch. 55, and

violates the Administrative Procedures Act, 5 U.S.C. §§ 552, 553, and 706.  Plaintiffs also

request declaratory relief pursuant to 28 U.S.C. § 2201(a) and 5 U.S.C. § 702. (See Plaintiffs'

Complaint).  Defendants' Motion to Dismiss is premised on the assertion that they can moot all

of these claims by unilaterally re-opening Z.B.'s adjudication.  This is false, and Defendants do

not even have the ability to unilaterally re-open the Berge's redetermination denial. 32 C.F.R.

199.10(b).

Counts I, II, and IV of Plaintiffs' Complaint, alleging violations of 5 U.S.C. §§ 552 and 553, and requesting declaratory relief pursuant to 28 U.S.C. § 2201(a) and 5 U.S.C. § 702 are specifically and solely focused on the legal violations surrounding adoption of Defendants' rule providing that ABA therapy is excluded from the TRICARE Basic Program.  While Plaintiffs do request relief in the form of payment for all wrongfully denied benefits, Count III of Plaintiffs' Complaint, alleging violations of 5 U.S.C. § 706, is also a direct challenge to the agency interpretive rule that formed the basis for the denial of Z.B.'s claims.  Defendants' Motion to Dismiss must be denied because it does not even attempt to address at least 3 of Plaintiffs' claims.

### 1.    The Berge redetermination denial is final and subject to judicial review.

Plaintiffs appeal from a TMA redetermination decision that is final pursuant to 5 U.S.C. § 704 and 32 C.F.R. § 199.10(b)(5).  TMA misconstrues the agency regulations and relies on an inapplicable section of the regulations to assert that it can unilaterally re-open the Berges' denial. There are at least four possible levels of agency review for TRICARE benefit claims. 32. C.F.R. § 199.10.  First, there is an initial determination, after which the beneficiary can request reconsideration.  Following reconsideration there is an opportunity for a formal review, followed by the possibility of a hearing. *Id.*  There is no requirement that beneficiaries exhaust the administrative review procedures.  Plaintiffs are entitled to appeal from any level of review that is final.  5 U.S.C. § 704.  In *Darby v. Cisneros*, 509 U.S. 137, 154, 113 S. Ct. 2539 (1993), the Supreme Court held as follows:

> where the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review.  Courts are not free to impose an exhaustion requirement as a

rule of judicial administration where the agency action has already become 'final' under §10(c).

The Berges' redetermination has become final. There is no agency rule requiring appeal before judicial review, nor any rule holding that the redetermination is inoperative pending review. Just the opposite, the agency regulations specifically provide that the redetermination has become final. 32 C.F.R. 199.10(b)(5) provides as follows:

> *Effect of reconsideration determination.* The reconsideration determination is final if . . .

> (ii) Appeal rights have been offered, but a request for formal review is not received by [TRICARE] within 60 days of the date of the notice of the reconsideration determination.

Defendants rely on the rule governing a final *initial determination*, 32 C.F.R. 199.10(a), but the Berges have appealed from a final *reconsideration*, 32 C.F.R. 199.10(b). (See exhibits 21, 22, and 23). The agency rules allow an "initial determination" to be unilaterally re-opened, but do not allow a unilateral re-opening of the "reconsideration" or of any higher level of agency review. If the agency were allowed to re-open every stage of review it could indefinitely delay judicial review. Such a procedure would violate the letter and spirit of the APA, as well as the foundations of due process. U.S. Const. Amd. V and XIV. Sensibly, DOD did not adopt regulations allowing TMA to do what it has purportedly done in this case.

Furthermore, there is no rule providing that the denial of TRICARE benefits is inoperative pending agency review. *Darby*, 509 U.S. at 154. To re-open the Berge's adjudication and frustrate judicial review, Defendants would have to immediately commence payment of benefits for Z.B.'s ABA therapy and would have to pay all ABA therapy benefits that have been wrongfully denied. Here, Defendants are attempting to impose a back-door exhaustion requirement by "re-opening" the Berge's determination. This is not permitted by

law.  Pursuant to APA section 704 and the *Darby* doctrine, Plaintiffs are entitled to judicial

review because the agency redetermination has become final.

