# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

KENNETH BERGE, ET AL.,                    )
                                          )
                          Plaintiffs,     )     Civil Action No. 10-373 (RBW)
                                          )
            vs.                           )
                                          )
UNITED STATES OF AMERICA, ET AL.,         )
                                          )
                          Defendants.     )
_____ )

## RENEWED OPPOSITION TO PLAINTIFFS' MOTION
## FOR A PRELIMINARY INJUNCTION

### INTRODUCTION

Plaintiffs have moved for a preliminary injunction seeking an order that the Department of Defense reimburse all members of a putative class for the cost of Applied Behavior Analysis ("ABA") therapy during the pendency of this litigation.  Plaintiffs' motion was brought prematurely before a final decision was made concerning reimbursement for such therapy. Although a decision has now been made, plaintiffs continue to rely upon their previously filed motion that is based upon a challenge to a rationale that is not the subject of judicial review. Because plaintiffs' motion does not address the agency's decision that is in effect, seeks to alter the status quo, and seeks relief that is not even available under the Administrative Procedure Act ("APA"), this Court should deny plaintiffs' motion for a preliminary injunction.  This action brought pursuant to the APA should proceed to a review of the merits based upon the administrative record reviewed.

This APA action is a challenge to the adjudication by the TRICARE Management Activity ("TMA") within the Department of Defense ("DoD") to deny plaintiffs' claim for

reimbursement for ABA therapy for their dependent's autism under the basic DoD health services program that TMA administers.  Prior to that adjudication, TMA reopened a previous initial determination by a TRICARE contractor denying reimbursement; TMA had not made a formal policy determination on the scope of ABA coverage under the TRICARE Basic Program and sought to make such a determination through the adjudication of plaintiffs' claim.  On October 29, 2010, TMA issued a decision based on a formal review denying plaintiffs' claim for reimbursement.  Plaintiffs have the opportunity to seek an administrative hearing challenging the denial within 60 days of the decision.

Instead of addressing the decision of October 29, 2010, plaintiffs rest their motion on the arguments that they made before the agency had adjudicated their claim.  In doing so, the entire foundation of plaintiffs' arguments that TMA acted contrary to law is predicated on a theory that played no role in the agency's decision.  Plaintiffs' arguments on the merits are confined to whether ABA therapy is statutorily excluded from coverage as "special education."  But TMA did not decide that APA therapy was statutorily excluded as "special education."  Instead, TMA denied plaintiffs' claim for reimbursement for ABA therapy on the grounds that (1) it does not meet the regulatory definition of "medical" because it is an "educational intervention" rather than a covered medical treatment; and (2) it is not "proven" care in light of the regulatory "reliable evidence" standard even if it was to be considered medical care.  TMA reached these determinations based upon its regulations and a comprehensive review and analysis of the medical literature, including information submitted by plaintiffs as part of the adjudication.

In their motion for a preliminary injunction, plaintiffs ask this Court to order extraordinary relief that would not only alter the status quo but would mandate relief that is not

even available under the APA.  Because plaintiffs seek a mandatory injunction that alters the status quo, they are required to meet more than the normal high standard for a preliminary injunction; plaintiffs must make a clear showing that they are entitled to the relief that they seek.

Plaintiffs cannot show that they have a substantial likelihood of success on the merits, let alone satisfy the higher standard required for a mandatory injunction to alter the status quo. Plaintiffs are asking this Court to order TMA to reimburse the cost of all ABA therapy for the plaintiffs and all putative class members during the pendency of this lawsuit.  Such relief is not available.  No class has been certified and, in any event, Circuit precedent dictates that even if plaintiffs ultimately succeeded on the merits, the proper remedy would be to remand to the agency for further consideration.  Moreover, under the APA, it is plaintiffs' burden to identify what is arbitrary or capricious or contrary to law in an agency's decision.  Plaintiffs' motion is void of any discussion of the October 29, 2010, decision, and instead rests on an irrelevant legal theory attacking a decision that had not yet been made.  Nevertheless, even if plaintiffs were to address the agency's decision, they would not be able to show that the law and facts clearly favor them.  Under binding precedent, an agency is owed substantial deference in applying its expertise and in interpreting its regulations.  Here, TMA reviewed the medical literature in the context of its regulations and made the determination that plaintiffs were not eligible for reimbursement.  Plaintiffs cannot demonstrate that the agency made a clear error in judgment or its interpretation of its regulations is plainly erroneous.

Because plaintiffs cannot satisfy their burden regarding the merits, this Court need not examine the other preliminary injunction factors.  But if the Court were to do so, plaintiffs' motion for a preliminary injunction must still be denied.  Supreme Court precedent requires that

a plaintiff demonstrate more than a mere possibility of irreparable harm absent the relief

requested.  Further, when seeking a mandatory injunction, plaintiffs have to demonstrate that

extreme or very serious damage will result from the denial of the injunction.  Although plaintiffs

ask this Court to assume the efficacy of ABA, the agency has determined that ABA is not

"proven" care even if one were to assume it is medical care.  Accordingly, plaintiffs cannot show

a likelihood that they will suffer extreme or very serious damage absent an injunction.

  An order that TMA reimburse all ABA therapy during the pendency of this lawsuit

would, however, have a substantial detrimental impact on non-moving parties.  An order

requiring reimbursement could detrimentally impact those already receiving reimbursement

under a TRICARE extended benefits program for active duty service members as there is a

limited number of authorized providers for ABA therapy; an increase in demand could limit

those individuals' access to ABA therapy.  Ordering reimbursement for all ABA therapy would

also require a complicated restructuring in how TRICARE processes claims for reimbursement.

In addition, plaintiffs refuse to post a bond so the government is at risk of expending upwards of

$50 million a year without the possibility of being reimbursed.

  Moreover, the public interest would be greatly harmed in the granting of a preliminary

injunction.  A Court is not to substitute its judgment for that of the agency.  In a program as vast

and complicated as TRICARE, the agency is entitled to the opportunity to exercise its judgment

as to whether a beneficiary is entitled to reimbursement for a certain therapy.  Otherwise, this

Court would be in the role of making medical coverage determinations.  Rather than prematurely

addressing these issues, the public interest would be served by the filing of the administrative

record that is currently being compiled and having the parties brief the merits as to whether that

record supports the agency's decision.  Accordingly, plaintiffs' motion for a preliminary

injunction should be denied.

