**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
KENNETH BERGE, <u>et al.</u>,             )
                                        )
            Plaintiffs,                 )
                                        )
      v.                                )         Civil Action No. 10-0373 (RBW)
                                        )
UNITED STATES OF AMERICA, <u>et al.</u>,  )
                                        )
                                        )
            Defendants.                 )
_____ )

**MEMORANDUM OPINION**

The named plaintiffs, Kenneth and Dawn Berge, bring this class action on behalf of

themselves, their minor child Z.B., and all others similarly situated, against the defendants, the

United States of America, the Department of Defense ("the Agency"), TRICARE Management

Activity, and Chuck Hagel, United States Secretary of Defense,[1] alleging that the defendants'

denial of coverage for Applied Behavioral Analysis ("ABA") therapy under the TRICARE Basic

Program is "arbitrary, capricious, and contrary to law and regulation" in violation of the

Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (2006). <u>See</u> Plaintiffs' First Am[]ended

Class Action Complaint ("Am. Compl.") ¶¶ 166–72.  On July 26, 2012, the Court granted the

plaintiffs' motion for summary judgment and enjoined the defendants from further denying

coverage of ABA therapy under the TRICARE Basic Program.  <u>Berge v. United States</u>, 879 F.

Supp. 2d 98, 135–36 (D.D.C. 2012).  The Court also granted final certification to the class

preliminarily certified by the Court during an earlier hearing.  <u>Id.</u> at 136 n.22.  This case is now

before the Court on the plaintiffs' Motion to Clarify Class Certification and Relief ("Pls.' Mot.")

_____
[1] The plaintiffs filed suit against Robert M. Gates, then United States Secretary of Defense, in his official capacity.
Pursuant to Federal Rule of Civil Procedure 25(d), the Court previously substituted Leon E. Panetta, who succeeded
Gates as Secretary of Defense.  The Court now substitutes Chuck Hagel, Panetta's successor, pursuant to Rule 25(d).

and the defendants' Motion to Amend Judgment ("Defs.' Mot.").[2]  For the reasons set forth

below, the Court will grant the defendants' motion and deny the plaintiffs' motion as moot.

## I. BACKGROUND

This case arises from the Agency's determination that ABA therapy, a form of treatment

for autism spectrum disorder ("autism"), is not a covered benefit under the TRICARE Basic

Program, see Am. Compl. ¶¶ 5, 10, a program "similar to private insurance," which provides

financial assistance to active duty and retired members of the armed forces for "certain

prescribed medical care," 32 C.F.R. § 199.4(a) (2012); 10 U.S.C. § 1086 (2006).[3]  The Basic

Program was created pursuant to 10 U.S.C. § 1079 (2006), which instructs the Secretary of

Defense, in consultation with the Secretaries of each military branch, to "contract . . . for medical

care for" active duty and retired members of the armed services "under such insurance, medical

service, or health plans as he considers appropriate."  § 1079(a).  Section 1079 also contains

several exclusions from coverage under the Basic Program, including "[a]ny service or supply

which is not medically necessary or psychologically necessary to prevent, diagnose, or treat a

mental or physical illness, injury, or bodily malfunction."  § 1079(a)(13).  Pursuant to § 1079,

the Agency promulgated regulations defining "medically necessary" services as those that are

"[t]he frequency, extent, and types of medical services or supplies which represent appropriate

medical care and that are generally accepted by qualified professionals to be reasonable and

---

[2] In addition to the submissions already identified, the Court considered the following filings in rendering its decision: (1) the Statement of Points and Authorities in Support of Plaintiffs' Motion to Clarify Class Certification and Relief; (2) the Defendants' Opposition to Plaintiffs' Motion to Clarify Class Certification and Relief; (3) the Reply in Support of Plaintiffs' Motion to Clarify Class Certification and Relief; (4) the Plaintiffs' Memorandum in Opposition to Defendants' Motion to Amend Judgment ("Pls.' Opp'n"); (5) the Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion to Amend Judgment ("Defs.' Reply); (6) the Defendants' Notice of Supplemental Authority; (7) the Plaintiffs' Response to Defendants' Notice of Supplemental Authority; and (8) the Plaintiffs' Citation of Supplemental Authority.

[3] The Court previously set forth in full the facts giving rise to this litigation and the complete statutory and regulatory framework in its earlier opinion in this case, see Berge, 879 F. Supp. 2d at 100–105, and therefore will

(continued . . . )

adequate for the diagnosis and treatment of illness, injury, pregnancy, and mental disorders." 32

C.F.R. § 199.2(b).  "Appropriate medical care" is defined, in pertinent part, as "[s]ervices

performed in connection with the diagnosis or treatment of . . . [a] mental disorder, . . . which are

in keeping with the generally accepted norms for medical practice in the United States." Id.  In

order to qualify as "medical," a service must "pertain[] to the diagnosis and treatment of illness,

injury, pregnancy, and mental disorders by trained and licensed or certified health professionals."

Id.