> **2.    TMA's interpretive rule excluding ABA therapy benefits from the TRICARE Basic Program is a final agency action subject to judicial review.**

The Berges challenge Defendants' interpretive rule providing that the "special education"

exclusion in section 1079(a) prohibits TMA from providing ABA therapy benefits under the

TRICARE Basic Program.  This interpretive rule formed the basis of TMA's denial of benefits

for the Berges and all members of the class. (See exhibits 1-3, 6, 7, 9, 11, 12, and 21-24).  The

DoD cannot evade judicial review of this rule simply by stating, as it has, that "'TMA has not

made a **formal** policy determination as to whether ABA services might be covered' as a Basic

Program medical benefit." (Defendants' Motion to Dismiss, p. 4) *Florida Power & Light Co. v.

Lorion*, 470 U.S. 729, 744 (1985) ("The APA specifically contemplates judicial review on the

basis of the agency record compiled in the course of informal agency action in which a hearing

has not occurred. See 5 U.S.C. §§ 551(13), 704, 706"); *Natural Resources Defense Counsel v.

EPA*, 22 F.3d 1125, 1132-1133 (D.C. Cir. 1994) ("the absence of a formal statement of the

agency's position, as here, is not dispositive: An agency may not, for example, avoid judicial

review 'merely by choosing the form of a letter to express its definitive position on a general

question of statutory interpretation.' *Id*. (quoting *Ciba-Geigy*, 801 F.2d 430, 438 n.9 (D.C. Cir.

1986)).

In *Appalachian Power Company v. EPA*, 208 F.3d 1015, 1022 (2000), the D.C. Circuit

addressed the definition of "final agency action":

> Two conditions must be satisfied for agency action to be final: First, the action
> must mark the consummation of the agency's decisionmaking process – it must

not be of a merely tentative or interlocutory nature. And second, the action must
be one by which rights or obligations have been determined, or from which legal
consequences will flow.

(internal quotations and citations omitted). Just as the EPA's guidance document in *Appalachian*

*Power* was a final agency action, so is TMA's directive requiring its contractors to deny claims

for ABA therapy. Since at least 2001, TMA's contractors have been following the agency

directive when denying retiree claims and funneling active duty claims for ABA therapy into the

limited ECHO program. (See, *e.g.*, Ex 1 and 6). The Berges have been forced to spend tens of

thousands of dollars out of pocket to pay for Z.B.'s ABA therapy, and Z.B. has had to suffice

with less than half the *minimum* recommended number of hours for ABA therapy. As have

many others. (See, e.g., Ex 6). TMA's rule has had severe legal consequences, and rights of

beneficiaries, and obligations of contractors to pay or deny benefits, have been determined.

TMA's claim that it may change its policy regarding ABA therapy in the near future has

no effect on the currently pending administrative review proceeding. As the Court held in

*Appalachian Power*:

> EPA may think that because the Guidance, in all its particulars, is subject to
> change, it is not binding and therefore not final action. . . But all laws are subject
> to change. Even that most enduring of documents, the Constitution of the United
> States, may be amended from time to time. The fact that a law may be altered in
> the future has nothing to do with whether it is subject to judicial review at the
> moment.

208 F.3d at 1022 (citation omitted).

While Defendants have purportedly ordered contractors to stay consideration of claims

for ABA therapy pending further consideration of the Berges' adjudication (Ex 25, *TMA Letter*

*June 30, 2010*), such a non-committal policy letter cannot moot the currently pending judicial

proceedings. As the Court held in *United States v. Virgin Islands*, 363 F.3d 276, 284-285 (3rd

Cir. V.I. 2004):

> As the United States points out, voluntary cessation does not automatically render
> the case moot. In *Friends of the Earth, Inc. v. Laidlaw Environmental Services*,
> 528 U.S. 167, 189, 120 S. Ct. 693 (2000), the Supreme Court held that "it is well
> settled that 'a defendant's voluntary cessation of a challenged practice does not
> deprive a federal court of its power to determine the legality of the practice.'"
> (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S. Ct.
> 1070 (1982)). The standard for "determining whether a case has been mooted by
> the defendant's voluntary conduct is stringent: A case might become moot if
> subsequent events made it absolutely clear that the allegedly wrongful behavior
> could not reasonably be expected to recur." *Id.* (citing *United States v.
> Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203, 89 S. Ct. 361 (1968)).
> Moreover, the party alleging mootness bears the "heavy," even "formidable"
> burden of persuading the court that the challenged conduct cannot reasonably be
> expected to resume. *Id.* at 189-90.