## BACKGROUND

### I.    Statutory and Regulatory Background

In 1956, Congress established a military health care system to "provid[e] an improved and uniform program of medical and dental care for members of the uniformed services and their dependents."  *See* Dependents' Medical Care Act, Pub. L. No. 84-569; 1956 U.S. Code Cong. And Admin News ("USCAAN"), p. 301; *see also* Pub. L. No. 85-861; 1958 USCAAN, p. 1731; 10 U.S.C. 1071 et seq.  This 1956 law established, *inter alia*, a system for the Secretary of Defense to contract for basic health insurance, medical service or health plans for dependents of active duty service members.  *See* 1956 USCAAN, p. 303-4; *see also* 10 U.S.C. 1079(a).  In 1966, Congress expanded this basic coverage to dependents of retirees.  *See* Pub. L. No. 98-614; 1966 USCAAN, p. 1020; *see also* 10 U.S.C. 1086(c).

In accordance with its statutory mandate, the Department of Defense has implemented regulations for the administration of the DoD health program commonly referred to originally as the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS"), and later as the TRICARE Program.  *See* 32 C.F.R. Part 199.  TMA administers this health benefit program for the DoD.[1]  The purchased care portion of this health benefit plan, the TRICARE Basic Program, is essentially a supplemental program to the care provided by the Uniformed Services in the Military Treatment Facilities (i.e., military hospitals), also referred to as the DoD "direct medical care system."  *See* 32 C.F.R. § 199.4(a).  TRICARE is a statutory program of medical benefits.  It is "similar to private insurance programs," *see id*., but is "not an insurance

---

[1] The regulations still use the acronym CHAMPUS, which, for the purposes of this litigation, can generally be substituted for TRICARE.

program in that it does not involve a contract guaranteeing the indemnification of an insured

party against a specified loss in return for a premium paid," *see* 32 C.F.R. § 199.1(d). "It is

designed to provide financial assistance to [TRICARE] beneficiaries for certain prescribed

medical care obtained from civilian sources." *See* 32 C.F.R. § 199.4(a). "Subject to all

applicable definitions, conditions, limitations, or exclusions specified in this part, the

[TRICARE] Basic Program will pay for medically necessary services and supplies required in

the diagnosis and treatment of illness or injury . . .." *See* 32 C.F.R. § 199.4(a)(1)(i). These

payments will be made for authorized care provided to eligible beneficiaries by authorized

providers. *See id*.

TRICARE contractors are the primary means of adjudicating and processing claims.

When an individual submits a claim for reimbursement under the TRICARE Basic Program, a

TRICARE contractor makes an initial determination as to whether the service or treatment is a

covered TRICARE benefit under the Basic Program pursuant to TRICARE regulations and

policy manuals. *See* 32 C.F.R. § 199.1(f)(1); *see also* 32 C.F.R. § 199.2 (definition of initial

determination); 32 C.F.R. § 199.10(a)(1) (appeal rights of initial determinations). This includes

making a determination that the claim is from an eligible beneficiary, that it is for an authorized

service, and that the care was provided by an authorized provider. *See* 32 C.F.R. §§ 199.6,

199.7. In other words, if the service or treatment is an otherwise covered benefit, the contractor

still has to make an individualized assessment on the particular claim "to ensure [it is in]

compliance" with the TRICARE regulations with respect to the individual beneficiary. *See* 32

C.F.R. § 199.7.

A service or treatment is generally covered under the Basic Program if it is deemed to be

a proven necessary medical service, *see* 32 C.F.R. § 199.4(a)(1)(i), and as long as it does not

come within any statutory or regulatory exclusions, *see, e.g.*, 10 U.S.C. 1079(a);32 C.F.R. §

199.4(g).   For example, "special education" is statutorily excluded from coverage under the

Basic Program.  *See*  10 U.S.C. 1079(a)(9).[2]  TRICARE regulations define care that is

"medically or psychologically necessary" as "medical services and supplies which represent

appropriate medical care and that are generally accepted by qualified professionals to be

reasonable and adequate for the diagnosis and treatment of illness, injury, pregnancy, and mental

disorders."  *See* 32 C.F.R. § 199.2(b); *see also id*. (definition of "appropriate medical care").

Medical is defined as pertaining to "the diagnosis and treatment of illness, injury, pregnancy, and

mental disorders by trained and licensed or certified health professionals."  *See* 32 C.F.R. §

199.2(b).  The term "should be understood to include 'medical, psychological, surgical, and

obstetrical.'"  *See id*.

     "Unproven drugs, devices, and medical treatments or procedures" are not covered under

the Basic Program.  *See* 32 C.F.R. § 199.4(g)((15).  For the medical service to be considered

proven, it is necessary for "reliable evidence" to show that the "medical treatment or procedure

has been the subject of well-controlled studies of clinically meaningful endpoints, which have

determined its maximum tolerated dose, its toxicity, its safety, and its efficacy as compared with

standard means of treatment or diagnosis."  *See* 32 C.F.R. § 199.4(g)((15)(i)(C).  "Reliable

evidence" is restricted by regulation to the following enumerated categories of medical/scientific

evidence:

          (i)     Well controlled studies of clinically meaningful endpoints, published in refereed

---

[2] Plaintiffs' entire argument on the merits is focused on this statutory exclusion.  *See* Pls.' Memorandum In Support of Motion for Preliminary Injunction (Dkt. #48-1) at 10 ("Plaintiffs' motions asks this Court to resolve a legal question of statutory interpretation - whether ABA therapy is 'special education' for purposes of 10 U.S.C. 1079(a)(9).").

               medical literature.
(ii)       Published formal technology assessments.
(iii)      The published reports of national professional medical associations.
(iv)      Published national medical policy organization positions; and
(v)       The published reports of national expert opinion organizations.

*See* 32 C.F.R. § 199.2(b).[3]  "Specifically not included in the meaning of reliable evidence are reports, articles, or statements by providers or groups of providers containing only abstracts, anecdotal evidence or personal professional opinions."  *See id*.  Thus, DoD covers medically necessary care that meets regulatory requirements and that is not otherwise excluded by statute or other implementing regulations.

      If a contractor makes an initial determination that a beneficiary is not entitled to reimbursement, that determination is "final unless appealed in accordance with this chapter, or unless the initial determination is reopened by the TRICARE Management Activity, the [TRICARE] contractor, or the [TRICARE] peer review organization."  *See* 32 C.F.R. § 199.10(a)(1)(ii).  A beneficiary could choose to seek reconsideration with a TRICARE contractor.  *See* 32 C.F.R. § 199.10(a)(8).  Should the beneficiary seek further review beyond a reconsideration, then only at that time is the review made at the agency level by TMA.  *See id*. A "formal review" of a reconsideration "is performed by the Chief, Office of Appeals and Hearings, [TMA], or a designee, and is a thorough review of the case."  *See* 32 C.F.R. § 199.10(c)(2).  "Any party to the initial determination may request a hearing if the party is dissatisfied with the formal review determination" and certain conditions, such as a monetary minimum, apply.  *See*  32 C.F.R. § 199.10(d).  An "authorized party to any hearing, including

---

    [3] "The hierarchy of reliable evidence of proven medical effectiveness, established by (1) through (5) of this paragraph, is the order of the relative weight to be given to any particular source."  *See id*.