        Coverage of "[u]nproven drugs, devices, and medical treatments or procedures . . . the

safety and efficacy of which ha[s] not been established" is also excluded from the Basic

Program.  Id. § 199.4(g)(15).  A "medical treatment or procedure" is considered "unproven"

"[u]nless reliable evidence shows that any medical treatment or procedure has been the subject of

well-controlled studies of clinically meaningful endpoints, which have determined its . . . safety,

and its efficacy as compared with standard means of treatment or diagnosis" or "[i]f reliable

evidence shows that the consensus among experts regarding the medical treatment or procedure

is that further studies or clinical trials are necessary to determine its . . . safety, or its

effectiveness as compared with the standard means of treatment or diagnosis."  Id. §

199.4(g)(15)(i)(C)–(D).

        While not covered under TRICARE's Basic Program, ABA therapy has been covered

under the Extended Care Health Option ("ECHO") Program, Am. Compl. ¶ 22, a "supplemental

program to the TRICARE Basic Program," 32 C.F.R. § 199.5(a), that provides benefits "to assist

in the reduction of the disabling effects of a qualifying condition of an eligible dependent" of a

member of the armed forces on active duty for more than thirty days, 10 U.S.C. § 1079(d)(1),

---

( . . . continued)
not repeat that background information here.

(3).  In addition to a number of enumerated services such as home health care, rehabilitative services, and respite care, Congress authorized the Agency to cover "[s]uch other services and supplies as determined appropriate" irrespective of whether they are "medically or psychologically necessary."  Id. § 1079(e)(1)–(7).  However, coverage of "[d]rugs, devices, medical treatments, diagnostic, and therapeutic procedures for which the safety and efficacy have not been established" is excluded, and the listed services are subject to the same "unproven" standard governing the provision of medical care under the Basic Program.  32 C.F.R. § 199.5(d)(12).  The Agency has previously covered ABA therapy under the ECHO Program as "special education" pursuant to § 1079(e)(3), Administrative Record ("A.R.") at 36, which permits coverage for "[t]raining, rehabilitation, special education, and assistive technology devices," 10 U.S.C. § 1079(e)(3).

The Agency advanced two reasons for its decision that ABA therapy could not be covered under the Basic Program.  See A.R. at 9–10.  First, the Agency found that coverage was prohibited because "ABA is not medically or psychologically necessary and appropriate medical care for [autism] and that the reliable evidence reviewed indicates that ABA is an educational intervention and does not meet the TRICARE definition of medical care."  A.R. at 10.  The Agency then determined that, even if ABA could be considered medical care, coverage was nonetheless prohibited because "there is insufficient reliable evidence to find that ABA is proven as medically or psychologically necessary and appropriate medical care for [autism] in accordance with the requirements of 32 C.F.R. § 199.4(g)(15)."  Id.  Having determined that ABA therapy could not be covered under the Basic Program, the Agency found, however, that its assessment supported coverage of ABA therapy "as a non-medical service . . . to minimize the effects of [autism]" under the ECHO Program.  A.R. at 36.

On July 26, 2012, this Court granted summary judgment to the plaintiffs, finding that the Agency's denial of coverage for ABA therapy under the Basic Program was arbitrary and capricious.  Berge, 879 F. Supp. 2d at 136.  The Court found fault with the Agency's first rationale for concluding that ABA therapy could not be covered under the Basic Program, which was based on the Agency's consideration of "reliable evidence" in its determination that ABA therapy is not a "medically or psychologically necessary" treatment or "appropriate medical care" for autism, because the Agency's regulations do not require that "reliable evidence" support its determination of whether a service meets these definitions, and therefore, "the Agency's decision was not based on consideration of the 'relevant factors.'"  Id. at 118 (citation omitted).  Moreover, the Court held that even if the Agency could show that it had considered the relevant factors in reaching its decision, it failed to satisfactorily articulate how its conclusion that the educational components of ABA therapy foreclosed consideration of ABA as a medical treatment was rationally related to the evidence before it in light of the statute's purpose, which is to "create and maintain high morale in the uniformed services by providing an improved and uniform program of medical and dental care for members and certain former members of those services, and for their dependents."  Id. at 118–19, 124 (citation omitted).

With respect to the Agency's second rationale, the Court found that the Agency's determination that ABA therapy is "unproven" under § 199.4(g)(15) was arbitrary and capricious because it "failed to provide information on why certain materials were excluded as not reliable," particularly the materials submitted by the plaintiffs, and thus "the Court [was] unable to reasonably . . . discern the [A]gency's path" in reaching its decision.  Id. at 127–28.  The Court further held that there was "no apparent justification" for the Agency's decision to deny coverage under the Basic Program under the rationale that it was unproven while simultaneously providing coverage for it under the ECHO Program, because both programs are "governed by the same