Defendants cannot meet the heavy burden necessary to show mootness. In the policy letter

issued to contractors, Defendants have specifically reserved the right to re-start the DoD's illegal

denial of claims, and they have done so. As recently as July 8, 2010, TMA has denied claims for

ABA therapy with its same curt denial letters that were issued before the filing of Plaintiffs'

Complaint and the issuance of TMA's June 30th letter. (Ex 9)

Defense counsel's claim that TMA "vacated" its policy (Ex 8) is not determinative. *The*

*Fund For Animals, Inc. v. U.S. Bureau of Land Management*, 460 F.3d 13, 36-37 (D.C. Cir.

2006) ("As the Supreme Court has reminded us, '[t]he particular label placed upon [an agency

order] by [an agency] is not necessarily conclusive, for it is the substance of what the [agency]

has purported to do and has done which is decisive.'") (dissent, string cite omitted).

Defendants' attempt to evade judicial review through the issuance of its non-committal

policy letter to contractors is similar to the ploy attempted by the agency in *Lutheran Church-*

*Missouri Synod v. Federal Communications Commission, et al.*, 141 F.3d 344 (1998).  In that

case, the D.C. Circuit responded to the agency ploy as follows:

> As a preliminary matter, we deal with the Commission's novel, last second
> motion to remand – which we deny.  We simply do not understand, as a matter of
> administrative law, how we could consider a post-argument "policy statement,"
> which, as [the Commissioner] correctly pointed out, does not bind the
> Commission to a result[.]  The FCC's counsel represents that the Commission on
> remand would vacate this order, but the Commission has not confessed error - -
> its policy statement is directed only towards the future. . .the Commission has on
> occasion employed some rather unusual legal tactics when it wished to avoid
> judicial review, but this ploy may well take the prize.

*Id.* 141 F.3d at 349.  In this case, Defendants have not proposed any action to remedy the

thousands of wrongful denials that have already occurred.  It is not enough for TMA to simply

write a letter to its *contractors* stating that it is reconsidering the policy. (Ex 25, *TMA Letter,

June 30, 2010*).  DoD must notify its *beneficiaries* of a change in benefits, **provide benefits** to

such beneficiaries, **and must re-open all past claims** for ABA therapy **so that benefits may be**

**provided in accordance with the law**.  There have been years of wrongfully withheld benefit

payments.  Many families have already paid for years of therapy out-of-pocket, and harm

continues to accrue for which a judicial remedy is necessary and required pursuant to 5 U.S.C. §

706 ("The reviewing court *shall*: (1) compel agency action unlawfully withheld or unreasonably

delayed; and, (2) hold unlawful and set aside agency action, findings, and conclusions . . .")

(emphasis added).

It is also well-settled that an administrative agency cannot unilaterally re-open

proceedings or re-consider a past decision while judicial review of those past agency actions is

pending.  Defendants must first seek leave of Court for a remand. *Anchor Line Limited v.

Federal Maritime Commission*, 299 F.2d 124, 125 (1962) ("It is true that when an agency seeks

to reconsider its action, it should move the court to remand or to hold the case in abeyance

pending reconsideration by the agency.   We do not condone the failure to follow that

procedure.")  Otherwise, agencies could too easily create backdoor exhaustion requirements, as

TMA illegally attempts to do here. *Darby*, *supra*.   It is patently unfair and prejudicial to

Plaintiffs' due process rights for Defendants, with DoD's vast resources, to try and force

Plaintiffs to litigate this issue in two fora simultaneously.   While Defendants' Motion to Dismiss

does include an alternative request for relief, it does not excuse the acts Defendants have taken

prior to the Court even ruling on the instant Motion, and Defendants' Motion to Dismiss must be

denied.