[TMA], may submit [at the hearing] additional evidence or testimony relevant to the appealable issue(s) and may appoint a representative, including legal counsel, to participate in the hearing process."  *See* 32 C.F.R. § 199.10(d)(2).

A determination as to whether a medical treatment or medical care is a benefit covered under the Basic Program, 32 C.F.R. § 199.4, is a separate consideration from whether something is covered under an extended benefits program, 32 C.F.R. § 199.5, that was established by Congress for dependents of active duty service members "to assist in the reduction of the disabling effects of a qualifying condition," *see* 10 U.S.C. § 1079(d)(1).  This program, known as TRICARE Extended Care Health Option ("ECHO"),[4] "is essentially a supplemental program to the TRICARE Basic Program" and "does not provide acute care nor benefits available through the TRICARE Basic Program."  *See* 32 C.F.R. § 199.5(a)(1).  Rather, the "purpose of ECHO is to provide an additional financial resource for an integrated set of services and supplies designed to assist in the reduction of the disabling effects of the ECHO-eligible dependent's[5] qualifying condition."  *See* 32 C.F.R. § 199.5(a)(2).  The Department of Defense has defined "qualifying

---

[4] Pursuant to section 701(b) of the National Defense Authorization Act for Fiscal Year 2002, the ECHO program replaced the previous Program for Persons with Disabilities ("PFPWD").  *See Tricare; Individual Case Management Program; Program for Persons With Disabilities; Extended Benefits for Disabled Family Members of Active Duty Service Members; Custodial Care*, 69 Fed. Reg. 51559 (Aug. 20, 2004).  Congress established PPFWD, although it was originally named Program for the Handicapped, "to provide financial assistance for active duty family members who are moderately or severely mentally retarded or have a serious physical disability" and "to help defray the cost of services not available either through the Basic Program or through other public agencies as a result of state residency requirements."  *See id*. at 51560.  The switch to the ECHO program, among other things, added "an extraordinary physical or psychological condition as a qualifying condition."  *See id*.

[5] Eligibility for ECHO is contingent upon enrollment in the Exceptional Family Member Program available to active duty family members through their branch of Service.  *See* 32 C.F.R. § 199.5(h)(2).

condition" to include (i) Mental Retardation; (ii) Serious physical disability; (iii) Extraordinary physical or psychological condition; (iv) Neuromuscular developmental condition or other condition for beneficiaries under the age of 3 years that is expected to precede a diagnosis of moderate or severe mental retardation or a serious physical condition; and (v) Multiple disabilities.  *See* 32 C.F.R. § 199.5(b)(2).  ECHO benefit are items or services that the Director of TMA "has determined are capable of confirming, arresting, or reducing the severity of the disabling effects of a qualifying condition."  *See* 32 C.F.R. § 199.5(c).  Extended benefits for these qualifying dependents may include the provision of "[t]raining, rehabilitation, special education, and assistive technology devices."  *See* 10 U.S.C. § 1079(e)(3)**.**

The TRICARE statute is silent on whether ABA is covered under the Basic Program. But "[t]he John Warner National Defense Authorization Act for Fiscal Year 2007, section 717, required [DoD] to develop a plan to provide services to military-dependent children with autism *within the authority of the ECHO program*.  Part of the plan was to develop a demonstration project to expand the availability of [Intensive Behavioral Intervention ("IBI")] services."  *See* Autism Services Demonstration Project for TRICARE Beneficiaries Under the Extended Care Health Option Program, 72 Fed. Reg. 68130, 68131 (Dec. 4, 2007) (emphasis added).  TMA has instituted a demonstration program for IBI services, which includes ABA services, for the treatment of autism for ABA therapy for ECHO-eligible dependents.  *See id*.  The demonstration program expanded the list of providers who would be eligible for reimbursement under ECHO.[6] *See id*. at 68132 ("This demonstration will test the advisability and feasibility of permitting

---

[6] Since 2001, predating this demonstration program, TMA has provided for reimbursement for ABA under its extended benefits program.  *See* Defendants' Unopposed Motion to Supplement the Record In Support of Defendants' Motion to Dismiss Or, In the Alternative, To Hold This Action in Abeyance (Dkt. #14)

TRICARE reimbursement for IBI services delivered by non-professional providers, under a modified corporate services model, in the absence of state or industry oversight.  Neither the TRICARE Basic Program nor the ECHO program currently authorizes reimbursement for providers working within this type of unregulated corporate structure.").

## II.    Procedural and Factual Background

On October 29, 2010, the Chief of TRICARE Appeals issued a formal review decision denying reimbursement to plaintiffs for ABA therapy under the TRICARE Basic Program for their dependent's autism.  *See* TRICARE Management Activity's Formal Review Decision, dated October 29, 2010 ("Formal Review Decision"), attached hereto as Exhibit 1.  This decision now forms the basis of this lawsuit, although plaintiffs may request an administrative hearing within 60 days of the date of the decision.  *See id.* at 10-11.

When plaintiffs had originally brought their motion for a preliminary injunction, the government had opposed the motion on that grounds that, *inter alia*, plaintiffs could not prevail on the merits because there was no final agency action for this Court to address.  *See* Defendant's Opposition to Plaintiffs' Motion for a Preliminary Injunction at 15-18 (Dkt. #57). Although plaintiffs had brought this APA action as a challenge to a June 18, 2007, TMA contractors' reconsideration decision denying reimbursement for ABA, *see* Plaintiffs' Complaint, Ex. 1 (attached hereto as Exhibit 2),[7] TMA reopened the initial determination denying reimbursement after having concluded that it never made a formal policy determination as to whether ABA is covered under the TRICARE Basic Program.  *See* TMA Reopening of the Denial of Z.B.'s ABA Claim, attached as Attachment B to Defendants' Memorandum in Support

_____

[7] Plaintiffs' exhibit cuts off the last few pages of the letter that identified the Plaintiffs' appeal rights.  The full document is attached to this memorandum.

of Their Motion to Dismiss Or, In the Alternative, to Hold This Action in Abeyance (Dkt. #12-2)

("TMA Reopening Letter") (attached hereto as Exhibit 3). Plaintiffs' earlier requests for

reimbursement were "processed as factual denials on the basis that [the beneficiary's] sponsor

was not on active duty and accordingly not eligible for [ECHO] benefits under 32 C.F.R. 199.5."