limitation as the Basic Program that precludes coverage for unproven '[d]rugs, devices, medical treatments, diagnostic and therapeutic procedures,'" id. at 130–31 (quoting § 199.5(d)(12)), and therefore, the Agency had implicitly determined that ABA therapy is a proven treatment, id. at 130–32.  Finally, the Court held that the Agency failed to give due consideration to the purpose for which the statute was enacted, id. at 132–34, and to meaningfully consider its own regulations mandating comparison of a treatment under consideration with "the standard means of treatment or diagnosis," in finding ABA therapy to be unproven, id. at 134–35 (quoting 32 C.F.R. § 199.4(g)(i)(D)).  Finding that the inconsistency of covering ABA therapy under the ECHO Program while denying coverage under the Basic Program could not be cured by the Agency because it was tantamount to a policy that "ABA treatment is proven for the purpose of the ECHO [P]rogram, but not for the Basic Program," the Court held that remand to the Agency for further consideration in light of the Court's opinion was an "unnecessary formality," and issued an injunction requiring the Agency to provide coverage for ABA therapy under the Basic Program to any beneficiary who would otherwise qualify for it.  Id. at 135–36.  The Court also granted class certification under Federal Rule of Civil Procedure 23(b)(2) to the class proposed by the plaintiffs during a prior hearing.  Id. at 100 n.1, 136 n.22.

The plaintiffs subsequently requested that the Court clarify the composition of the class certified by the Court and for other relief related to the class.  Pls.' Mot. at 1.  The defendants have requested that the Court reconsider its decision not to remand the matter to the Agency for further action consistent with the Court's opinion.  Defs.' Mot. at 1–2.

While these motions were pending before the Court, Congress enacted the National Defense Authorization Act for Fiscal Year 2013, which contained a provision directing the Secretary of Defense to "conduct a pilot program to provide for the treatment of autism spectrum disorders, including applied behavior analysis," within ninety days of its enactment on January 2,

2013, continuing for no longer than one year.  Pub. L. No. 112-239, § 705, 126 Stat. 1632, 1800

(2013) (to be codified at 10 U.S.C. § 1092 note).  The statute requires the Secretary to submit a

report to the House and Senate Armed Services Committees including "[a]n assessment of the

feasibility and advisability of establishing a beneficiary cost share for the treatment of autism

spectrum disorders," and "[a] comparison" of providing treatment under the ECHO and Basic

Programs after the pilot program commences.  Id.

## II. MOTION FOR RECONSIDERATION

        The standard for modification of a judgment pursuant to Federal Rule of Civil Procedure

59(e) is exacting.  Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  "A Rule 59(e)

motion is discretionary and need not be granted unless the district court finds that there is an

intervening change of controlling law, the availability of new evidence, or the need to correct a

clear error or prevent manifest injustice."  Id. (citation and quotation marks omitted).  A litigant

may not use Rule 59(e) "to relitigate old matters, or to raise arguments . . . that could have been

raised prior to the entry of judgment."  Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5

(2008) (quoting 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §

2810.1 (2d ed. 1995)).  However, a court "may exercise its discretion to correct a clear error of

law," Turkmani v. Republic of Bolivia, 273 F. Supp. 2d 45, 53 (D.D.C. 2002), when the movant

identifies errors "which compel the court to change its prior position," Nat'l Ctr. for Mfg. Scis. v.

Dep't of Defense, 199 F.3d 507, 511 (D.C. Cir. 2000).  Relief under Rule 59(e) is warranted

"when there were facts or legal issues properly presented but overlooked by the court in its

decision," In re Motion of Burlodge Ltd. for Reconsideration of the Court's April 28, 2009

Memorandum Opinion, No. 08-525, 2009 WL 2868756, at *2 (D.D.C. Sept. 3, 2009), or when

the court's decision rests on an incorrect premise, see Defenders of Wildlife v. Salazar, 842 F.

Supp. 2d 181, 184–85 (D.D.C. 2012) (granting motion under Rule 59(e) when determination that

agency's action was arbitrary and capricious was based on misunderstanding of the agency's rationale for decision).

### A.      Remand Denial

The defendants request the Court's reconsideration of only one issue: the Court's decision to issue an injunction requiring the Agency to provide coverage for ABA therapy to Basic Program beneficiaries rather than remanding the matter to the Agency for its reconsideration in light of the Court's opinion.  Defs.' Mot. at 1–2.  The Court acknowledged in in its opinion that "settled principles of administrative law" require that once a district court has determined that an agency made an error, the district court must generally remand the matter to the agency for further action.  Berge, 879 F. Supp. 2d at 135 (quoting Palisades Gen. Hosp. Inc. v. Leavitt, 426 F.3d 400, 403 (D.C. Cir. 2005)).  The Court found, however, that "[a]lthough most of the Court's concerns could potentially be cured by affording the Agency further opportunity to explain its actions, the Agency's policy that ABA treatment is proven for the purpose of the ECHO program, but not for the Basic Program, cannot," and that "because of this finding, 'remand to the [A]gency for further review is an unnecessary formality.'"  Id. (emphasis added) (quoting FEC v. Legi-Tech, Inc., 75 F.3d 704, 709 (D.C. Cir. 1996)).  After renewed reflection, the Court agrees that it committed "clear error" in its ruling that remand to the Agency was an "unnecessary formality," and that the Court should have remanded the case to the Agency for further action.