> **B.     This is not an appropriate case for remand without vacation.**

Defendants' instant Motion asks the Court to grant the most controversial relief possible

in agency adjudications, remand without vacation.   See, *e.g.*, *Checkosky v. SEC*, 23 F.3d 452

(D.C. Cir. 1994).   Senior Circuit Judge Randolph recently reiterated the position of those who

hold that remand without vacation is prohibited by the plain meaning of the APA.   In *Comcast*

*Corp. v. FCC*, 579 F.3d 1, 9 (D.C. Cir. 2009), Judge Randolph held as follows in his concurring

opinion:

> I continue to believe that whenever a reviewing court finds an administrative rule
> or order unlawful, the Administrative Procedure Act requires the court to vacate
> the agency's action.   Section 706(2)(A) of the APA could not be clearer: a court
> faced with an arbitrary and capricious rule or order "shall hold unlawful and set
> aside" that agency action.   "Set aside" means vacate, according to dictionaries and
> the common understanding of judges, to whom the provision is addressed.   And
> "shall" means "must."   I see no play in the joints.   The APA itself contains no
> exception, which is why arbitrary, capricious, or otherwise unlawful agency
> action must be set aside "[i]n all cases."   *Citizens to Preserve Overton Park, Inc.*
> *v. Volpe*, 401 U.S. 402, 413-14, 91 S. Ct. 814 (1971).   It is also why this court has
> repeatedly cited §706(2)(A) in recognition that it "must" – not may – set aside
> such illegal agency action.

(internal citation omitted).

Given the strong mandate contained in §706(2)(A), even those Courts that believe remand without vacation is appropriate in some circumstances will only invoke the doctrine on rare occasions, and usually only under the most sensitive and equitable circumstances – not existing here. *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001) (A prevailing party on an APA claim "is entitled to relief under that statute, which normally will be vacatur.") The D.C. Circuit primarily remands without vacating only when there is a concern that vacating an agency rule may cause a destructive regulatory vacuum. In *AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 92 (D.D.C. 2007), the Court held as follows:

> the risk of disruption posed by invalidating a union reporting requirement does not even approach the risk posed by an order nullifying an environmental or health regulation central to public safety. It is in this latter scenario that the D.C. Circuit has been particularly mindful of the potential for disruption and has accordingly preferred to remand invalid rules without vacating them.

(citations omitted). This is not such a case. Indeed, the equities are balanced just the opposite. Any delay in vacating the agency rule and requiring the payment of ABA therapy benefits that Plaintiffs are entitled to by law could have permanent, negative consequences for the children with autism. (See Ex 6, *Military Family Affidavits*).

In this case, Defendants acknowledge that they failed to formerly articulate a rational basis for denying Plaintiffs' claim for ABA therapy benefits. (Ex 26, *TMA Reopening Letter June 22, 2010*: "The initial reconsideration determination did not address whether ABA services were eligible for coverage as a Program benefit under . . . the 'Basic Program.') This is an admission that Defendants' denial of benefits was wrongful, and arbitrary, and must be vacated. *D&F Afonso Realty Trust v. Garvey*, 216 F.3d 1191, 1195 (D.C. Cir. 2000) ("'[T]he requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result . . . .'" (quoting *Pub. Citizen, Inc. v. F.A.A.*, 988 F.2d 186, 197 (D.C.

Cir. 1993) (alterations in original)); *see also*, *Stainback v. Mabus*, 671 F. Supp. 2d 126, 134 (2009) (Walton, J.) (holding that failure to state the basis for a decision raises an inference of arbitrary or capricious decision-making).

Under the circumstances of this case, vacation is required. *Petroleum Communications v. FCC*, 22 F.3d 1164, 1172 (D.C. Cir. 1994) ("[w]here the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [a court] *must* undo its action.") (citation omitted) (emphasis added). As this Court held in *Muwekma Ohlone Tribe, supra*, 452 F. Supp. 2d at 123-124:

> "[W]hen there is a contemporaneous explanation of the [challenged] agency decision, the validity of that action must stand and fall on the propriety of that finding. . . . If that finding is not sustainable on the administrative record made, then the [agency's] decision must be vacated[.]"

(quoting *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 549, 98 S. Ct. 1197 (1978), and *Camp v. Pitts*, 411 U.S. 138, 143, 93 S. Ct. 1241 (1973)). In this case there was a contemporaneous explanation for the agency decision, even if not formally stated in the redetermination denial. The Berge's claim was denied because TMA has instructed all contractors that "ABA is an educational, as opposed to a medical benefit, and as such, is available only under the [ECHO Program]." (Ex 3, *Granger Letter to Congressman Miller*; see also, Ex 1, *TMA Policy Letter, July 3, 2001* and Ex 2, *Affidavit of Martin Barry*). The Court should examine this agency determination and overturn it on the merits by granting Plaintiffs' forthcoming Motion for Summary Judgment/Motion to Vacate.