*See id*. Those decisions, however, never addressed whether ABA is covered under the Basic

Program. *See id*. Accordingly, TMA reopened those earlier denials to determine if the

beneficiary was entitled to reimbursement under the Basic Program, 32 C.F.R. § 199.4. *See id*.

An initial determination for a claim for reimbursement under TRICARE is final unless, among

other reasons, "the initial determination is reopened by [TMA]." *See* 32 C.F.R. §

199.10(a)(1)(ii)(A).

　　After having a hearing on plaintiffs' motion for a preliminary injunction on October 1,

2010, this Court held over the preliminary injunction hearing to November 4, 2010, *see* Minute

Entry (October 1, 2010), which would post-date the agency's anticipated decision. At the

hearing on November 4, 2010, this Court set a hearing for November 15, 2010, to address

plaintiffs' motion for a preliminary injunction. *See* Minute Entry (November 4, 2010). Plaintiffs

have elected not to revise their motion for a preliminary injunction to address the agency's

October 29, 2010, decision that would now be the subject of judicial review should plaintiffs not

pursue an administrative hearing. Instead, plaintiffs have decided to rest their motion for a

preliminary injunction on what they previously filed, which "asks this Court to resolve a legal

question of statutory interpretation - whether ABA therapy is 'special education for purposes of

10 U.S.C. 1079(a)(9)."[8] *See* Plaintiffs Memorandum in Support of Motion for Preliminary

_____

　　[8] In their complaint, plaintiffs allege that "TMA has adopted an arbitrary and capricious
policy that ABA therapy is 'special education' and is, therefore, excluded from coverage under

Injunction ("Pls. Mem. In Support of Motion for Prelim. Inj.") at 10.

TMA's adjudication of plaintiffs' claim for reimbursement, however, does not rely upon ABA therapy being statutorily excluded from the Basic Program pursuant to 10 U.S.C. § 1079(a)(9) as "special education." *See* Formal Review Decision. In fact, the question of that statutory exclusion plays no role in the agency's decision. Instead, after reopening the plaintiffs' initial determination denying reimbursement for ABA under the Basic Program, the TMA Deputy Director "tasked" the Chief of the TMA Medical Benefits and Reimbursement Branch ("MB&RB")[9] with determining whether ABA satisfies the regulatory "criteria for medically or psychologically necessary treatment, and appropriate medical care that has been proven safe and effective in accordance with the reliable evidence standard as required by TRICARE regulations (32 C.F.R. § 199.4(g)(15))." *See* Formal Review Decision at 8.

In adjudicating plaintiffs' claim for reimbursement for ABA therapy under the TRICARE Basic Program, and ultimately denying plaintiffs' claim for reimbursement, the Chief of TRICARE Appeals relied upon "the [MB&RB] technical assessment and final agency benefit determination." *See id*. at 10.[10] The MB&RB reported the results of its technical assessment in a

_____

[10 U.S.C. § 1079(a)(9)]," and that, as a result, "TMA denies claims for reimbursement of ABA therapy under the Basic military health care benefits program." *See* Plaintiffs' Compl. ¶20. They also allege that this purported "policy was not subjected to public notice and comment" and "was not published in the Federal Register." *See id*. ¶21. Plaintiffs, however, concede that they "cannot find that policy in any publicly available writing of the DoD." *See id*.

[9] The "MB&RB is responsible for: (1) maintaining continuous updates on current standards of medical procedure and recommending changes to TRICARE policy where indicated by the acceptable standard of care; (2) interpreting [TRICARE regulations] in light of current in light of current health care technology; (3) promulgating program policy interpretations." *See* Formal Review Decision at 8.

[10] The formal review decision also relied upon a technology assessment dated October 25, 2010, by Hayes, Inc. - a nationally recognized health technology assessment entity - which

memorandum dated October 14, 2010. *See id*. at 8. The "MB&RB assessment included an in-depth review of the reliable evidence, such as medical literature and technology assessment, along with all documentation submitted by the Beneficiary." *See id*. Based on the findings in the MB&RB's technical assessment, the Director of TMA made a final agency benefit determination dated October 19, 2010, that ABA is not covered under the TRICARE Basic Program because (1) ABA is not medically or psychologically necessary and appropriate medical care for Autism Spectrum Disorders ("ASD") and that reliable evidence reviewed indicates that ABA is an educational intervention and does not meet the TRICARE definition of medical care; and (2) even if ABA were found to be medical care, there is insufficient reliable evidence to find that ABA is proven as medically or psychologically necessary and appropriate medical care for ASD in accordance with the requirements of 32 C.F.R. § 199.4(g)(15). *See id*. at 8-9.

<u>**ARGUMENT**</u>

**I.      Standards for Issuance of a Preliminary Injunction**

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren*, 128 S. Ct. 2207, 2219 (2008) (citation omitted) (internal quotation marks omitted); *see also Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969) ("The power to issue a preliminary injunction, especially a mandatory one, should be 'sparingly exercised.'"). For a plaintiff to prevail on a motion for preliminary relief, the plaintiff must demonstrate: (1) a substantial likelihood of success on the merits; (2) that it would suffer

---

"was obtained after the TMA Director's October 19, 2010, benefit determination was issued," but was "consistent with the findings contained in the TMA's Director's October 19, 2010, benefit determination, that ABA for [Autism Spectrum Disorders] is unproven." *See id*. at 9-10.

irreparable injury if the injunction is not granted; (3) that an injunction would not substantially injure other interested (nonmoving) parties; and (4) that the public interest would be furthered by the injunction. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995); *see also, e.g., Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 842–43 (D.C. Cir. 1977); *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958).  The plaintiff must satisfy each of these four factors separately, and the court must further find that these four factors together justify the drastic intervention of a preliminary injunction.  *See CityFed Fin. Corp.*, 58 F.3d at 747; *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 304 (D.C. Cir. 2006).  Moreover, if a plaintiff has little likelihood of succeeding on the merits of its claim, the court need not address the other preliminary injunction factors.  *Apotex, Inc. v. FDA.*, 449 F.3d 1249, 1253–54 (D.C. Cir. 2006); *CityFed Fin. Corp.*, 58 F.3d at 746 (requiring the moving party to "demonstrate . . . a substantial likelihood of success on the merits"); *City of Las Vegas v. Lujan*, 891 F.2d 927, 935 (D.C. Cir. 1989) (affirming district court's denial of preliminary injunction without addressing irreparable injury because appellant had insufficient likelihood of success on the merits).