A district court's role in reviewing a final agency action is "[u]nlike . . . managing a garden variety civil suit," because the court "does not perform its normal role, but instead sits as an appellate tribunal."  Palisades Gen. Hosp. Inc., 426 F.3d at 403 (citation and quotation marks omitted).  Consequently, "under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end:

the case must be remanded to the agency for further action consistent with correct legal standards." Id. (citation and quotation marks omitted); Cnty. of Los Angeles v. Shalala, 192 F.3d 1005, 1011 (D.C. Cir. 1999); see also N. Air Cargo v. U.S. Postal Serv., 674 F.3d 852, 861 (D.C. Cir. 2012) ("When a district court reverses agency action and determines that the agency acted unlawfully, ordinarily the appropriate course is simply to identify a legal error and then remand to the agency, because the role of the district court in such situations is to act as an appellate tribunal.").  Indeed, the district court must remand the matter to the agency "[i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it."  Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985). The district court "ha[s] no jurisdiction to order specific relief."  Palisades Gen. Hosp. Inc., 426 F.3d at 403 (holding that the district court did not have jurisdiction to order the plaintiff hospital's reclassification after finding that the agency erred in rejecting data submitted in support of the reclassification); see also Cnty. of Los Angeles, 192 F.3d at 1011 (holding that it was error for the district court to fashion a remedy for the agency to follow after declaring agency action unlawful).

This Circuit recognizes a narrow exception to this general rule in cases where "[t]here is not the slightest uncertainty as to the outcome of a[n] [agency] proceeding."  A.L. Pharma, Inc. v. Shalala, 62 F.3d 1484, 1489 (D.C. Cir. 1995).  In this small subset of administrative law cases, "remand to the agency is an unnecessary formality" because "it is virtually inconceivable that its decisions would differ in any way the second time from that which occurred the first time," FEC, 75 F.3d at 708–09 (citations omitted), or because there is "only one rational course" for the Agency to follow upon remand, Am. Fed'n of Gov't Emps., AFL-CIO v. Fed. Labor Relations Auth., 778 F.2d 850, 862 n.19 (D.C. Cir. 1985).  Thus, when "the outcome of a new

administrative proceeding is preordained," a district court may forego the futile gesture of remand to the agency.  A.L. Pharma, Inc., 62 F.3d at 1489 (citation and quotation marks omitted).

The Court now concludes that this case does not fall within the purview of this uncommon exception.  The Court's prior ruling that remand was an "unnecessary formality" was premised on the conclusion that the Agency's coverage of ABA therapy under the ECHO Program indicated that it had either explicitly or implicitly found that ABA therapy was a proven treatment under 32 C.F.R. § 199.5(d)(12).  Berge, 879 F. Supp. 2d at 135.  This conclusion was erroneous, however, because the regulations governing the ECHO Program only require that "[d]rugs, devices, medical treatments, diagnostic, and therapeutic procedures" satisfy the standard set forth in the Basic Program regulations for proven treatments, 32 C.F.R. § 199.5(d)(12), and the Agency has been covering ABA therapy as a "special education" service under the ECHO Program, A.R. at 36.  Because the Agency did not consider ABA therapy to be a drug, device, medical treatment, or diagnostic or therapeutic procedure, it did not undertake an analysis of whether ABA therapy was a proven treatment in order to cover it under ECHO and reached no conclusion, either explicit or implicit, that it was a proven treatment.  Nor was it required to do so.  See 32 C.F.R. § 199.5(d)(12); see also 10 U.S.C. § 1079(e)(7) (permitting the Agency to cover "other services and supplies as determined appropriate . . . notwithstanding the limitations in subsection (a)(13)," which requires services to be "medically or psychologically necessary" in order to be covered).  Because the Court's decision was expressly predicated solely on the perceived "inconsistency" of covering ABA therapy under the ECHO Program and not under the Basic Program, its conclusion that remand was not appropriate is fatally undermined.  Berge, 879 F. Supp. 2d at 135 ("Accordingly, because of this finding, remand to the [A]gency

for further review is an unnecessary formality." (emphasis added) (citations and quotation marks omitted)).

The plaintiffs nonetheless contend that the Court's conclusion was correct because even if the Agency did not consider ABA therapy to be a "medical treatment[]," it must be considered a "therapeutic procedure," subject to the same exclusion for unproven status under § 199.5(d)(12), and therefore the Agency's coverage of ABA therapy indicates that it implicitly determined that it was a proven treatment for autism. Pls.' Opp'n at 7–8. The plaintiffs ask the Court to infer that the Agency has determined that ABA is a "therapeutic procedure," a term that is not defined in the regulations governing either the Basic or the ECHO Program, and then to infer from that conclusion that the Agency has determined that ABA therapy is a proven treatment. The Agency's determinations and reasoning on these points were not addressed in the coverage determination at issue here, however, and it would be improper for the Court to speculate about the Agency's reasoning. See Noble Energy, Inc. v. Salazar, 671 F.3d 1241, 1245–46 (D.C. Cir. 2012) (declining to accept an "implication" as adequate grounds for judicial review because "an agency is entitled to construe its own regulations in the first instance" and thus "[i]f we cannot tell whether it has done so, remand is appropriate" (citations and quotation marks omitted)); see also In re Subpoena Duces Tecum, 156 F.3d 1279, 1279 (D.C. Cir. 1998) ("reasonableness of the agency's action is judged in accordance with its stated reasons" under the arbitrary and capricious standard (emphasis added)).