Even when there is no contemporaneous explanation of the agency decision, the remedy is not to remand without vacating. In such a situation, the Court should, without remanding, allow limited discovery into the agency decisionmaking process. *Camp*, 411 U.S. at 142-143 (per

26

curiam) ("If, as the Court of Appeals held and as the Comptroller does not now contest, there was such failure to explain administrative action as to frustrate effective judicial review, the remedy was . . ., as contemplated by *Overton Park*, to obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary."). Once the necessary testimony has been procured, the Court can decide whether the agency rationale is supported by the administrative record and the law. If not, or if the agency record is inadequate, the Court **must vacate** the agency decision. *Id.* at 143.

The cases relied on by Defendants in support of the remand without vacation request are easily distinguishable. Defendants primarily rely on two decisions: *Sierra Club v. Antwerp*, 560 F. Supp. 2d 21 (D.D.C. 2008) and *Ethyl Corporation v. Browner*, 989 F.2d 522 (D.C. Cir. 1993). In both *Ethyl Corp.* and *Sierra Club*, the Defendants were able to point to a specific intervening event that made the agency's earlier decision moot. This stands in sharp contrast to Defendants' brief which is full of generalizations and misleading statements such as "TMA has already started the initial steps for an internal assessment of whether ABA should be covered under the Basic Program." (See Defendants' Motion to Dismiss and/or Stay, p. 7). Indeed, TMA "started the initial steps" a decade or more ago. While Defendants acknowledge that the current record is "incorrect or incomplete," TMA refuses to even produce the current record for Plaintiffs and the Court to review, and Plaintiff was forced, on July 9th, to file a Motion to Compel Production of the Administrative Record [DE 19]. Defendants' failure to provide any supporting rationale for the remand request exposes this motion as a mere ploy to delay and to create post-hoc reasons for a pre-ordained result: the denial of ABA therapy benefits for children with autism. Defendants are gaming the remand-without-vacation system in an effort to avoid judicial review. Allowing remand without vacation under these circumstances would make a mockery of the

APA, violate the law, violate due process, and cause real damage to thousands of military families.

### C.    Plaintiffs' Motion for Class Certification should be considered before any possible remand.

Remand without vacation is also inappropriate for a putative class action, such as the instant case.  By filing the class action complaint, class counsel and the Berges, as named plaintiffs, already "represent" the approximately 22,000 putative absent class members, and these putative class members have rights that must be considered and protected.  See, e.g., *Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d Cir. 1970) ("a suit brought as a class action should be treated as such for purposes of dismissal or compromise, until there is a full determination the class action is not proper."); see also, *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1110 (5th Cir. Miss. 1978) ("By the very act of filing a class action, the class representatives assume responsibilities to members of the class.").  In *Deposit Guaranty Nat. Bank v. Roper*, 445 U.S. 326, 343 (1980), Justice Stevens held in a concurring opinion as follows:

> In my opinion, when a proper class-action complaint is filed, the absent members of the class should be considered parties to the case or controversy at least for the limited purpose of the court's Art. III jurisdiction.  If the district judge fails to certify the class, I believe they remain parties until a final determination has been made that the action may not be maintained as a class action.  Thus, the continued viability of the case or controversy, as those words are used in Art. III, does not depend on the district judge's initial answer to the certification question; rather, it depends on the plaintiffs' right to have a class certified.

To remand the case without class certification would prejudice the rights of the absent class members and deny them redress while the Berges' individual claim meanders through the administrative process.  Specifically, to remand the Berges' claim without addressing class certification would leave 22,000 putative absent class members without any assurance as to

28

whether or how their rights are being represented or their denial of benefits are being reconsidered. Until and unless class certification is formally and finally denied, the Court needs to protect the rights of these children with autism.