When a party is seeking a mandatory injunction that would alter the status quo rather than preserve it, "'the moving party must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage will result from the denial of the injunction.'" *See Nat'l Conf. On Ministry to Armed Forces v. James*, 278 F.Supp.2d 37, 43 (D.D.C. 2003) (quoting *Columbia Hosp. for Women Foundation, Inc. v. Bank of Tokyo-Misubishi, Ltd.*, 15 F.Supp.2d 1, 4 (D.D.C. 1997) (denying a motion for a mandatory preliminary injunction even though the balance of equities favored the plaintiffs), *aff'd*, 159 F.3d 636, 1998 WL 203110 (D.C. Cir. 1998) (quoting *Phillip v. Fairfield Univ.*, 118

F.3d 131, 133 (2nd Cir. 1997).  A district court should not issue a mandatory preliminary injunction "unless the facts and law *clearly favor* the moving party."  *See Columbia Hosp. for Women Foundation, Inc. v. Bank of Tokyo-Misubishi, Ltd.*, 15 F.Supp.2d at 4 (emphasis in original) (quotations and citations omitted); *see also* Pls. Mem. In Support of Motion for Prelim. Inj. at 5 (acknowledging that "mandatory injunctions must generally show a greater harm and likelihood of success than orders restraining action").

## II.      Plaintiffs' Have No Likelihood of Success on the Merits.

### A.      Plaintiffs Are Not Entitled to the Relief That They Seek.

Plaintiffs are seeking relief in this motion for preliminary injunction that is not available even if they were to prevail on the merits.  Specifically, they are asking this Court to alter the status quo and order "Defendants [to] provide ABA therapy benefits to TRICARE beneficiaries pending further order of this Court."  *See* Plaintiffs' [Proposed] Order Granting Plaintiffs' Motion for a Preliminary Injunction (Dkt. #48-3).  As shown below, plaintiffs cannot show a substantial likelihood that they would prevail on the merits in this case to warrant any relief.  But even if plaintiffs were able to do so, they would not be entitled to the relief that they seek.  First, the proper remedy in an APA action is remand rather than an order for the agency to take a certain action.  Second, plaintiffs' request for class relief as part of this motion for a preliminary injunction is improper.  Accordingly, plaintiffs' motion for a preliminary injunction should be denied as plaintiffs cannot satisfy the standard for a mandatory injunction by "showing 'clearly' that he or she is entitled to relief."  *Nat'l Conf. On Ministry to Armed Forces v. James*, 278 F.Supp.2d at 43.

    1.       **An Order Requiring Reimbursement for ABA therapy would be Improper.**

Plaintiffs are improperly seeking this Court to order the agency to take a particular action.  Under Circuit precedent, the proper remedy for a violation of the APA is remand:

> "When a final agency action is challenged in the district court, that court 'sits as an appellate tribunal . . . . [If it] determines that [the] agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards."

*State of Nebraska Dep't of Health and Human Services v. Dep't of Health and Human Services*, 435 F.3d 326, 331 (D.C. Cir. 2006) (alterations in original).  In *State of Nebraska Dep't of Health and Human Services*, the district court addressed whether the United States Department of Health and Human Services ("HHS") properly rejected the State of Nebraska's cost allocation plan ("CAP") for allocating Nebraska's expenditures for child welfare services.  *See id*. at 326. The district court ruled in favor of Nebraska, but then it found that "it could itself 'fully resolve[] the issue of the approvability of Nebraska's disputed CAP provision.'"  *See id*. at 329.  The D.C. Circuit overruled the district court and found that the "district court erred when it ordered approval of Nebraska's CAP."  *See id*. at 331.  Rather, the D.C. Circuit held that "it is for HHS to interpret its own policies in the first instance, subject only to quite deferential review by the courts."  *Id*. (citations omitted).  Accordingly, the "district court's decision to approve the CAP was inconsistent with this allocation of authority between the agency and the court."  *See id*.

It therefore would be improper for this Court to order reimbursement for ABA therapy. *See Utility Workers Union of Am. v. Fed. Elec. Com'n*, 691 F.Supp.2d 101, 107 (D.D.C. 2010) (holding that remand was proper rather than order directing particular agency action) (citing *State of Nebraska Dep't of Health and Human Services v. Dep't of Health and Human Services*, 435 F.3d 326).  Rather, the proper remedy would be remand if this Court found that the agency's

decision to deny reimbursement to be in violation of the APA.  As the Supreme Court has held:

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.

*See Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985).  *See also Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 657-58 (2007) ("[a]s an initial matter, we note that if the [agency's] action was arbitrary and capricious, as the Ninth Circuit held, the proper course would have been to remand to the agency for clarification of its reasons") (citing *Gonzales v. Thomas*, 547 U.S. 183 (2006) (*per curiam*)).

## 2.    Class Relief Would Be Improper.

Plaintiffs are also not entitled to class relief at this stage of the litigation.  *See* Pls. Mem. In Support of Motion for Prelim. Inj. at 4 ("Pending a final disposition of this case, Defendants should immediately begin paying claims for ABA therapy under the TRICARE Basic Program.").  As an initial matter, this Court has already stayed consideration of class certification.[11]  *See* Minute Order, June 22, 2010.

Further, it is a general rule that district courts may not extend injunctive relief to nonparties where no class has been certified, except in the narrow circumstances where that relief is incidently necessary to give the named parties a complete remedy.  *See Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) (holding that, in the absence of class certification, preliminary injunctive relief may cover only the named plaintiffs).  Plaintiffs' reliance on

---

[11] Plaintiffs have moved to schedule further briefing on the matter.  *See* Dkt. #41.  They have also sought to have this Court consider class consideration as part of the preliminary injunction hearing.  *See* Dkt. #54.

*Williams v. San Francisco Unified School Dist.*, 340 F.Supp. 438 (N.D. Cal. 1972) and the

Newberg treatise for the proposition that "it is appropriate for the Court to assume class status

for this motion and to issue a class-wide injunction" is misplaced.  *See* Pls.' Mem. In Support of

Motion for Prelim. Inj. at 6 (citing Newberg 4th ed, 2002, sec 7:2, p. 4).  First, the *Williams*

decision pre-dated the Ninth Circuit's opinion in *Zepeda*.   Second, Newberg does not stand for

the proposition that plaintiffs are entitled to class relief absent class certification.  Newberg

merely states that some courts have considered class status in balancing equities when deciding a

preliminary injunction.   *See* Newberg 4th ed, 2002, sec 7:2, p. 4 ("Not infrequently, the court

will assume class status *for the purpose of conducting balancing tests* in preliminary or

permanent injunction determinations, though *it has not issued a formal class ruling*.") (emphasis

added).        Here, it would be particularly inappropriate to order defendants to make all

payments for ABA therapy under the Basic Program when, even if ABA is covered under the

Basic Program, there would still need to be individualized determinations as to whether the

provider of the service or treatment is an authorized provider and whether the service or

treatment is medically necessary for the individual.  *See* TMA Reopening Letter (Exhibit 3).