The plaintiffs also point to a previous coverage determination under the ECHO Program approving ABA therapy as a "medically necessary" service as indicative of the Agency's implicit determination that ABA therapy is a proven treatment. See Pls.' Opp'n at 9. Inconsistent determinations counsel in favor of remand to the agency for further explanation or reconsideration, rather than deviating from the general practice of remand in administrative law

cases.  See AT&T Inc. v. FCC, 452 F.3d 830, 839 (D.C. Cir. 2006) (remanding the case to the

FCC to either explain the alleged inconsistency or to reconsider the matter upon finding that the

agency's use of two terms in an earlier order and two notices of proposed rulemaking differed

from the application at issue); see also Local 32, Am. Fed'n of Gov't Emps., AFL-CIO v. Fed.

Labor Relations Auth., 774 F.2d 498, 504–05 (D.C. Cir. 1985).

Without the purported inconsistency between covering ABA therapy under the ECHO

Program while denying coverage under the Basic Program, the Court discerns no circumstances

excepting this case from the general rule of "remand[] to the agency for further action consistent

with the correct legal standards."  Palisades Gen. Hosp. Inc., 426 F.3d at 403.  The outcome of

the administrative process on remand is far from certain; the errors identified by the Court relate

to the Agency's failure to consider the relevant factors and to satisfactorily explain how its

decision is rationally related to the evidence before it in light of all of the relevant

considerations.[4]  See Berge, 879 F. Supp. 2d at 118 (the Agency erred in applying the "reliable

evidence" standard to its determination of whether ABA therapy was "medically or

psychologically necessary" or "appropriate medical care"); id. at 118–19 (the Agency failed to

satisfactorily explain how its determination that ABA was educational rather than medical was

rationally related to the evidence before it); id. at 127–28 (the Agency failed to adequately

---

[4] The plaintiffs characterize this Court's opinion as holding that ABA therapy is "medically or psychologically necessary" and that it is a proven treatment for autism.  Pls.' Opp'n at 9, 12.  This is an overstatement of the Court's opinion, which held that the Agency's determinations that ABA therapy was not a "medically or psychologically necessary" service and that it was an "unproven" treatment were arbitrary and capricious based on the Agency's failure to properly consider the relevant factors and articulate a reasoned explanation for its decision.  Concluding that these determinations were arbitrary and capricious, however, is not the same as affirmatively finding that ABA therapy is "medically or psychologically necessary" and a proven treatment, effectively making these determinations for the Agency.  To the extent that a determination that ABA therapy is "medically or psychologically necessary" is implicit in the Court's injunction requiring coverage of ABA therapy under the Basic Program, it only reinforces the Court's conviction that remand of this matter to the Agency is the proper remedy, and any such determination is rejected by this opinion.  With respect to whether ABA therapy is a proven treatment, the plaintiffs misapprehend the import of the Court's prior opinion.  The Court's injunction was based on its erroneous conclusion that the Agency itself had found ABA therapy to be a proven treatment, not on a finding by the Court that ABA therapy is proven, since the Court made no such finding.

explain why certain materials were not considered to be reliable evidence); id. at 132–34 (the

Agency failed to give proper consideration to the statutory purpose); id. at 134–35 (the Agency

did not properly apply its own regulations requiring a comparison of a contested treatment to

"the standard means of treatment").  All of these errors could potentially be cured by the

Agency's reconsideration of the issue on remand in accordance with the Court's findings.

Indeed, the Court acknowledged as much in its opinion, noting that "most of the Court's

concerns could potentially be cured by affording the Agency further opportunity to explain its

actions." Id. at 135.  Upon reexamining the issue in accordance with the principles set forth in

the Court's earlier opinion, the Agency may determine that ABA therapy must be covered under

the Basic Program.

  The Court's reasoning, however, does not render the Agency with "only one rational

course" to follow upon remand, and it is conceivable that the Agency could, after considering all

relevant factors, satisfactorily articulate how the same decision is rationally related to the

evidence before it, particularly in light of the fact that the Agency's reconsideration will take into

account new literature published since the Agency last considered the matter.  See Defs.' Reply

at 7.  And perhaps most importantly, as the defendants point out, even if the Agency were to find

that ABA therapy constitutes "medical" care and that it is a proven treatment, there are additional

statutory and regulatory determinations that must be made in order to determine whether ABA

therapy is a covered benefit under the Basic Program.  See Defs.' Reply at 7 (citing 10 U.S.C. §

1079(a) and 32 C.F.R. § 199.4(g)); see also Defs.' Mot. at 8 ("The [A]gency has never made a

determination whether ABA tutors are properly considered 'trained and licensed or certified

health professionals' within the meaning of [32 C.F.R. § 199.2(b)].").  Bedrock principles of

administrative law require that the Agency be afforded the opportunity to make these

determinations in the first instance.  See Pub. Citizen Health Research Grp. v. Comm'r, FDA,

740 F.2d 21, 29 (D.C. Cir. 1984) ("When Congress has allocated to an agency the power to

decide certain questions in the first instance, 'it is normally desirable to let the agency develop

the necessary factual background upon which decisions should be based.  And since agency

decisions are frequently of a discretionary nature or frequently require expertise, the agency

should be given the first chance to exercise that discretion or to apply that expertise.'" (quoting

McKart v. United States, 395 U.S. 185, 194 (1969)).  This is not the unusual case where "[t]here

is not the slightest uncertainty as to the outcome of a[n] [agency] proceeding," A.L. Pharma,

Inc., 62 F.3d at 1489, and thus, the appropriate course of action is to remand this matter to the

Agency in order to give the Agency an opportunity to reconsider the issues addressed by the

Court in its earlier opinion.