To stay a class certification ruling while the case is remanded to the agency for a lengthy administrative process would be like staying a class certification ruling while the case is resolved on the merits. This is not permitted by law. See, e.g., *Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. Ark. 1982) (in employment/race discrimination case, it was improper for trial court to delay class certification until after a trial on the merits, although both parties agreed to the court's delay); *Folsom v. Blum*, 87 F.R.D. 443 (S.D.N.Y. 1980) (class certification was granted when the plaintiff sought notification to all class members of the procedure for recouping past AFDC benefits, and the court held that the determination of class status must be made before consideration of the merits).

> **1.    Remanding without class certification would leave 22,000 putative absent class members without any assurance that their rights are being represented or that their denial of benefits is even being reconsidered.**

It is not even clear whether an administrative ruling "on the merits" of the Berges' individual claim would have class-wide, res judicata effect on the rights of 22,000 putative absent class members. Thus, class certification should be addressed before any possible remand. Here, the entire putative class has had ABA therapy denied and/or had a $36,000 cap placed on ABA therapy benefits based on the policy that DoD now purportedly wishes to reconsider on remand. Particularly because this case involves one uniform, class claim – that ABA therapy is not "special education" – there should be a determination as to how the putative class rights may be affected by a decision on the Berges' claim.

29

Without a class certification ruling, the putative class members are without any guarantee that they will benefit from a positive decision on the Berges' claim. *Mayer v. Wing*, 922 F.Supp. 902, 908 (S.D.N.Y. 1996) ("This [defendant's] claim overstates the protection afforded to plaintiffs by [the stare decisis doctrine], particularly to indigent plaintiffs. Moreover, it ignores the many cases allowing class actions to seek injunctive relief against government agencies."). Likewise, it is not clear that putative absent class members will be bound by a negative decision. Therefore, it is also of benefit to Defendants to have class certification addressed before consideration of the merits, so that the class members will all be bound in the event that the issue is ultimately decided against the Berges, and upheld by the court. As the 7th Circuit held in *Bieneman v. Chicago*:

> [O]ne reason for early certification is to identify the stakes of the case so that the parties may choose their litigation strategies accordingly. After even a tentative decision on the merits, incentives are different. Indeed, a class representative who has lost on the merits may have a duty to the class to oppose certification, to avoid the preclusive effect of the judgment, while the defendants suddenly want the certification that they might have opposed at the outset. It is therefore difficult to imagine cases in which it is appropriate to defer class certification until after decision on the merits.

838 F.2d 962, 964 (7th Cir. Ill. 1988) (citations omitted).

Indeed, without class certification, it is theoretically possible that each and every one of the 22,000 putative absent class members would have to individually argue to Defendants that he or she is entitled to the same (if favorable) interpretation/adjudication as the Berges. Even at present, without a class certification ruling, it is unclear whether each of the 22,000 putative absent class members are expected to seek the same re-opening of their ABA benefits denial that the Berges are purportedly receiving from Defendants. The class should be certified before any possible remand because remanding the Berges' claim without addressing class certification

30

would leave 22,000 putative absent class members without any assurance as to whether/how their rights are being represented or their denial of benefits are being reconsidered. *Boulet v. Cellucci*, 107 F.Supp.2d 61, 65 (D. Mass. 2000) ("Certification is likewise appropriate where there is a danger that the individual claims may be mooted, or a declaration of rights with respect to one plaintiff may not automatically translate into an appropriate relief for other class members[.]"); see also, *Avery v. Sec'y of HHS*, 762 F.2d 158, 163 (1st Cir. 1985) (Breyer, J.) (holding that in remanding certain disability claims to the agency the district court could nevertheless retain jurisdiction over a class action in which the agency's management of those claims was at issue.).

> **2.    Defendants cannot moot the class simply be "re-opening" the Berges' adjudication.**

By seeking remand without vacation, Defendants are trying to evade reaching the merits on class certification as well as the overarching statutory question affecting the putative class. Analogous attempts by defendants to moot out the claim of a named plaintiff have been overwhelmingly rejected. Allowing Defendants' ploy to succeed would frustrate the class action device and disadvantage putative class members. As the Supreme Court held in *Deposit Guaranty Nat. Bank*:

> A district court's ruling on the certification issue is often the most significant decision rendered in these class-action proceedings. . . . Requiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement.