> **B.**    **Plaintiffs Have Failed to Identify Anything Unlawful in the Agency's
> Adjudication.**

Plaintiffs cannot show any likelihood of success on the merits, let alone show that the

facts and law clearly require this Court to issue a mandatory injunction.  *See Nat'l Conf. On*

*Ministry to Armed Forces v. James*, 278 F.Supp.2d at 43 ("A district court should not issue a

mandatory preliminary injunction 'unless the facts and law clearly favor the moving party.'")

(quoting *Columbia Hosp. for Women Foundation, Inc. v. Bank of Tokyo-Misubishi, Ltd.*, 15

F.Supp.2d at 4).  In fact, plaintiffs have made no argument for why the agency's adjudication of

October 29, 2010, is unlawful.  Plaintiffs instead rest on the arguments that they made prior to there being a final agency action for this Court to review.  Plaintiffs' arguments have now been rendered meaningless by the agency's decision.

When a plaintiff seeks a preliminary injunction in an action brought under the APA, it is particularly important that the movant shows a "likelihood of success in proving" that the agency's actions were "arbitrary, capricious, or contrary to the law."  *See Nat'l Conf. On Ministry v. James*, 278 F.Supp.2d at 44-45. "[A]bsent a substantial indication of the likely success on the merits, there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review."  *See id.* (quoting *Adair v. England*, 217 F.Supp.2d 1, 4 (D.D.C. 2002) (internal quotations omitted).  "The APA authorizes review only with respect to a 'final agency action.'"  *See King v. Leavitt*, 475 F.Supp.2d 67, 71 (2007) (citing 5 U.S.C. § 704 and *Reliable Automatic Sprinkler Co. v. CPSC*, 324 F.3d 726, 731 (D.C. Cir. 2003) ("The District Court's authority to review the conduct of an administrative agency is limited to cases challenging 'final agency action'")).  If a plaintiff cannot establish that they are challenging a final agency action, they cannot demonstrate a likelihood of success on the merits for purposes of a preliminary injunction.  *See King v. Leavitt*, 475 F.Supp.2d at 72 (granting motion to dismiss for lack of final agency action and, correspondingly, denying motion for a preliminary injunction).

When plaintiffs brought their motion for a preliminary injunction on September 2, 2010, there had been no final agency action for this Court to review.  Rather, in a letter dated June 22, 2010, TMA reopened the initial determination that is at issue in this action.  *See* TMA Reopening Letter (Exhibit 3) ("The matter is reopened in accordance with 32 C.F.R. 199.10(a)(1)(ii)").  An initial determination for a claim for reimbursement under TRICARE is

- 20 -

final unless, among other reasons, "the initial determination is reopened by [TMA]." *See* 32 C.F.R. § 199.10(a)(1)(ii)(A). The agency has now issued a decision in the matter. *See* Formal Review Decision. That decision, dated October 29, 2010, is what will be subject to judicial review.[12] Even if plaintiffs could make some argument that the previous action was subject to review and unlawful, the proper remedy would have been to remand to the agency for further consideration. *See Fla. Power & Light Co. v. Lorion,* 470 U.S. at 744. The agency has now given the matter further consideration and issued a decision that administratively adjudicated plaintiffs' claim for reimbursement. *See* Formal Review Decision.

In their motion for a preliminary injunction, plaintiffs fail to satisfy their burden of proof in demonstrating why the decision of October 29, 2010, is arbitrary and capricious or contrary to law. *See City of Olmsted Falls v. Fed. Aviation Admin.*, 292 F.3d 261, 271 (D.C. Cir. 2002) ("[T]he party challenging an agency's action as arbitrary and capricious bears the burden of proof."). Plaintiffs' entire motion and memorandum in support is void of any analysis as to why they contend that the October 29, 2010, decision is unlawful. Instead, plaintiffs' entire argument on the merits is focused on the question as to whether ABA therapy is or is not statutorily excluded from coverage as "special education." *See* Pls.' Mem. In Support of Motion for Prelim. Inj. at 21 ("This dispute centers on DoD's unlawful policy that interprets the 'special education' exclusion in 10 U.S.C. § 1079(a)(9) to include ABA therapy"). The question as to whether ABA meets the statutory exclusion of "special education,"[13] however, played no role in the agency's

_____

[12] The formal review decision is final after 60 days from the date of the decision unless, *inter alia*, plaintiffs seek an administrative hearing. 32 C.F.R. § 199.10(c)(5)(iii). Plaintiffs may also waive that administrative hearing before the expiration of the 60 days.

[13] In making this statutory argument, plaintiffs ask this Court to accept it as a given that ABA is a proven medical modality for the treatment of autism. *See* Pls.' Mem. In Support of

decision; the agency has no policy that ABA falls within that statutory exclusion.  *See* Formal
Review Decision.

"Where Congress has authorized an agency to promulgate criteria for dispersing benefits
and to interpret those criteria, a reviewing court must guard against substituting its own
judgment for that of the agency."  *See Smith v. Office of Civilian Health & Med. Program*, 97
F.3d 950, 955 (7th Cir. 1996); *id*. at 957 (holding a decision by CHAMPUS, now known as
TRICARE, to treat a certain therapy "as still experimental" as not "arbitrary, for it entails the
very judgment call Congress has assigned to the administrative agencies.").  Here, plaintiffs are
asking this Court to substitute its judgment for that of the agency, without any consideration of
the agency's decision, based on an erroneous assumption of the basis of that decision.  Plaintiffs
cannot show that the facts and law are clearly in their favor and, accordingly, their motion for a
preliminary injunction should be denied.

     **C.**    **The Agency's Adjudication is Based on a Detailed Consideration of
the Medical Literature and its Regulations.**

Even if plaintiffs had addressed the agency's decision, plaintiffs would still not be able to
show that the law and facts clearly favor them.  In reviewing whether agency action is
"arbitrary" or "capricious," "[t]he court must consider whether the decision was based on a
consideration of the relevant factors and whether there has been a clear error of judgment.'"  *See*

---

Motion for Prelim. Inj. at 24 (arguing that because "ABA therapy unquestionably *is* medically
necessary, ABA therapy cannot be [statutorily excluded as] 'special education.'") (emphasis in
original).  But plaintiffs do not even address the regulatory "reliable evidence" standard that
must be met to show a treatment is a proven medical modality.  *See* 32 C.F.R. § 199.2(b)
(definition of "reliable evidence").  In fact, plaintiffs rely on materials that do not meet the
regulatory definition.  *Compare, e.g.,* Pls. Mem. In Support of Prelim. Inj. at 27 (relying on
opinion of purported expert) *with* 32 C.F.R. § 199.2(b) ("Specifically not included in the
meaning of reliable evidence are reports, articles, or statements by providers or groups of
providers containing only abstracts, anecdotal evidence or personal professional opinions.").