     The plaintiffs resist this conclusion by arguing that remand is inappropriate because the

Agency has already had "two 'bites at the apple,'" Pls.' Opp'n at 19, and is "not entitled to

repeated, entirely duplicative remand opportunities in order to keep coming up with new reasons

for denying coverage," id. at 26.  The Court appreciates the plaintiffs' desire for expeditious

resolution of this case because "time is of the essence for children with autism," id. at 5, but the

plaintiffs' argument on this point simply does not represent the law of this Circuit, see, e.g., N.

Air Cargo, 674 F.3d at 861.[5]  The cases cited by the plaintiffs in support of their argument are

inapposite.  Both Telecommunications Research and Action Center v. FCC, 750 F.2d 70 (D.C.

Cir. 1984), and Cobell v. Norton, 240 F.3d 1081 (D.C. Cir. 2001), involved challenges pursuant

to § 706(1) of the APA to "compel agency action unlawfully withheld or unreasonably delayed"

---

[5] The plaintiffs' heavy reliance on Citizens Against Casino Gambling in Erie County v. Hogen, No. 07-CV-0451S,
2008 WL 4057101 (W.D.N.Y. Aug. 26, 2008), is misplaced in light of the considerable case authority on point from
this Circuit, which is binding upon this Court.  Moreover, the court denied remand to the agency in Citizens Against
Casino Gambling because it was impossible for the agency to reach the same conclusion under the law, and thus
remand was futile because only one conclusion was possible.  See 2008 WL 4057101, at * 8 ("Indeed, to require the
(continued . . . )

because the agency has never acted in the first instance, a completely different procedural

posture than is the situation in this case.  Telecomm. Research & Action Ctr., 750 F.2d at 79;

Cobell, 240 F.3d at 105–06.  McDonnell Douglas Corp. v. NASA, 895 F. Supp. 316 (D.D.C.

1995), which considered whether remand to the agency was necessary when there was no new

law to apply and the record compiled by the agency did not suffer from procedural deficiencies

requiring remand, is similarly inapplicable here.  895 F. Supp. at 319.  Moreover, penalizing the

Agency for voluntarily undertaking a reconsideration of its decision during the pendency of this

case by now concluding that it has had too many "bites at the apple" is not consistent with this

Circuit's policy of permitting reconsideration by the agency "to allow agencies to cure their own

mistakes rather than wasting the courts' and the parties' resources reviewing a record that both

sides acknowledge to be incorrect or incomplete."  Ethyl Corp. v. Browner, 989 F.2d 522, 524

(D.C. Cir. 1993).

    The plaintiffs' suggestion that the defendants' motion is "a clear attempt to abuse the

remand process" and made in bad faith is also unpersuasive.  Pls.' Opp'n at 2–4.  The plaintiffs

assert that the defendants' desire for remand "appears to be motivated by the desire to develop

new rationales for denying the ABA therapy to which TRICARE beneficiaries with autism are

entitled," but they offer no evidence to support this allegation.  Id. at 3.  Indeed, the plaintiffs'

contention appears to be based primarily on the fact that the Agency's two prior determinations

were adverse to them.  Id. at 3–4.  However, prior unfavorable determinations alone simply do

not give rise to an inference of bad faith.  Cf. Oceana, Inc. v. Locke, 674 F. Supp. 2d 39, 45

(D.D.C. 2009) ("the mere fact of . . . [a] decision [exercised for procedural reasons], without any

---

( . . . continued)
[agency] to provide additional analysis or explanation in support of a determination that the Court has concluded is
arbitrary, capricious and contrary to a century's worth of settled law and agency policy would be the height of
futility." (emphasis added) (footnote omitted)).  As the Court has explained, that is not the case here.

specific allegations of impropriety," is insufficient to show bad faith as the basis to supplement administrative record).  The plaintiffs also allege that the Agency has not complied with the Court's injunction because it has adopted reimbursement procedures that "emasculate this Court's ruling and injunction" by restricting the type of provider authorized to provide ABA therapy under the Basic Program.  Pls.' Opp'n at 3.  The defendants contend that they are "in full compliance" with the Court's injunction and are offering ABA therapy under the Basic Program in accordance with the Basic Program's more stringent regulations for service providers.  Defs.' Opp'n at 3–5.  Again, the plaintiffs' dissatisfaction with the Agency's decisions does not demonstrate that the Agency is acting in bad faith.  Furthermore, disputes like this underscore the propriety of remand in this case so that this Court does not "become . . . enmeshed in the minutiae of agency administration."  Cobell, 240 F.3d at 1108 (citation and quotation marks omitted).