*Supra,* 445 U.S. at 339; see also, *Griffith v. Bowen*, 678 F. Supp. 942 (D. Mass. 1988) (In Medicare benefits case, attempts by defendant to "pick off" the named plaintiffs will not moot a

case when there is an ongoing controversy between the defendant and the class.); *Wilkerson v.*

*Bowen*, 828 F.2d 117 (3ʳᵈ Cir. 1987) (the fact that named plaintiffs' disability claims had been

satisfied did not by itself render class representation inadequate).

Similarly, the 8ᵗʰ Circuit has held as follows:

> Judgment should be entered against a putative class representative on a
> defendant's offer of payment only where class certification has been properly
> denied and the offer satisfies the representative's entire demand for injuries and
> costs of the suit.  This rule protects a class representative's responsibilities to the
> putative class members from being terminated by a defendant's attempts to pay
> off the representative's claims.

*Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525, 1539 (8ᵗʰ Cir. 1996) (citations omitted).

Defendants cannot be permitted to re-open the Berge's adjudication without adequate protection

for the interests of the putative absent class members.  This is what could occur, at best, if the

Court were to grant Defendants' request for a voluntary remand before ruling on class

certification.

### 3. Remanding this case without addressing class certification would frustrate the cost and resource-spreading function of a class action.

The named Plaintiffs and putative class members should be able to proceed as a class

action while they are litigating this case on the merits, either on remand to the agency or in the

District Court.  For the Court to remand this case without ruling on class certification would be

to ignore the fact that the named Plaintiffs do not have sufficient resources to challenge

Defendants by themselves without the empowering attributes of a class action, which would

permit them to spread the enormous costs of litigating against the largest department of the

national Government and to proceed with the emotional and moral support of thousands of like

situated families laboring under similar circumstances.

With certification, the cost-spreading function of a class action – that, out of a common fund or benefit, the named Plaintiffs and putative class members share the costs of the litigation – is frustrated, and the entire burden is concentrated individually on the Berges alone. *Eufaula Drugs, Inc. v. TDI Managed Care Servs.*, 250 F.R.D. 670, 678 (M.D. Ala. 2008) ("[I]ndeed, it is the principal justification for class actions – using a cost spreading mechanism to allow plaintiffs to bring suits that otherwise would not be profitable."); see also, *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987) ("[T]he financial incentives offered by the class suit serve both the public interests in the private enforcement of various regulatory schemes . . . and the private interests of the class members in obtaining redress of legal grievances that might not feasibly be remedied within the framework of a multiplicity of small individual suits for damages."). Defendants want the Berges, and all of the military families victimized by Defendants' policy, to stand alone as individual litigants in a multiplicity of actions, rather than allied with like-interested families in a single class action, so that they don't have the resources to make their voices heard.

Spreading the cost of prevailing among class members, of course, also enables the class action attorneys to bring the case. Claims might be high here, but resources are low, military families cannot afford the immense cost of litigation against the government, without the possibility of recovery out of a class fund such cases would not likely exist. *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 251 (D. Del. 2002) ("A class action facilitates spreading of litigation costs among numerous litigants and encourages private attorney general enforcement of statute.").

    **4. If the case is remanded without class certification, the court would need to set parameters for entering class relief following the agency adjudication.**

If the court does not address class certification prior to remand, the court must prospectively set parameters for the entry of class relief upon a return of the putative class action to the district court or somehow during the administrative process. However, the details of how this would work are unclear, and a better approach is to certify the class before the issue is determined "on the merits" on remand. See, e.g., *Duggan v. Bowen*, 691 F. Supp. 1487 (D.D.C. 1988) (Class of Medicare claimants was certified in action against Secretary of Health and Human Services challenging the agency interpretation of the Medicare provision regarding "part-time or intermittent care" as not covering home health aid services if required more than four days a week, regardless of the number of hours worked per day.); *Cruz v Bowen*, 672 F. Supp. 1300 (N.D. Cal. 1987) (Agency was denied request for remand for further hearings because primarily legal questions were involved. Agency then reversed its position, but this still did not account for all claims. The court certified the class and remanded to the agency.); but see, *Lugo v. Heckler*, 98 F.R.D. 709 (E.D. Pa. 1983) (The court held class certification motion in abeyance and remanded named plaintiff's claim to agency. The agency reversed its decision on the named plaintiff's claim, so the court then allowed other class members to intervene as named Plaintiffs to continue the representation of the class.).