*Nat'l Conf. On Ministry v. James*, 278 F.Supp.2d at 43-44 (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971). Further, "it is well established that '[a]n agency interpretation of its own regulations is entitled to deference unless it is plainly erroneous or inconsistent with the regulation.'" *See Nat'l Conf. On Ministry v. James*, 278 F.Supp.2d at 43-44 (quoting *Adams Telecom, Inc. v. FCC*, 38 F.3d 576, 579 (D.C. Cir. 1994)). The agency's decision here is based on a comprehensive review of medical literature and the agency's interpretation of its own regulations.

The adjudication of October 29, 2010, of plaintiffs' claim for reimbursement fully articulated the basis of the agency's decision to deny reimbursement for ABA therapy for plaintiffs' dependent under the TRICARE Basic Program. In denying plaintiffs' claim for reimbursement for ABA therapy under the TRICARE Basic Program, the Chief of TRICARE Appeals relied upon "the [Medical Benefits and Reimbursement Branch] technical assessment and final agency benefit determination." *See* Formal Review Decision at 10. The agency had made a benefit determination that ABA is not covered under the Basic Program based on a review of medical literature viewed in light of its regulations. *See id.* at 8-9.

TRICARE reached its conclusions that ABA is not covered under the Basic Program by relying on the regulatory definitions for what is considered "medical" or "appropriate medical care" and the regulatory requirement of 32 C.F.R. § 199.4(g)(15) that coverage under the Basic Program be supported by "reliable evidence," defined in the regulations at 32 C.F.R. § 199.2. *See* Formal Review Decision at 9. As explained in the October 29, 2010, adjudication, "[s]ervices that are not "medically or psychologically necessary, or appropriate, for the diagnosis or treatment of a covered illness (including mental disorders) or injury, and for the diagnosis and treatment of pregnancy or well-baby care are specifically excluded from TRICARE coverage."

*See* Formal Review Decision at 6 (citing 10 U.S.C. 1079(a)(13); 32 C.F.R. § 199.4(g)(1)).  "In

determining whether a procedure is proven or unproven, TRICARE looks for a consensus of

national medical policy organizations that adequate evidence exists to establish the procedure as

safe and effective medical care."  *See* Formal Review Decision at 8 (citing 32 C.F.R. §§ 199.2;

199.4(g)(15)).  Further, TRICARE regulations require that the "general acceptance and efficacy

of the treatment or procedure must be supported by medical documentation; the procedure must

be recognized in authoritative literature contemporaneous with the date of care; and the

procedure must be endorse by national professional medical organizations and national health

care organizations that review medical procedures and treatments."  *See* Formal Review

Decision at 8 (citing 32 C.F.R. §§ 199.2(b); 199.4(g)(15)).

      Relying on these regulatory requirements, the TMA Medical Benefits and

Reimbursement Branch made a technical assessment of ABA based on "an in-depth review of

the reliable evidence, such as medical literature and technology assessments, *along with all*

*documentation submitted by the Beneficiary*."  *See id.* (emphasis added).  It was based on this

assessment that the Director of TMA reached the conclusion that ABA is not covered under the

Basic Program because it is (1) an "educational intervention" rather than "medical" care as

contemplated by the agency's regulations and (2) not "proven" care even if considered to be

medical care.  *See id.* at 8-9.  The documentation that the MB&RB relied upon will form the

foundation of the agency's administrative record.[14]  *See Camp v. Pitts*, 411 U.S. 138, 142 (1973)

---

      [14] The agency is in the process of compiling the administrative record.  Once the record is
certified, and any potential privacy issues in the record are resolved, the parties can go directly to
the merits and brief cross-motions for summary judgment.  Before doing so, however, plaintiffs
would need to amend their complaint to identify what it is in the agency's October 29, 2010,
adjudication that they are challenging.

("the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").

Further, because the agency's benefit determination was issued October 19, 2010, the Chief of TRICARE Appeals also relied upon a technical assessment dated October 25, 2010, by Hayes, Inc., in considering plaintiffs' claim for reimbursement. *See* Formal Review Decision at 9. The Hayes conclusions were "consistent with the findings contained in the TMA's Director's October 19, 2010, benefit determination, that ABA for [Autism Spectrum Disorders ("ASD")] is unproven." *See id.* at 8-9.

Plaintiffs therefore have failed to meet their burden showing that TRICARE had a clear error in judgment in making its determinations or that its interpretation of its regulations is plainly erroneous.

## III.    Plaintiffs Are Not Likely to Suffer Irreparable Harm Absent an Injunction.

The Supreme Court recently reaffirmed that a plaintiff seeking a preliminary injunction must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *See Winter v. Natural Resources Defense Council*, 129 S.Ct. 365, 375 (2008) (emphasis in original). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *See id.* at 375-376. Further, when seeking a mandatory injunction, the moving party must show "that 'extreme or very serious damage will result from the denial of the injunction.'" *See Nat'l Conf. On Ministry to Armed Forces v. James*, 278 F.Supp.2d at 43 (quoting *Columbia Hosp. for Women Foundation, Inc. v. Bank of Tokyo-Misubishi, Ltd.*, 15 F.Supp.2d at 4). Plaintiffs cannot meet this standard.

TRICARE has made a benefit determination that ABA therapy is not "proven" care even

if one considers it to be medical care.  *See* Formal Review Decision at 8-9.  TRICARE reached

this conclusion after "an in-depth review of the reliable evidence, such as medical literature and

technology assessments, along with all documentation submitted by the Beneficiary."  *See id*.  In

the adjudication of plaintiffs' claim for reimbursement, the Chief of TRICARE Appeals relied on

the October 25, 2010, technical assessment by Hayes, Inc. in addition to the agency benefit

determination.  *See id*. at 9-10.  The Hayes technical assessment confirmed the finding in the

benefit determination that ABA for Autism Spectrum Disorders is unproven.  *See id*.

Specifically, Hayes rated ABA for ASD a "C, which means:

> Potential but unproven benefit.  Some positive published evidence regarding
> safety and/or efficacy support use of the technology for the cited application(s),
> but a beneficial impact has not been proven because data are sparse and the level
> of evidence is low, or data are inconsistent or conflicting.