    The point pressed most vigorously by the plaintiffs in support of maintaining the Court's injunction is that vacating the injunction would harm the Basic Program beneficiaries who are currently receiving ABA therapy under the Basic Program and cause further delay in reaching a final resolution of the matter at issue.  Pls.' Opp'n at 21–23.  As an initial matter, children currently receiving services pursuant to the Court's injunction will suffer no harm from the delay created by remand because the Agency has represented that "it will continue to provide for ABA services, under the interim guidance it issued to be in compliance with this Court's Order, until it has had a chance for further investigation or explanation or unless this judgment is reversed on appeal."  Defs.' Reply at 2; see Defs.' Reply, Exhibit ("Ex.") 1 (Supplemental Declaration of Michael W. O'Bar (O'Bar Decl.)) ¶ 11.  The Court will take the Agency at its word.  See Wheaton College v. Sebelius, 703 F.3d 551, 552–53 (D.C. Cir. 2012) (accepting government counsel's representations regarding agency's future conduct).

The plaintiffs nonetheless contend that delay will cause them harm because "the prospect of further delay after the Agency has already had two bites at the apple will 'sap public [and military families'] confidence in the agency's ability to discharge its responsibilities and create[] uncertainty for the parties,'" Pls.' Opp'n at 22 (quoting Cutler v. Hayes, 818 F.2d 879, 896 (D.C. Cir. 1987)), which the plaintiffs contend is particularly troubling in light of the statutory purpose to "create and maintain high morale in the uniformed services," id. (quoting Berge, 879 F. Supp. 2d at 119). The plaintiffs' reliance on Cutler is misplaced because, as in Telecommunications Research and Action Center and Cobell, the delay complained of in those cases was the agency's long-time failure to act in the first instance. Cutler, 818 F.2d at 885–86. Even as a general principle, the plaintiffs' argument must be rejected. The fact that remanding this matter to the Agency will result in longer delay does not confer jurisdiction upon this Court to do what the Circuit has held it cannot do: order specific relief that deprives an agency of the ability to reconsider the matter in light of the Court's decision. See Palisades Gen. Hosp., Inc., 426 F.3d at 132 (holding that the district court did not have jurisdiction to order the plaintiff hospital's reclassification after finding that the agency erred in rejecting data submitted in support of the reclassification).[6]

Having determined that remand is the appropriate course of action here, the Court would ordinarily turn to an analysis of whether the Agency's determination should be vacated or remain in place upon remand. See N. Air Cargo, 674 F.3d at 860–61. However, the Court need not

---

[6] The Court also notes that, in this instance, the delay should be considerably lessened because the Agency is already undertaking a review of its determination that ABA therapy cannot be covered under the Basic Program at Congress' behest. See Defs.' Reply, Ex. 1 (O'Bar Decl.) ¶ 6 (stating that TRICARE has "committed to taking a fresh look at all of the relevant research" in response to inquiries from several members of Congress following hearings held in June 2012); Pub. L. No. 112-239, § 705, 126 Stat. 1632, 1800 (2013) (to be codified at 10 U.S.C. § 1092 note) (requiring the Agency to review coverage of ABA therapy and submit a report with its findings to Congress no later than 270 days after pilot program providing coverage for ABA therapy).

undertake this analysis in light of the Agency's voluntary vacatur of its previous determination while it reconsiders the issue on remand.  See Defs.' Reply, Ex. 1 (O'Bar Decl.) ¶ 11.

      **B.**      **Prior Ruling Regarding Inconsistency of Coverage Under the ECHO Program**

In light of the Court's determination that it erred in concluding that the Agency had found ABA therapy to be a proven treatment by virtue of its coverage under the ECHO Program, the Court must also conclude that it committed clear error by holding that the Agency's decision to extend coverage under the ECHO Program while withholding coverage under the Basic Program was arbitrary and capricious.[7]  In its earlier opinion, the Court concluded that "there is no apparent rational justification" for the Agency's decision to provide coverage for ABA therapy under the ECHO Program pursuant to 10 U.S.C. § 1079(e)(7), which permits the Agency to cover services as appropriate in its discretion under ECHO, while denying coverage under the Basic Program "because the applicable ECHO regulation, 32 C.F.R. § 199.5(d)(12), is governed by the same limitation as the Basic Program that precludes coverage for unproven '[d]rugs, devices, medical treatments, diagnostic and therapeutic procedures for which the safety and efficacy have not been established in accordance with § 199.4," the regulation excluding unproven treatments from coverage under the Basic Program.  Berge, 879 F. Supp. 2d at 131.  As explained earlier, this is an erroneous application of the law to the facts in this case, and thus cannot support the Court's ruling that providing ABA therapy under ECHO alone was arbitrary and capricious.