Class certification should be granted before any consideration of a possible remand because remanding without first granting class certification would create too much uncertainty and would create the need for further procedural motions that will unnecessarily delay the payment of benefits for children with autism who desperately need ABA therapy. See *Schoolcraft v. Sullivan*, 971 F.2d 81 (8th Cir. 1992) (Delay in awarding benefits while caught up in the administrative process will unfairly disadvantage the putative class members.).

**D.    Plaintiffs' forthcoming Motion for Summary Judgment and Motion for an Injunction should be considered before any possible remand.**

Defendants' rule classifying ABA therapy as "special education" under 1079(a)(9) must be vacated based, inter alia, on Defendants' admission that the past explanation for denying ABA therapy benefits was, at best, unintelligible.  However, the Court's analysis should not stop there.  Plaintiffs will soon file a Motion for Summary Judgment that will make it clear that Congress did not intend for the "special education" exclusion in the Military Health Benefits Statute to include medically or psychologically necessary health care, such as ABA therapy.

Plaintiffs' Summary Judgment Motion will demonstrate that Defendants' interpretive rule violates the law and should be vacated, and that Defendants should be ordered to immediately provide ABA therapy benefits and to reimburse the Plaintiff class members for all wrongfully denied benefits.   The Court should not consider a remand, even with vacation, until after considering Plaintiffs' Motion for Summary Judgment, which will demonstrate that remand is unnecessary. See, e.g., 10 U.S.C. ch. 55 § 1099(c) ("A health care plan designated by the Secretary of Defense . . . **shall** provide all health care to which a covered beneficiary is entitled under this chapter.") (emphasis added); also see, 10 U.S.C. ch. 55 §§ 1071, 1072, 1074, 1076, 1077, 1079, 1086 and 32 C.F.R. §§ 199.2 and 199.4.

Plaintiffs' Motion for Summary Judgment will ask the Court to vacate the DoD policy without remanding because only one conclusion is possible, either ABA is "special education" or it is not. *Fogg v. Ashcroft*, 254 F.3d 103, 111-112 (D.C. Cir. 2001) ("In the face of such legal error, we would normally remand to the court for remand to the agency, but we do not do so when, as here, remand would be futile.  'Only one conclusion would be supportable.') (quoting *Donovan v. Stafford Construction Co.*, 235 U.S. App. D.C. 352, 732 F.2d 954, 961 (D.C. Cir.

35

1984)).  The Court should find that ABA is not "special education" pursuant to the applicable law and regulations and should Order DoD to immediately provide benefits for ABA therapy.

## IV.    CONCLUSION

Defendants' Motion to Dismiss and/or Stay should be denied in its entirety.

Respectfully submitted,

**MANTESE HONIGMAN ROSSMAN AND WILLIAMSON, P.C.**
Attorneys for Plaintiffs

By:    ___/s/_____
David M. Honigman (MI - P33146)
dhonigman@manteselaw.com
Gerard V. Mantese (MI - P34424)
gmantese@manteselaw.com
Brendan H. Frey (MI - P70893)
bfrey@manteselaw.com
Brian M. Saxe (MI - P70046)
1361 E. Big Beaver Road
Troy, MI 48083
(248) 457-9200

___/s/_____
Bruce J. Klores (DC - 358548)
bjk@klores.com
Bruce J. Klores & Assoc. P.C.
Attorneys for Plaintiffs
1735 20th Street NW
Washington, DC 20009
Tel  (202) 628-8100
Fax  (202)628-1240

John J. Conway (MI - P56659)
john@johnjconway.com
John J. Conway, PC
Co-counsel for Plaintiffs
26622 Woodward Ave., Ste. 225
Royal Oak, MI 48067
(313) 961-652

Dated:  July 16, 2010

## CERTIFICATE OF SERVICE

I hereby certify that I served Plaintiffs' Memorandum in Opposition to Defendants'

Motion to Dismiss or, in the Alternative, to Hold This Action in Abeyance on the following

defendants in this matter electronically via CM/ECF, this 16th day of July 2010:

Tony West, Attorney General
Ronald C. Machen, Jr., U.S. Attorney for D.C.
Vincent M. Garvey, Deputy Director, Federal Programs Branch
Adam Kirschner, Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
50 Massachusetts Avenue, N.W.
Room 7126
Washington, D.C. 20001


___/s/_____
           Bruce J. Klores

37