*See id*. at 9; *see also* Hayes, Inc., Intensive Behavioral Intervention Therapy for Autism, October

25, 2010 (attached as Exhibit 5).  "The October 25, 2010, Hayes report concluded:

> There is some evidence that suggests that treatment of young autistic children
> with intensive behavioral intervention (IBI) therapy, also called Lovaas or applied
> behavior analysis (ABA) therapy, may promote gains in cognitive function,
> language skills, and adaptive behavior.  However, almost all studies suggested
> improvements in children treated with IBI compared with other treatments, most
> studies had major limitations in design and methodology, including lack of
> randomization procedures, small sample sizes, and a lack of blinded assessments
> to determine effects.  Although the initial work by Lovaas suggested some high
> functioning autistic children who under IBI therapy can achieve normal school
> performance and behavior, these findings have not been replicated by other
> investigator.  Based on the available evidence, a Hayes Rating of C is assigned to
> the use of IBI therapy for the treatment of autism in children.

*See* Formal Review Decision at 9.

In any event, plaintiffs cannot assume that they would be entitled to reimbursement even

if ABA were to be covered under the Basic Program.[15]  *See* TMA Reopening Letter (Exhibit 3)

(individual assessments would be needed regarding "whether the provider is an authorized

provider and whether the treatment is medically necessary for" the beneficiary's particular

condition); Declaration of Michael O'Bar (attached as Exhibit 4) ¶ 6d ("because the Basic

Program is limited to the provision of services by authorized providers as defined by 32 C.F.R. §

199.6, there is a potential of a number of individuals expending resources on ABA therapy

administered by non-authorized providers and then not being eligible for reimbursement").

Accordingly, plaintiffs cannot show that they are likely to suffer irreparable injury absent an

injunction, let alone that extreme or very serious damage will result from the denial of the

injunction.

**IV.    Issuance of a preliminary injunction would harm the defendants and is contrary to the public interest.**

        Plaintiffs do not even attempt to establish that the government or others will not be

harmed by the issuance of an injunction; indeed, plaintiffs ignore several substantial harms to

TRICARE, its beneficiaries, and the public that counsel against issuance of an injunction.

        Issuance of preliminary relief in this case would work a number of distinct harms.  The

injunction sought by plaintiffs could cause a significant impact on TRICARE beneficiaries who

are currently eligible to receive reimbursement for ABA under ECHO.  "[T]here is a limited

number of [Board Certified Behavior Analyst] professional providers authorized to provide ABA

services" and "[e]xtending the coverage of those services to non-active duty dependents through

the Basic Program may limit access to ABA services for active duty service dependents who are

---

[15] Plaintiffs' dependent currently receives ABA therapy, although plaintiffs contend that their dependent does not receive it at the optimal level.  *See* Berge Affidavit., Ex. 2 to Pls. Motion for Prelim. Inj., ¶¶ 15, 16.

now eligible to receive ABA services under ECHO." *See* O'Bar Decl. ¶ 6d (Exhibit 4).

Further, if the Court were to require TMA to cover ABA therapy while this action remains pending in district court, it would disrupt the orderly operation of the payment of benefits within TRICARE and sow confusion among the private contractors, health care providers, and beneficiaries who participate in the TRICARE system. *See* O'Bar Decl. ¶ 6b ("changing the reimbursement structure for ABA" would require TRICARE contractors "to revise processes for authorization of ABA benefits and reprogram claims processing systems to allow payment of the additional claims."); *see also id.* ¶ 6c ("TMA would be required to direct its [contractors] to make changes to the automated claims processing systems"). A court should not lightly interfere with the administration of a vast and complicated program like TRICARE, and it should be even more hesitant to do so through preliminary relief.

In addition, if the Court's order required TRICARE to cover all ABA therapy, then DoD, and ultimately the taxpayer, would incur costs for reimbursing ABA therapy without any mechanism in place to reimburse the government if the Court's final ruling upholds the agency's determination that ABA is not payable under the Basic Program. *See id.* ¶ 6a ("it is estimated that it would cost TRICARE an additional $56,500,000 per year to cover ABA under the Basic Program" and "TMA has not budgeted for this increase."). Plaintiffs have objected to the posting of a bond, suggesting that TRICARE may never recover the costs incurred.[16] *See* Pls. Mem. In Support of a Prelim. Inj. at 43-45 (contending that the posting of a bond would render the preliminary injunction meaningless).

---

[16] In contrast, if ABA is ultimately determined to be covered under the Basic Program, plaintiffs, as well as other beneficiaries, could seek reimbursement for monies they spent on ABA.

Finally, it is in the public interest for TMA to be able to exercise its expertise in making a benefit determination, such as whether ABA is covered under the Basic Program.  *See Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1326 (D.C. Cir. 1998) ("The final preliminary injunction factor, the public interest, . . . is inextricably linked with the merits of the case.").  In particular, "it is in the public interest to deny injunctive relief when the relief is not likely deserved under the law."  *See Majhor v. Kempthorne*, 518 F.Supp.2d 221, 256 (D.D.C. 2007) (citations and quotations omitted).  Even if plaintiffs were ultimately to prevail, the proper remedy would not be to order TMA to reimburse for all ABA therapy but would be to remand to the agency for further consideration and investigation.  *See Fla. Power & Light Co. v. Lorion,* 470 U.S. at 744 (a "reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed" but should, when necessary, "remand to the agency for additional investigation or explanation").  And, ultimately, when reaching the merits of this case, this Court will have a complete administrative record to review to determine whether the agency's actions were arbitrary and capricious or otherwise contrary to law.  To decide this matter without such a record, will impinge on the orderly process TMA uses to conduct an assessment of medical procedures and technologies in which there is a known and consistent standard for the scientific/medical evidence to be considered and weighed.

## CONCLUSION

For the reasons stated herein, the government respectfully requests that this Court deny plaintiffs' motion for a preliminary injunction.


Dated: November 12, 2010                    Respectfully submitted,

                                            TONY WEST

Assistant Attorney General

RONALD C. MACHEN JR.
United States Attorney for the District of Columbia

VINCENT M. GARVEY
Deputy Director, Federal Programs Branch

_/s/_____
ADAM D. KIRSCHNER
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
Mailing Address
P.O. Box 883
Washington, D.C., 20044
Delivery Address
20 Massachusetts Ave., NW., Room 7126
Washington, DC 20001
Telephone: (202) 353-9265
Fax: (202) 616-8470
Adam.Kirschner@usdoj.gov

ATTORNEYS FOR DEFENDANTS