---

[7] Although the defendants argued that the Court's ruling on this point was "clear error," Defs.' Mot. at 6–7, the only relief requested by the defendants was to vacate the injunction and to remand the matter to the Agency for further action consistent with the Court's opinion, id. at 9.  Revisiting this ruling follows logically from the Court's reasoning that this matter must be remanded to the Agency, however, since it rests almost entirely on a conclusion that the Court has now found to be erroneous.  Addressing this error now is in the interest of the parties in order to clarify the issues that must be addressed on remand to the Agency and in the interest of judicial economy should the defendants appeal the Court's decision in this case.

Without this purported "inconsistency," however, the Court's conclusion is simply bereft of support.  The Court held that the Agency's "decision to enforce its stringent regulatory standards to withhold ABA therapy coverage under the Basic Program, while exercising its statutorily-granted discretion to extend ABA therapy coverage under ECHO" constituted a "two prong regulatory scheme" for which the Agency had failed to provide a satisfactory explanation. Berge, 879 F. Supp. 2d at 132.  The Court agreed that the Agency may properly provide coverage for ABA therapy under the ECHO Program in its discretion, id. at 130–31, and the Agency has, in effect, explained "why it chose to create this two prong regulatory scheme" in its denial of coverage under the Basic Program—the Agency determined that ABA therapy could not be covered under the Basic Program regulations.  This explanation is deficient for the reasons identified by the Court in its earlier opinion, which remain undisturbed.  The Agency must therefore address the errors identified by the Court in its determination that ABA therapy is not a covered benefit under the Basic Program, but it need not address the "inconsistency" of providing coverage under ECHO while denying it under the Basic Program because no inconsistency, in fact, exists.[8]  Accordingly, the Court erred in ruling that the Agency's "failure to provide a reasoned explanation" for providing coverage for ABA therapy under the ECHO Program while simultaneously denying it under the Basic Program was arbitrary and capricious.

---

[8] In its analysis of this point, the Court also noted that it was troubled by one inconsistent ECHO coverage determination finding ABA therapy to be a "medically or psychologically necessary" service, and the inconsistency of providing coverage for ABA therapy under the ECHO Program if the Agency had concerns about its safety. Berge, 879 F. Supp. 2d at 131.  Such reasons are not sufficient to sustain this ruling.  Moreover, the Agency based its decision on the lack of reliable evidence regarding ABA therapy's efficacy, not its safety.  See A.R. 30–34 (discussing the evidence of ABA's effectiveness as an intervention); Defendants' Memorandum in Support of Their Cross-Motion for Summary Judgment and In Opposition to Plaintiffs' Motion for Summary Judgment at 35 ("In this case, [the Agency] has determined based on a review of the medical literature that there is not a consensus on the efficacy of ABA as a medical treatment for [autism] at this time." (emphasis added)).  The handful of stray references to the safety of ABA therapy do not relate in any meaningful way to the Agency's determination here, and thus there is no inconsistency on this point either.

C.      **Class Certification**

Following issuance of the Court's earlier opinion in this case, the plaintiffs moved for various relief relating to the Court's class certification.  See Pls.' Mot. at 1.  Although most of the requested relief is now moot in light of the Court's resolution of the defendants' motion, one point must be addressed.  The plaintiffs request an order "stating that all of the requisite elements of Rule 23 are met" in support of the Court's previous class certification.  Id.  Upon revisiting its grant of class certification, however, the Court has determined that class certification is improper in light of the need to remand this matter to the Agency, and thus it must also vacate its certification of a class pursuant to Federal Rule of Civil Procedure 23(b)(2) in its earlier opinion and order.  Moreover, the Court has recognized that its earlier provisional certification of a class for purposes of the summary judgment motion was in error because it had not yet determined that the requirements of Rule 23 were met, see February 15, 2011 Hearing Transcript at 55:20–24, and that it will require further briefing on class certification if necessary at a later point, see Fed. R. Civ. P. 23 Advisory Committee Notes 2003 Amendments ("The provision that a class certification 'may be conditional' is deleted.  A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met.").  Because the Court will vacate its prior order granting class certification, the plaintiffs' motion for clarification of that order must be denied as moot.

### III. CONCLUSION

Any delay in bringing the dispute in this case to final resolution is regrettable, considering the importance of the matter to those who have served this nation through military service.  Errors, however, are not uncommon in our legal system, and in fact are expected, which is why motions for reconsideration and appellate review have been integrated into our legal process.  And judges must have the integrity to acknowledge and accept their mistakes if justice,

rather than pride, is the controlling factor in our sometimes failed efforts to adhere to the rule of law.  Moreover, the Court hopes that a final resolution to this matter will be hastened by Congress' recent directive to the Agency to consider if coverage of ABA therapy under the Basic Program may be permitted.

Accordingly, the Defendants' Motion to Amend Judgment must be granted.  The injunction previously issued by this Court is therefore vacated, the matter is remanded to the Agency for further action consistent with this Court's prior opinion, and the reasoning of the Court's prior opinion is amended as described in this opinion.  The Plaintiffs' Motion to Clarify Class Certification and Relief is denied as moot, and the Court's ruling granting class certification is vacated.

**SO ORDERED** this 5th day of June, 2013.[9]

REGGIE B. WALTON
United States District Judge

---

[9] An Order consistent with this Memorandum Opinion will be issued contemporaneously.